**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PITT, MCGEHEE, PALMER,
BONANNI & RIVERS, P.C., a
Michigan Professional Corporation,

     Plaintiff,

                                 Civil Action No. 2:23-cv-10166

v.

                                 Hon. Paul D. Borman

EASTERN POINT TRUST
COMPANY, *et al.*

     Defendants.

| | |
|---|---|
| Maddin Hauser Roth & Heller, P.C. | Miller, Canfield, Paddock and Stone, P.L.C. |
| Michelle C. Harrell (P48768) | Matthew P. Allen (P57914) |
| Matthew Mitchell (P69810) | 840 W. Long Lake Rd., Ste. 250 |
| Attorneys for Plaintiff | Troy, MI 48098 |
| 28400 Northwestern Hwy., 2nd Floor | Phone: (248) 267-3290 |
| Southfield, MI 48034 | Email: allen@millercanfield.com |
| (248) 827-1874 | |
| mmitchell@maddinhauser.com | Williams Mullen |
| *Attorneys for Plaintiff* | Robert Van Arnam (NC Bar No. 28838; *admitted to E.D. Mich.*) |
| | 301 Fayetteville St, Suite 1700 |
| | Raleigh, NC 27601 |
| | Phone: (919) 981-4055 |
| | Email: rvanarnam@williamsmullen.com |
| | *Attorneys for Defendants* |

<u>**EASTERN POINT TRUST COMPANY'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**</u>

Defendant Eastern Point Trust Company ("EPTC"), by counsel and pursuant to Federal Rule of Civil Procedure 12(b)(2), moves to dismiss the Amended Complaint filed by Plaintiff Pitt McGehee, Palmer, Bonanni & Rivers, P.C. ("Pitt McGehee") for lack of personal jurisdiction. In the alternative, if the Court denies EPTC's Rule 12(b)(2) Motion, EPTC moves to Dismiss Counts I through VI of the Amended Complaint, as well as Pitt McGehee's request for attorneys' fees, pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this Motion, EPTC relies on the facts and law set forth in the accompanying brief.

Pursuant to Local Rule 7.1(a), the undersigned certifies that counsel for EPTC spoke to Pitt McGehee's counsel, explained the nature of the relief to be sought by this Motion, and requested but did not obtain concurrence in the relief sought.

WHEREFORE, EPTC respectfully requests that the Court dismiss Pitt McGehee's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, dismiss Counts I through VI of the Amended Complaint, as well as Pitt McGehee's request for attorneys' fees pursuant to Rule 12(b)(6).

Dated: May 26, 2023                     Respectfully submitted,

                                        /s/ Matthew P. Allen
                                        Miller, Canfield, Paddock and Stone, P.L.C.
                                        Matthew P. Allen (P57914)
                                        840 W. Long Lake Rd., Ste. 250
                                        Troy, MI 48098
                                        Phone: (248) 267-3290
                                        Email: allen@millercanfield.com

                                        Williams Mullen
                                        Robert Van Arnam (NC Bar No. 28838;
                                        *admitted to E.D. Mich.*)
                                        301 Fayetteville St, Suite 1700
                                        Raleigh, NC 27601
                                        Phone: (919) 981-4055
                                        Fax: (919) 981-4300
                                        Email: rvanarnam@williamsmullen.com

                                        *Attorneys for Defendants*

40708490.1/161903.00001

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PITT, MCGEHEE, PALMER,
BONANNI & RIVERS, P.C., a
Michigan Professional Corporation,

     Plaintiff,

v.

EASTERN POINT TRUST
COMPANY, *et al.*

     Defendants.

Civil Action No. 2:23-cv-10166

Hon. Paul D. Borman

| | |
|---|---|
| Maddin Hauser Roth & Heller, P.C.<br>Michelle C. Harrell (P48768)<br>Matthew Mitchell (P69810)<br>Attorneys for Plaintiff<br>28400 Northwestern Hwy., 2nd Floor<br>Southfield, MI 48034<br>(248) 827-1874<br>mmitchell@maddinhauser.com<br>*Attorneys for Plaintiff* | Miller, Canfield, Paddock and Stone, P.L.C.<br>Matthew P. Allen (P57914)<br>840 W. Long Lake Rd., Ste. 250<br>Troy, MI 48098<br>Phone: (248) 267-3290<br>Email: allen@millercanfield.com<br><br>Williams Mullen<br>Robert Van Arnam (NC Bar No. 28838;<br>*admitted to E.D. Mich.*)<br>301 Fayetteville St, Suite 1700<br>Raleigh, NC 27601<br>Phone: (919) 981-4055<br>Email: rvanarnam@williamsmullen.com<br>*Attorneys for Defendants* |

## EASTERN POINT TRUST COMPANY'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF ISSUES PRESENTED.............................................................vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY .......................... viii

I.   INTRODUCTION ....................................................................................1

II.  BACKGROUND ......................................................................................3

III. JURISDICTIONAL EVIDENCE.............................................................4

IV.  STANDARD OF REVIEW......................................................................7

V.   ARGUMENT............................................................................................8

  A.  The Complaint Should Be Dismissed for Lack of Personal
      Jurisdiction. ....................................................................................8

    1.  There is no general personal jurisdiction over EPTC. ..............8

    2.  There is no specific personal jurisdiction over EPTC. .............9

      a.  EPTC did not purposefully avail itself of the
          privilege of conducting business in Michigan.................9

      b.  The cause of action does not arise from EPTC's
          actions in Michigan. ......................................................14

      c.  The exercise of personal jurisdiction over EPTC
          proves unreasonable and does not comport with
          due process requirements...............................................15

  B.  Counts I Through VI Fail to State a Claim Against EPTC, and
      the Complaint Fails to State Any Claim Against EPS.......................16

    1.  Pitt McGehee cannot escape the contracts governing its
        claims. ..................................................................................16

    2.  The parties' express contracts preclude Counts I through
        V..............................................................................................19

      a.  The gist of the action doctrine bars Count I. .................20

      b.  Counts II through V fail to allege breach of an
          independent, extra-contractual duty. ...........................21

**TABLE OF CONTENTS**
(continued)

**Page**

   c.  Counts IV and V fail to allege a material misrepresentation or justifiable reliance.........................22

  3.  Pitt McGehee fails to allege an underlying claim to support its request for a declaratory judgment in Count VI..................................................................................24

  4.  Pitt McGehee fails to plead entitlement to attorneys' fees.......25

VI.  CONCLUSION................................................................................25

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addie v. Kjaer*,
   737 F.3d 854 (3d Cir. 2013) .................................................................20

*ALTe, L.L.C. v. Quest Cap. Invs., Inc.*,
   2012 WL 1893519 (E.D. Mich. May 23, 2012) ............................................10, 11

*Alticor Glob. Holdings, Inc. v. Am. Int'l Specialty Lines Ins. Co.*,
   2020 WL 13180020 (W.D. Mich. Sept. 30, 2020) ............................................25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................8

*Atlas Techs., LLC v. Levine*,
   268 F. Supp. 3d 950 (E.D. Mich. 2017) .......................................................20, 21

*Audi AG & Volkswagon of Am., Inc. v. D'Amato*,
   341 F. Supp. 2d 734 (E.D. Mich. 2004) ............................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................7

*Bird v. Parsons*,
   289 F.3d 865 (6th Cir. 2002) .......................................................14, 15

*Cruz v. Cap. One, N.A.*,
   192 F. Supp. 3d 832 (E.D. Mich. 2016) ...........................................................24

*Cummins v. Robinson Twp.*,
   770 N.W.2d 421 (Mich. Ct. App. 2009).............................................................24

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..............................................................................8

*Eidson v. Tenn. Dep't of Children's Servs.*,
   510 F.3d 631 (6th Cir. 2007) .................................................................8

iii

*Garland v. Wells Fargo Home Mortg. Inc.*,
    303 F. Supp. 3d 554 (E.D. Mich. 2018) .................................................................8

*Gresham v. Haggard*,
    2012 WL 4340825 (E.D. Mich. Aug. 7, 2012).....................................................21

*Hart v. Ludwig*,
    79 N.W.2d 895 (Mich. 1956)...............................................................................21

*King v. Ridenour*,
    749 F. Supp. 2d 648 (E.D. Mich. 2010) .........................................................10, 11

*Krishnan v. Krishnan*,
    2005 WL 8155735 (E.D. Mich. Nov. 21, 2005)...................................................24

*Lee v. Panera Bread Co.*,
    2023 WL 2606611 (E.D. Mich. Mar. 6, 2023)....................................................18

*MacDonald v. Thomas M. Cooley L. Sch.*,
    880 F. Supp. 2d 785 (W.D. Mich. 2012), *aff'd*, 724 F.3d 654 (6th
    Cir. 2013) .............................................................................................................23

*MAG IAS Holdings, Inc. v. Schmuckle*,
    854 F.3d 894 (6th Cir. 2017) ..................................................................................9

*Mieske v. Harmony Elec. Co.*,
    270 N.W.2d 216 (Mich. 1936)..............................................................................23

*Miller v. AXA Winterthur Ins. Co.*,
    694 F.3d 675 (6th Cir. 2012) ..................................................................................9

*Neogen Corp. v. Neo Gen Screening, Inc.*,
    282 F.3d 883 (6th Cir. 2002) ..................................................................................7

*Orleans Int'l, Inc. v. Mistica Foods, L.L.C.*,
    2016 WL 2851349 (E.D. Mich. May 16, 2016) ..................................................22

*Revelation Yogurt, LLC v. Kline L. Grp., P.C.*,
    2021 WL 1812694 (E.D. Mich. May 6, 2021) ....................................................22

*Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc.*,
    2013 WL 27921 (E.D. Mich. Jan. 2, 2013) ........................................................22

*SFS Check, LLC v. First Bank of Delaware*,
    990 F. Supp. 2d 762 (E.D. Mich. 2013), *aff'd*, 774 F.3d 351 (6th
    Cir. 2014) ..........................................................................................10, 17

*Sports Auth. Michigan, Inc. v. Justballs, Inc.*,
    97 F. Supp. 2d 806 (E.D. Mich. 2000) ...............................................13

*Theunissen v. Matthews*,
    935 F.2d 1454 (6th Cir. 1991) ..............................................................7

*In re Trade Partners, Inc. Invs. Litig.*,
    2008 WL 3875396 (W.D. Mich. Aug. 15, 2008) ..............................22

**Statutes**

Mich. Comp. Laws § 440.4702.......................................................4, 14

**Court Rules**

Fed. R. Civ. P. 12(b)(2)..................................................................2, 7

Fed. R. Civ. P. 12(b)(6)..............................................................2, 7, 16

Fed. R. Civ. P. 12(h) .............................................................................7

**Other Authorities**

26 C.F.R. § 1.468B-1(c)(1)...............................................................11

26 C.F.R. § 1.468B-1 *et seq.*.............................................................5

## STATEMENT OF ISSUES PRESENTED

I. Whether the Court can exercise general personal jurisdiction over EPTC, despite the fact that EPTC is not incorporated in Michigan, does not have its principal place of business in Michigan, and is not at home in Michigan.

**PITT MCGEHEE'S ANSWER:** *Yes.*

**EPS' ANSWER:** *No.*

II. Whether the Court can exercise specific personal jurisdiction over EPTC and satisfy due-process requirements, despite the fact that EPTC does not have sufficient minimum contacts with Michigan?

**PITT MCGEHEE'S ANSWER:** *Yes.*

**EPS' ANSWER:** *No.*

III. Whether Pitt McGehee has alleged plausible claims against EPTC under Federal Rule of Civil Procedure Rule 12(b)(6) for breach of fiduciary duty, negligence, gross negligence, negligent misrepresentation, and fraudulent misrepresentation, despite the fact that express contract(s) govern Pitt McGehee's claims?

**PITT MCGEHEE'S ANSWER:** *Yes.*

**EPS' ANSWER:** *No.*

IV. Whether Pitt McGehee has alleged any actionable statement or reasonable and justifiable reliance to support its claims for negligent and fraudulent misrepresentation sufficient to survive EPTC's Motion to Dismiss?

**PITT MCGEHEE'S ANSWER:** *Yes.*

**EPS' ANSWER:** *No.*

vi

V.   Whether Pitt McGehee has alleged an underlying, substantive claim to support its request for declaratory relief sufficient to survive EPTC's Motion to Dismiss?

**PITT MCGEHEE'S ANSWER:** *Yes.*

**EPS' ANSWER:** *No.*

VI.   Whether Pitt McGehee has alleged any contractual term, statute, or court rule that would entitle it to the attorneys' fee it seeks to recoup?

**PITT MCGEHEE'S ANSWER:** *Yes.*

**EPS' ANSWER:** *No.*

# **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

U.S. Const. Amend. XIV

Fed. R. Civ. P. 12(b)(2)

Fed. R. Civ. P. 12(b)(6)

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)

*MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894 (6th Cir. 2017)

## I.   INTRODUCTION

The action arises from a data breach resulting from Pitt McGehee's failure to protect its systems and clients' data. The claims against Eastern Point Trust Company ("EPTC") and its affiliate, Eastern Point Services, Inc. ("EPS") (collectively, "Defendants"), concern distributions from a qualified settlement fund ("QSF"). The operative trust agreements require the parties to bring suit in Virginia, where the QSF escrow assets are located. Ignoring the unambiguous terms of the parties' express contracts, Pitt McGehee brings a number of ill-pled tort claims against EPTC in this Court, which has neither general nor specific personal jurisdiction over Defendants.

In June 2022, Pitt McGehee submitted a QSF application to EPTC for the purpose of holding and distributing settlement proceeds from a bankruptcy court in Indiana. After a Virginia governmental authority approved and registered the QSF as a statutory escrow trust in Virginia, the parties accepted trust agreements setting forth EPTC's obligations and the distribution process, as evidenced by Pitt McGehee's funding of the QSF after receiving the documents. In July 2022, third-party cyber criminals hacked into Pitt McGehee's unprotected systems and fraudulently impersonated its personnel using verified passwords, digital signature fingerprints, e-signatures, and client information to steal funds from the QSF. Pitt McGehee alleges that EPTC failed to maintain adequate safeguards to prevent the attack and breach of systems controlled by Pitt McGehee.

The Court should grant EPTC's Motion to Dismiss under Rule 12(b)(2) for the following reasons:

**There is no general personal jurisdiction**. EPTC is not incorporated or headquartered in Michigan, it does not provide services in Michigan, and it has no physical presence in Michigan.

**There is no specific personal jurisdiction**. EPTC did not purposefully avail itself of the privilege of doing business in Michigan. The cause of action arises from events in Virginia—not Michigan. Haling a foreign company that does not operate in Michigan and had no control over Pitt McGehee's systems into this Court is unreasonable and violates Due Process requirements.

Even if the Court finds it may exercise personal jurisdiction, it should grant EPTC's Motion pursuant to Rule 12(b)(6) because:

**The parties' express contracts bar Counts I through V**. Pitt McGehee's tort claims sound solely in contract, the terms of which are expressly incorporated into the Complaint. Counts I through V fail because Pitt McGehee does not allege breach of an independent duty.

**Counts IV and V fail to state a claim for negligent and intentional misrepresentation.** Even if the Court disregards the parties' contracts, Counts IV and V fail because Pitt McGehee does not identify an actionable statement or allege reasonable and justifiable reliance.

**Count VI fails to state a claim for declaratory judgment** because a request for declaratory relief constitutes a remedy—not a standalone cause of action.

**Pitt McGehee fails to plead entitlement to attorneys' fees.** The Complaint is devoid of any contractual term, statute, court rule, or other means that would allow Pitt McGehee to recoup attorneys' fees.

For these reasons, as stated more fully below, the Court should grant EPTC's Motion pursuant to Rule 12(b)(2), or, in the alternative, Rule 12(b)(6).

## II.   BACKGROUND

On June 2, 2022, Pitt McGehee, through its agent, requested that EPTC establish and administer a qualified settlement fund pursuant "for the purpose of receiving, holding, and distributing settlement proceeds and attorney fees arising from the resolution of claims" in *In re: USA Gymnastics, Chapter 11*, pending in the U.S. Bankruptcy Court for the Southern District of Indiana. (Am. Compl. ¶¶ 12-13.) After the QSF was created, approved, and registered by the associated governmental entity in Virginia, EPTC sent Pitt McGehee the "Trust Agreement, Trust Administration Agreement, and other documents summarizing the QSF and providing instructions to [Pitt McGehee] with respect to funding and distributions (collectively, the 'EPTC Documents')." (*Id.* ¶ 28.)

Pitt McGehee admits that it received the EPTC Documents and followed the distribution process prescribed therein, but claims it never consented to their terms. (*Id.* ¶¶ 28-36, 46.) Pitt McGehee also claims it never consented to the Terms of Use conspicuously displayed and hyperlinked on EPTC's website, despite repeatedly accessing and asserting reliance on the statements and materials available on EPTC's website and attaching those materials to the Complaint. (*Id.* ¶¶ 15 n.3, 16-19.)

In July 2022, third-party cyber criminals allegedly impersonated a Pitt McGehee employee and emailed distribution requests to EPTC to steal funds from the QSF. (*Id.* ¶¶ 37-39.)  After discovering the breach in August 2022, Pitt McGehee

3

worked with law enforcement to retrieve funds stolen by the cyber criminals but claims it could not retrieve approximately $1.6 million. (*Id.* ¶¶ 42-43.)

Pitt McGehee alleges that EPTC failed to maintain "commercially reasonable security procedures" to "detect and prevent fraud," (*id.* ¶ 38), and now brings claims against EPTC for breach of fiduciary duty (Count I), negligence (Count II), gross negligence (Count III), negligent misrepresentation (Count IV), fraud (Count V), and liability under Mich. Comp. Laws § 440.4702 (Count VI).

### III.   JURISDICTIONAL EVIDENCE

***EPTC's Citizenship***. EPTC is incorporated in and maintains its principal place of business in the U.S. Virgin Islands.  (Ex. 1, Decl. of Samuel Kott ("Kott Decl.") ¶ 5.) EPS, a subsidiary of EPTC, performs ministerial services associated with administration of the QSF on behalf of EPTC from its offices in Virginia.  (*Id.*)

***EPTC's Website***. EPTC's website provides an overview of its QSF, settlement, escrow, and other services. *(Id.* ¶ 11.) Each page of the website states: "Fiduciary and trustee services are only offered and performed pursuant solely to the terms of the associated governing documents." (*Id.* ¶ 11; Ex. A to Kott Decl.) The website further states: "[t]his website is for ***informational purposes only*** and is not an offer to sell, a solicitation, or an offer to buy any security.  Nor is the content here an offer to provide legal, fiduciary, or trust services." (*Id.* ¶ 12 (emphasis added).)

***EPTC's Terms of Use***.  A banner that runs across the top of EPTC's website states: "By using this site, you agree to our Privacy Policy and Terms of Use." (*Id.* ¶ 13.) The Terms of Use, linked in the banner, govern use and access to the "Platform," which the Terms of Use define as "all associated or linked EPTC websites, [including] www.easternpointtrust.com [and] any content, . . . and services offered on or through the same." (Ex. B to Kott Decl. ("Terms of Use.").) The Terms of Use require the parties to submit any disputes arising out of or connected to the Platform and Terms of Use to the Fauquier County Circuit Court in Virginia. (*Id.*)

***Pitt McGehee's QSF Application.*** Pitt McGehee retained a third-party broker, Ringler Associates, Inc. ("Ringler"), to establish a QSF to distribute settlement proceeds and attorney's fees in the matter of *In re: USA Gymnastics, Chapter 11*. (Kott Decl. ¶¶ 14-15.) On June 2, 2022, Monique Crosby ("Crosby"), Ringler Settlement Coordinator, submitted an application to EPTC on behalf of Pitt McGehee to have a QSF created, approved and registered by a governmental entity in Virginia as a statutory trust pursuant to 26 C.F.R. § 1.468B-1 *et seq*. to receive funds decanted from the Master QSF for the bankruptcy litigation. (*Id*. ¶¶ 21-22; Ex. D to Kott Decl.) In order to complete the application, Crosby created an account via the www.easternpointtrust.com website thus agreeing to the Terms and Conditions

5

as the Agent of Pitt McGehee and reaffirming the agreement by 118 logins by Ringler and Pitt McGehee. (Ex. D to Kott Decl.)[1]

***Creation and Use of the QSF.*** Following Ringler's submission, a Virginia governmental authority approved the QSF and the creation and existence of the QSF was recorded in Virginia. (Kott Decl. ¶¶ 21-22.) EPTC emailed Ringler confirmation of receipt of Pitt McGehee's application and a notification that the Pitt McGehee USAG Qualified Settlement Fund (the "QSF") had been approved, fully established, and was ready for funding. (*Id.* ¶ 23; Ex. E to Kott Decl.)

The confirmation email included copies of the Pitt McGehee USAG QSF Trust Agreement dated June 2, 2022 (the "Trust Agreement") and the Pitt McGehee USAG Qualified Settlement Fund Trust Administration Agreement dated June 2, 2022 (the "Trust Administration Agreement") (collectively, the "Trust Agreements"), a QSF Summary, and other documents related to funding and wiring instructions. (Kott Decl. ¶ 26; Ex. F to Kott Decl. ("Trust Agmt."); Ex. G to Kott Decl. "Trust Admin Agmt".) The Trust Agreements expressly incorporate the Terms of Use. (Trust Agmt. § 2.29; Trust Admin. Agmt § 6.47.) The QSF Summary explains

---

[1] This includes logins from Renee Ricken ("Ricken"), who created a separate EPTC account on or about June 8, 2022, using the EPTC email "rricken@pittlawpc.com." (Kott Decl. ¶ 28.) Ricken also submitted Distribution Petition Agreements on behalf of Pitt McGehee. (*See* Ex. J. to Kott Decl.)

that the Trust Agreements "establish the total terms and conditions under which the QSF will operate." (Ex. H to Kott Decl. at 1-2.)

After the QSF was approved, Pitt McGehee emailed at least 40 Distribution Petition Agreements to EPS pursuant to the terms of the Trust Agreements. (*Id*. ¶ 37; Ex. J to Kott Decl.) EPS, on behalf of EPTC, received Distribution Petition Agreements from Pitt McGehee. (Kott Decl. ¶¶ 37-38.) Pitt McGehee and Ringler also logged into their accounts at least 118 times, each time affirming the Terms and Conditions. (Kott Decl. ¶ 33.)

## IV.    STANDARD OF REVIEW[2]

Pursuant to Rule 12(b)(2), the plaintiff bears the burden of proving the Court's jurisdiction and cannot simply rest on its pleadings. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) ("[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction").

To survive EPTC's Rule 12(b)(6) motion, Pitt McGehee must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

---

[2] EPTC files these Rule 12(b)(2) and (b)(6) motions together to guard against waiver under Rule 12(h). Defendants separately move to enforce the forum selection clause in the parties' contracts and dismiss on *forum non conveniens* grounds. Should the Court deny the Rule 12(b)(2) Motion, the Court may rule on the *forum non conveniens* motion before reaching the Rule 12(b)(6) motion.

U.S. 544, 555 (2007). Although the Court must construe the complaint in the light most favorable to the plaintiff, accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of the plaintiff[,]" the Court "need not accept as true legal conclusions . . . . masquerading as factual allegations[.]" *Garland v. Wells Fargo Home Mortg. Inc.*, 303 F. Supp. 3d 554, 558 (E.D. Mich. 2018) (internal quotation marks omitted); *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (internal quotation marks omitted). "Threadbare recitals of a cause of action's elements, supported by mere conclusory statements" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**V.    ARGUMENT**

**A.    The Complaint Should be Dismissed for Lack of Personal Jurisdiction.**

**1.  There is no general personal jurisdiction over EPTC.**

General personal jurisdiction exists only in a forum where an entity is "at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Courts usually deem an entity "at home" only in its state of incorporation or where it has its principal place of business. *Id.*  EPTC is incorporated and headquartered in the U.S. Virgin Islands. (Kott Decl. ¶ 5.) Pitt McGehee has not and cannot establish that EPTC carried on "systematic conduct" that could render it "essentially at home" in Michigan. *See Daimler*, 571 U.S. at 13.  Accordingly, the Court lacks general personal jurisdiction.

8

## 2. There is no specific personal jurisdiction over EPTC.

To determine whether specific personal jurisdiction exists over a defendant, courts look to Michigan's long-arm statute and to constitutional due-process requirements. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017). Because Michigan's long-arm statute "extends to the limits imposed by federal constitutional due process requirements . . . , the two questions become one." *Id*. (quotations and citations omitted).

To satisfy the due process requirements of specific personal jurisdiction, Pitt McGehee must establish that EPTC has minimum contacts with Michigan because (1) EPTC purposefully availed itself of the privilege of conducting business in Michigan, (2) the cause of action arises from EPTC's activities in Michigan, and (3) EPTC's actions "have a substantial enough connection" with Michigan "to make the exercise of jurisdiction over [Defendants] reasonable." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). Failure to satisfy any of these elements prevents the Court from invoking jurisdiction. *Id*.

### a. EPTC did not purposefully avail itself of the privilege of conducting business in Michigan.

EPTC's contacts with Michigan can be boiled down to: (1) emailing the Trust Agreements to Pitt McGehee, (2) correspondence with Pitt McGehee and Ringler related to the Trust Agreements, and (3) operation of a primarily passive website

9

hosted on servers located and administered in Virginia and accessible to Michigan residents. None of these attenuated contacts establish purposeful availment.

*First*, EPTC's execution of and performance under the Trust Agreements does not satisfy the purposeful availment prong. "[T]he mere fact that a non-resident defendant enters into a contract with a forum resident is not, by itself, a sufficient basis for finding purposeful availment." *King v. Ridenour*, 749 F. Supp. 2d 648, 656 (E.D. Mich. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Instead, courts evaluate the terms of the contracts and the parties' actual course of dealing. *ALTe, L.L.C. v. Quest Cap. Invs., Inc.*, 2012 WL 1893519, at *5 (E.D. Mich. May 23, 2012). The quality of the contacts trumps the quantity. *Id*.

This Court's decision in *ALTe* is instructive. In that case, the plaintiff sued a lender and a California escrow company to recoup a loan deposit. *Id.* at *1. The escrow company moved to dismiss for lack of personal jurisdiction. *Id.* The Court found no purposeful availment based on the company's Michigan contacts, which included an escrow agreement, a wire transfer receipt, and a fax. *Id.* at *5. The Court emphasized that the lender "unilaterally selected" the escrow company and that the company never sent an agent to negotiate the terms of the escrow agreement or solicit business from the plaintiff. *Id.* at *6.  In other words, "the actions of a third-party thrust [the escrow company] into the forum." *Id.*

10

Here, Ringler, as pled by Pitt McGehee, unilaterally selected EPTC to administer the QSF and thrust EPTC into the forum by submitting Pitt McGehee's QSF application. Like the escrow company in *ALTe*, EPTC does not have any offices, property, QSF property or physical presence in Michigan, and EPTC never sent an agent or representative to Michigan to negotiate the Trust Agreements or solicit business from Ringler, Pitt McGehee, or any other Michigan resident. (Kott Decl. ¶¶ 9-10.) Thus, merely entering the Trust Agreements with Pitt McGehee does not amount to purposeful availment.

*Next*, correspondence between EPTC and Pitt McGehee or Ringler does not establish purposeful availment because those communications relate to the facilitation and performance of the QSF, which is statutorily required to be under the continuing jurisdiction of the governmental authority in Virginia. *See* 26 C.F.R. § 1.468B-1(c)(1); *King*, 749 F.Supp.2d at 656 (noting that "simple correspondence and telephone calls are not enough"). EPTC sent three emails to Ringler regarding its acceptance of Pitt McGehee's QSF application and creation of the QSF. (Kott Decl. ¶¶ 23, 25, 30.) These communications relate to EPTC's performance and cannot serve as a basis for hailing a foreign defendant into a federal Michigan court.

*Finally*, EPTC's maintenance of a mostly passive website, does not establish purposeful availment.  To determine whether maintenance of a website amounts to purposeful availment, courts categorize websites as highly interactive, moderately

11

interactive, or passive. *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 742 (E.D. Mich. 2004).  While a highly interactive website that allows a user to download and enter contracts may confer personal jurisdiction, a passive website that merely makes information available to the user does not. *Id.*

EPTC's website falls in the "middle ground" category, which requires examination of "the level and nature of exchange" of information. *Id*. EPTC's website makes clear that its contents are "for informational purposes only and is not an offer to sell, a solicitation, or an offer to buy any security." (Kott Decl. ¶ 12.) Importantly, users cannot purchase any product through the website, and nothing on the website specifically targets Michigan residents. EPTC's lack of Michigan customers buttresses this fact. Pitt McGehee alleges that EPTC "cultivates referral relationships with business partners" and "identifies entities within Michigan as their respective clients." (Am. Compl. ¶ 7.) But over the past decade, EPTC has only provided QSF services to nine Michigan entities and has no referral agreements with any Michigan party. (Kott Decl. ¶ 9.)

Creating an EPTC account allows users to access their trust agreements and other documents (e.g., a Distribution Petition Agreement), but users cannot purchase any product, receive or request distributions from a QSF, or engage in any other commercial transaction on EPTC's website. (*Id.* ¶ 19.) The relevant QSF transactions

12

(e.g., creation of the QSF, execution of trust agreements, requests for distributions) take place outside the website within Virginia. (*Id.* ¶¶ 23, 35.)

Pitt McGehee and Ringler logged into its account 118 times after the QSF was approved in Virginia, each time agreeing to the Terms and Conditions, but this access merely allowed Pitt McGehee to access information related to its Trust Agreements. (*Id.* ¶¶ 19, 33.) Pitt McGehee submitted Distribution Petition Agreements to EPS via email. EPTC's Trust Committee and appointed affiliates, including EPS, received and reviewed those petitions in Virginia, and processed distributions from the QSF, also located in Virginia. (*Id.* ¶¶ 23, 35.)

Nor does EPTC's website or any other online advertisement by EPTC specifically target Michigan residents. Pitt McGehee asserts that "EPTC actively markets within the State of Michigan" and "actively advertise[s itself] as conducting business nationwide." (Am. Compl. ¶¶ 7, 9.) Specifically, Pitt McGehee points to EPTC's corporate brochure, which describes EPTC as providing fiduciary services to "clients across the U.S. and internationally." (*Id.* ¶ 9, Ex. A to Am. Compl. at 6.) But advertising nationally does "not rise to the level of purposeful contact with Michigan required by the Constitution in order to exercise personal jurisdiction over the advertiser." *Sports Auth. Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 812 (E.D. Mich. 2000) (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994)). Pitt McGehee cannot point to any

advertisement or statement on EPTC's website that targets Michigan residents. Because EPTC's website does not specifically target Michigan residents and is not sufficiently interactive to justify the exercise of personal jurisdiction, Pitt McGehee cannot satisfy the purposeful availment prong against EPTC.

### b. The cause of action does not arise from EPTC's actions in Michigan.

To satisfy the next prong, Pitt McGehee must establish that its cause of action has a substantial connection with EPTC's *in-state* activities. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (citations omitted).  Pitt McGehee brings claims for breach of fiduciary duty, negligence, gross negligence, negligent misrepresentation, intentional misrepresentation, and violation of M.C.L. § 440.4702.  None of these claims arise from EPTC's activities in Michigan.

The crux of the Complaint is that EPTC allegedly failed to protect the QSF which is registered and administered, and whose assets are located in Virginia.  None of EPTC's (nor EPS') conduct took place in Michigan. The QSF was approved, recorded, and established in Virginia. The settlement proceeds that make up the QSF transferred from the Master QSF in Indiana directly to the QSF in Virginia.  (Kott Decl. ¶ 31.)  No money originated or passed through Michigan.  EPTC's Trust Committee and appointed affiliates processed Distribution Petition Agreements in Virginia. (*Id.* ¶ 38.) The Trust Agreements stipulate that a Virginia Court has exclusive jurisdiction. (Trust Agmt. § 2.29; Trust Admin. Agmt. § 6.47.) Finally, the

14

unknown third-party cyber criminals who sent fraudulent emails targeted the QSF *in Virginia*. (Kott Decl. ¶ 39.) Because Defendants' actions with respect to the QSF and Pitt McGehee's claims both arise exclusively in Virginia, Pitt McGehee cannot satisfy the "arise from" prong.

### c. The exercise of personal jurisdiction over EPTC proves unreasonable and does not comport with Due Process requirements.

To determine reasonableness, courts consider the burden on Defendants, the interest of the forum state, Pitt McGehee's interest in obtaining relief, and the interest in other states "in securing the most efficient resolution of controversies." *Bird*, 289 F.3d at 875. The balance of these factors weighs against finding reasonableness.

Hailing a foreign entity that does operate in Michigan into a Michigan federal court imposes a high burden on EPTC, especially in light of the controlling forum selection clause requiring the parties to litigate exclusively in Fauquier County, Virginia. (*See* Terms of Use.) Although Pitt McGehee has an interest in obtaining relief in its home state, Pitt McGehee can seek the same relief in the contractually selected forum. Finally, Virginia's interest trumps Michigan's interest in resolving this matter because the QSF was established and approved in Virginia, a Virginia governmental authority has continuing jurisdiction over the QSF, the QSF was administered in Virginia, and the third-party cyber criminals targeted the QSF in Virginia. (Kott Decl. ¶¶ 24, 39.)

15

Because EPTC does not have sufficient minimum contacts with Michigan and Pitt McGehee cannot satisfy any prong of the due process analysis, the Court cannot invoke personal jurisdiction over EPTC, and it should grant EPTC's Motion.

**B.      Counts I through VI Fail to State a Claim Against EPTC, and the Complaint Fails to State Any Claim Against EPS.**

If the Court finds that it can exercise personal jurisdiction over EPTC, it should dismiss Counts I through VI, as well as EPTC's request for fees.

**1.  Pitt McGehee cannot escape the contracts governing its claims.**

As a threshold matter, Pitt McGehee's claims against EPTC sound in contract—not tort. Pitt McGehee repeatedly alleges that it relied on statements made in EPTC's promotional materials from EPTC's website regarding EPTC's ability to manage, administer, and distribute proceeds from a QSF in a secure manner, and Pitt McGehee attaches these materials to the Complaint. (Am. Compl. ¶¶ 16-19, 45, 48, 59-60, 74-75, 80-81; Exs. A-B to Am. Compl.) These materials make clear that:

> The terms applicable to the QSF Trust, and the Terms and Conditions on the www.easternpointtrust.com, website *shall supersede and have precedent over any information provided herein*.

(Ex. B to Am. Compl. at 12.) This statement specifically refers to the Trust Agreements and Terms of Use, which control the parties' relationship and gave rise to the duties that form the basis of Pitt McGehee's tort claims. The Court may consider these contracts, attached to the Kott Declaration, in determining EPTC's Rule 12(b)(6) Motion because they are incorporated by reference into the Complaint

16

and integral to Pitt McGehee's claims. *SFS Check, LLC v. First Bank of Delaware*, 990 F. Supp. 2d 762, 774 (E.D. Mich. 2013), *aff'd*, 774 F.3d 351 (6th Cir. 2014).

Pitt McGehee attempts to avoid the Terms of Use and Trust Agreements, alleging that they contain terms "inconsistent with one another. . . , unreasonable, unconscionable, unjust, and void as to public policy," including "purported releases of future claims . . . ." (Am. Compl. ¶ 31.) But Pitt McGehee does not cite *any* specific provision of the Terms of Use or Trust Agreements that would render them unenforceable. Moreover, each contract contains a severability clause that would strike any allegedly invalid provision, leaving the remainder of the agreement intact. (*See* Terms of Use at 21; Trust Agmt. § 2.12; Trust Admin Agmt. § 6.14.)

Pitt McGehee further claims that the Terms of Use and Trust Agreements do not apply because Pitt McGehee never signed or gave informed consent to these contracts. (Am. Compl. ¶ 28.) This argument lacks merit for several reasons. First, neither the Trust Agreements nor the Terms of Use required Pitt McGehee's signature to take effect. (*See* Terms of Use, Trust Agmt., Art. 3; Trust Admin Agmt., Art. 7); *see also* Restatement (Third) of Trusts § 14 (1996) ("A trust can be created without notice to or acceptance by any beneficiary or trustee."). Pitt McGehee claims it received the QSF documents (Am. Compl. ¶ 28), but nowhere in the Complaint does Pitt McGehee allege that it rejected or objected to their terms.

17

Even assuming as true the allegation that Pitt McGehee never consented to the Trust Agreements, the Terms of Use control as a standalone agreement. Pitt McGehee cannot plausibly allege that it did not consent to the Terms of Use given the replete allegations regarding Pitt McGehee's use of and reliance on EPTC website statements. (Am. Compl. ¶¶ 15 n.3, 29, 73, 79.) To access any of the promotional materials attached to or referenced in the Complaint, Pitt McGehee had to access EPTC's website. (*See* Am. Compl. ¶ 15 n.3 (linking EPTC's website).)

The website included in Complaint ¶ 15, note 3, shows that EPTC's website conspicuously displays and hyperlinks the Terms of Use, and contains a large banner stating: "By using this site, you agree to our Privacy Policy and our Terms of Use." (*Id.*) Pitt McGehee cannot claim reliance on multiple EPTC website statements and feign ignorance to the clearly displayed Terms of Use. The Complaint allegations make clear that Pitt McGehee had actual or constructive notice of the Terms of Use, and manifested assent to the Terms of Use by accessing and using EPTC's website. *See Lee v. Panera Bread Co.*, 2023 WL 2606611, at *4 (E.D. Mich. Mar. 6, 2023) (discussing enforceability of browsewrap and clickwrap agreements). Accordingly, the Terms of Use constitute a valid and enforceable agreement governing Pitt

18

McGehee's access and use of the website and any trust services provided by EPTC and its affiliates, including EPS. (*See* Terms of Use.)

### 2. The parties' express contracts preclude Counts I through V.

The crux of Pitt McGehee's tort claims in is that EPTC allegedly failed to adequately safeguard the QSF assets and misrepresented its ability to do so. The parties' express contracts bar these claims. The Terms of Use and Trust Agreements outline the parties' duties and obligations regarding safeguarding information, EPTC's ability to rely on instructions and information provided by Pitt McGehee, and liability for fraudulent information given to EPTC associated with distributions. (Terms of Use at 2, 6, 12; *see also* Trust Admin Agmt. §§ 6.39.)

Specifically, the Terms of Use outline account security and require Pitt McGehee to safeguard it systems, usernames, and passwords, and notify EPTC of any unauthorized account access or breach of security. (Terms of Use at 3.) Further, the Terms of Use require Pitt McGehee "to implement *all possible safeguards* to protect all information, passwords, system access information and forms . . . associated with requesting distributions[.]" (*Id.* at 12 (emphasis added).)

The Terms of Use also make clear that the Trustee and Trust Administrator may rely on any information or instructions received from a claimant, grantor, beneficiary, or attorney "without any duty to conduct any additional audit, investigation, or inquiry to investigate, detect or determine if such information [is]

19

fraudulent, unauthorized, coerced, . . . or [incomplete]." (*Id.* at 6.) The Trust Administration Agreement likewise states that that Trustee "shall be fully protected" in relying on any writing or document "believed by it to be genuine and to be signed . . . by the proper persons." (Trust Admin. Agmt. § 6.39.)

Because express contracts cover the duties and obligations that form the basis of Pitt McGehee's claims for breach of fiduciary duty (Count I), negligence (Count II), gross negligence (Count III), negligent misrepresentation (Count IV), and fraud (Count V), these claims must fail.

### a.  The gist of the action doctrine bars Count I. [3]

The "gist of the action doctrine" precludes tort suits "for mere breach of contractual duties unless the plaintiff can point to separate or independent duties giving rise to the tort." *Addie v. Kjaer*, 737 F.3d 854, 865 (3d Cir. 2013) (applying law of Virgin Islands). In Count I, Pitt McGehee alleges that EPTC owed it fiduciary duties in connection with the QSF and breached those duties by failing to implement and maintain commercially reasonable security policies and procedures with respect to preservations of monies within the QSF. (Am. Compl. ¶¶ 58, 61.) Any alleged

---

[3] Because fiduciary obligations relate to the internal affairs of a company, courts have displaced Michigan law with the law of the company's state of incorporation. *See, e.g.*, *Atlas Techs., LLC v. Levine*, 268 F. Supp. 3d 950, 961 (E.D. Mich. 2017).

20

duty to implement and maintain security policies arose under the Terms of Use; thus, the gist of the action doctrine bars Count I.

### b. Counts II through V fail to allege breach of an independent, extra-contractual duty. [4]

"It is well-settled under Michigan law that an action in tort requires a breach of duty separate and distinct from a breach of contract." *Gresham v. Haggard*, 2012 WL 4340825, at *11 (E.D. Mich. Aug. 7, 2012), *report and recommendation adopted*, 2012 WL 4341050 (E.D. Mich. Sept. 21, 2012); *see also Hart v. Ludwig*, 79 N.W.2d 895, 898 (Mich. 1956). Because Pitt McGehee premises each of its tort claims on conduct governed by the Terms of Use, Counts II through V must fail.

Like Count I, Counts II and III for negligence and gross negligence allege that EPTC breached its duty of reasonable care by "failing to maintain . . . commercially reasonable security policies." (*Id.* ¶¶ 64-65, 68-69.) Count IV and V allege that EPTC misrepresented its capacity and ability to "safely and securely administer and distribute monies placed within a QSF." (*Id.* ¶¶ 73, 79.) Because the Terms of Use govern account security, EPTC's ability to rely on information provided by Pitt McGehee, and protection of trust assets from theft, conversion, or misuse, Pitt McGehee fails to allege breach of an extra-contractual duty.

---

[4] Michigan law applies to Counts II through V because the Complaint does not contain sufficient allegations to displace Michigan law, which presumptively applies to tort claims. *Atlas Techs., LLC*, 268 F. Supp. 3d at 961.

21

Courts routinely dismiss tort claims where an express contract governs the parties' conduct. *See, e.g.*, *Revelation Yogurt, LLC v. Kline L. Grp., P.C.*, 2021 WL 1812694, at *2 (E.D. Mich. May 6, 2021) (escrow agreement precluded breach of fiduciary duty and negligence claims); *Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc.*, 2013 WL 27921, at *15 (E.D. Mich. Jan. 2, 2013) (granting summary judgment and dismissing negligent misrepresentation claim that "would not exist, save for [the parties' contract]"); *Orleans Int'l, Inc. v. Mistica Foods, L.L.C.*, 2016 WL 2851349, at *4 (E.D. Mich. May 16, 2016) (dismissing fraud claim based upon contractual promises); *In re Trade Partners, Inc. Invs. Litig.*, 2008 WL 3875396, at *16 (W.D. Mich. Aug. 15, 2008) (granting summary judgment and dismissing claims for negligence, gross negligence, and breach of fiduciary duty based on trust agreement).

Because the alleged duty to provide and maintain adequate security policies arose solely under the parties' contract and Pitt McGehee fails to allege violation of an independent, extra-contractual duty, Counts I through V fail to state a claim.

### c. Counts IV and V fail to allege a material misrepresentation or justifiable reliance.

Pitt McGehee alleges that EPTC negligently or intentionally misrepresented its ability to safely and securely administer the QSF, the level of oversight provided to beneficiaries, and its expertise in administering QSFs, and that Pitt McGehee relied on these alleged misrepresentations to its detriment. (Am. Compl. ¶¶ 73-75,

22

79-81.) Pitt McGehee's points to statements on EPTC's website, that "[EPTC] provides an unmatched level of compliance and risk avoidance," as well as "asset safekeeping, which provides our clients with the assurance of continual oversight[.] (Ex. B to Am. Compl. at 10; Am. Compl. ¶¶ 18-19.) None of the statements identified by Pitt McGehee can support a claim for negligent or fraudulent misrepresentation because, at most, these statements amount to mere unfulfilled promises regarding the compliance services offered by EPTC. *See Mieske v. Harmony Elec. Co.*, 270 N.W.2d 216, 218 (Mich. 1936) ("[A] claim for misrepresentation cannot be based on "mere broken promises [or] unfulfilled predictions[.]").[5]

Even if Pitt McGehee identified an actionable statement, Counts IV and V fail because Pitt McGehee does not allege reasonable or justifiable reliance on the alleged misrepresentations regarding account security. *MacDonald v. Thomas M. Cooley L. Sch.*, 880 F. Supp. 2d 785, 792 (W.D. Mich. 2012), *aff'd*, 724 F.3d 654 (6th Cir. 2013). The Terms of Use make clear that *Pitt McGehee*—not EPTC—must "implement all possible safeguards" to protect information sent to the Trustee and Trust Administrator. (Terms of Use at 7.) Pitt McGehee cannot claim reliance on general statements regarding asset protection made by EPTC and ignore the security

---

[5] Pitt McGehee also alleges, without any explanation as to how or why the statement is false, that EPTC misrepresented its licensing status. (Am. Compl. ¶¶ 73, 79.) Without more, this alleged "misrepresentation" cannot support Counts IV or V.

obligations and other disclaimers set forth in the Terms of Use or its duties under the Michigan Rules of Professional Conduct to safeguard Pitt McGehee's systems and client data, and supervise staff. *See Cummins v. Robinson Twp.*, 770 N.W.2d 421, 435 (Mich. Ct. App. 2009) ("There can be no fraud where a person has the means to determine that a representation is not true.").[6]

### 3. Pitt McGehee fails to allege an underlying claim to support its request for a declaratory judgment in Count VI.

Pitt McGehee asks the Court to declare the EPTC Documents and Terms of Use void in Count VI. (Compl. ¶¶ 83-87.) But "[a] claim for declaratory judgment cannot stand on its own." *Krishnan v. Krishnan*, 2005 WL 8155735, at *3 n.1 (E.D. Mich. Nov. 21, 2005); *see also Cruz v. Cap. One, N.A.*, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016) ("declaratory and injunctive relief are remedies, not causes of action"). "[R]ather the request for declaratory judgment must accompany the substantive claim for which the declaratory judgment is sought." *Krishnan*, 2005 WL 8155735, at *3 n.1. Pitt McGehee fails to plausibly allege any underlying, substantive claim that would entitle it to the declaratory relief sought in Count VI. Accordingly, the Court must dismiss Count VI.

---

[6] The Terms of Use and EPTC's website also state that information provided on the website "is for informational purposes only." (Terms of Use at 8.)

24

**4. Pitt McGehee fails to plead entitlement to attorneys' fees.**

The Complaint fails to identify any contract, statute, court rule, or other basis for recovery of fees under the American Rule. *Alticor Glob. Holdings, Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 2020 WL 13180020, at \*4 (W.D. Mich. Sept. 30, 2020). Thus, the Court should dismiss Pitt McGehee's request for fees on all claims.

## VI.   CONCLUSION

For the reasons stated herein, EPTC respectfully requests that the Court grant its Motion and award EPTC such further relief as it deems appropriate.

Dated: May 26, 2023       Respectfully submitted,

/s/ Matthew P. Allen
    Miller, Canfield, Paddock and Stone, P.L.C.
    Matthew P. Allen (P57914)
    840 W. Long Lake Rd., Ste. 250
    Troy, MI 48098
    Phone: (248) 267-3290
    Email: allen@millercanfield.com

    Williams Mullen
    Robert Van Arnam (NC Bar No. 28838; *admitted to E.D. Mich.*)
    301 Fayetteville St, Suite 1700
    Raleigh, NC 27601
    Phone: (919) 981-4055
    Fax: (919) 981-4300
    Email: rvanarnam@williamsmullen.com

    *Attorneys for Defendant*

25

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2023, I electronically filed the foregoing papers with the Clerk of the Court using the ECF System which will send notification of such filing to all ECF filers of record.

By: */s/ Matthew P. Allen*