# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PITT, MCGHEE, PALMER, BONANNI & )
RIVERS, P.C., A MICHIGAN )
PROFESSIONAL CORPORATION )
                                 )
         Plaintiff, )
                                 )
v.                              ) Civil Action No. 2:23cv10166
                                 )
                                 )
EASTERN POINT TRUST COMPANY, )
*et al.*                             )
                                 )
         Defendants. )

## DECLARATION OF SAMUEL KOTT

I, Samuel Kott, declare and state as follows:

1. I am a resident of the Commonwealth of Virginia and am over the age of 18 years old. I make this Declaration in support of Defendant Eastern Point Trust Company's ("EPTC") Motion to Dismiss the Amended Complaint filed by Plaintiff Pitt, McGehee, Palmer, Bonanni & Rivers, P.C., a Michigan Professional Corporation ("Pitt McGehee") for lack of personal jurisdiction and the Motion to Dismiss on *forum non conveniens* grounds filed jointly by EPTC and Defendant Eastern Point Services, Inc. ("EPS"). If called as a witness, I could and would testify consistent with the following.

2. I am Vice President and Corporate Counsel of EPTC, having served in

those capacities for the last four years. I work in Warrenton, Virginia.

3. I am intimately familiar with EPTC's website and account creation, the Terms of Use, qualified settlement fund services offered by EPTC, Pitt McGehee's June 2, 2022 QSF application, the creation and administration of the Pitt McGehee USAG QSF (the "QSF"), and the contract documents that govern the QSF.

4. As Vice President and Corporate counsel, I am familiar with EPTC's business operations and record-keeping practices. By reason of my position, and information provided to me in that capacity, I am authorized and qualified to make this declaration.

5. EPTC is incorporated in and maintains its principal place of business in the U.S. Virgin Islands. A subsidiary of EPTC, EPS, provides ministerial services associated with the administration of the QSF from EPS' offices in Warrenton, Virginia.

6. EPTC is an entity separate and distinct from EPS. EPTC maintains its own corporate formalities, including separate books, tax returns, records, and financial accounts, and has multiple clients.

7. EPTC and its affiliates do not provide fiduciary, escrow and/or ministerial services in Michigan.

8. EPTC does not have any offices, property, employees, or physical presence in Michigan.

9. EPTC does not advertise in Michigan. No EPTC employee or representative has visited Michigan to solicit or conduct business on behalf of EPTC. Over the past ten years, EPTC has provided QSF services to 9 Michigan entities.

10. Specifically, no EPTC representative has physically visited any Pitt McGehee office or staff member in Michigan or elsewhere.

11. EPTC's website, www.easternpointtrust.com, provides information about QSF services offered by EPTC, a QSF brochure, and links to separate PDFs, explaining the requirements of a QSF, how to establish a QSF, and associated fees.

12. The bottom of EPTC's website contains the following disclosure: "Fiduciary and trustee services are only offered and performed by Eastern Point Trust Company . . . pursuant solely to the terms of the associated governing documents." The disclosure further states: "[t]his website is for informational purposes only and is not an offer to sell, a solicitation, or an offer to buy any security. Nor is the content here an offer to provide legal, fiduciary, or trust services" A screenshot from EPTC's website showing the complete language of the disclosure is attached hereto as **Exhibit A**.

13. A banner, pictured below, runs across EPTC's website stating: "[b]y using this site, you agree to our Privacy Policy and Terms of Use."

By using this site, you agree to our **Privacy Policy** and our **Terms of Use.**

14.    Pitt McGehee retained a third-party broker, Ringler Associates, ("Ringler") to establish and administer a QSF for the purpose of receiving, holding, and distributing settlement proceeds and attorneys' fees arising from the resolution of claims in the matter of *In re: USA Gymnastics, Chapter 11*, Case No. 18-09108-RLM-11, pending in the U.S. Bankruptcy Court for the Southern District of Indiana.

15.    On June 2, 2022, Monique Crosby ("Crosby"), Ringler Settlement Coordinator, created an EPTC account for Pitt McGehee, by visiting the "Create User Account" page.

16.    To create Pitt McGehee's account, Crosby entered a name and email and provided information about the nature of the services sought.

17.    The "Create User Account" page pictured below was copied from EPTC's website on March 29, 2023.

## Create User Account

Create a login for your new account.

STEP 1 OF 4

Email Address

Password

Password Requirements:
Must be at least 8 characters long
Must contain a lowercase letter
Must contain an uppercase letter
Must contain a number or special character

Already have an account? Login Here.

By clicking the "NEXT STEP" action button below to access the Platform, I reaffirm my agreement to these Terms and Conditions and Privacy Statement

NEXT STEP

4

18.     The "Create User Account" page makes clear that account creation requires consent to EPTC's Terms and Conditions (the "Terms of Use"). The phrase "Terms and Conditions" contains a hyperlink to EPTC's Terms of Use.

19.     Creating an EPTC account allows users to access their trust agreements and other documents (e.g., a Distribution Petition Agreement), but users cannot purchase any product, receive or request distributions from a QSF, or engage in any other commercial transaction on EPTC's website.

20.     A true and accurate copy of EPTC's Terms of Use is attached hereto as **Exhibit B**. EPTC updates its Terms of Use from time to time. The attached Terms of Use were captured on or about November 7, 2022 and are substantially similar to the Terms of Use that appeared on EPTC's website in June 2022.

21.     After creating Pitt McGehee's account, Crosby submitted an application to EPTC on behalf of Pitt McGehee to create a Qualified Settlement Fund pursuant to 26 C.F.R. § 1.468B-1 for settlement proceeds to be decanted from the Master QSF in Indiana, The USA Gymnastics Trust.

22.     A true and accurate copy of the June 2, 2022 QSF application completed by Crosby is attached hereto as **Exhibit C**.

23.     Pitt McGehee's QSF application was sent to and received by a server located in Virginia.  Upon receipt of the application, EPTC sent Crosby an email at 10:48 a.m. with the subject line: "Congratulations your QSF submission was

5

successful." A true and accurate copy of the email is attached here to as **Exhibit D.** The email states, "following the approval process, you will receive an email indicating your trust is established and ready to receive initial funding."

24.     The "approval process" is two-fold. First, EPTC reviewed the application to ensure its compliance with 26 C.F.R. § 1.468B-1. Then EPTC submitted the application to the governmental authority needed to review and approve the QSF. The governmental authority, who is located in Fauquier County Virginia, approved and recorded the QSF as a statutory trust, based on the expressed terms of the Trust and Trust Administration Agreements, and their incorporated terms, resulting in the qualification of the QSF.

25.     EPTC sent Crosby a second email on June 2, 2022, at 11:39 a.m. with the subject line "Your QSF has been approved and fully established." A true and accurate copy of the email is attached hereto as **Exhibit E.** The email explains that the Fund was approved, established, processed and is ready for funding.

26.     The 11:39 a.m. email contains the following attachments: (i) the Pitt McGhee USAG QSF Trust Agreement dated June 2, 2022 (the "Trust Agreement"), attached as **Exhibit F**; (ii) the Pitt McGehee USAG Qualified Settlement Fund Trust Administration Agreement dated June 2, 2022 (the "Trust Administration Agreement"), attached as **Exhibit G**; (iii) a QSF Settlement Fund Summary, attached as **Exhibit H**; (iv) a Notice Regarding QSF Funds Availability; (v) Ex-Parte

Approval for the Establishment of the Pitt McGehee QSF and Appointment of Trustee; (vi) a Certificate of Irrevocable QSF Trust Existence and Trustee's Authority; (vii) a W-9 for the Trust; and (viii) funding and wiring instructions.

27.    The 11:39 a.m. email explains, "[a]ll associated trust documents, funding and wiring instructions, and notices, have been attached, are available for access 24/7 via your Documents section of your client's portal trust block." (Ex. E.)

28.    On or about June 8, 2022, Pitt McGehee representative, Renee Ricken ("Ricken") created another EPTC user account with the Pitt McGehee email address "rricken@pittlawpc.com." To create the account, Ricken followed the same process as Crosby, described above, which required consenting to the Terms of Use.

29.    Pitt McGehee never objected to, rejected, or requested an amendment to the Terms of Use or Trust Agreements.

30.    On June 10, 2022, EPTC sent Crosby an email with the subject line "Initial QSF funding has been received." A true and accurate copy of the email is attached hereto as **Exhibit I**. The email explains that the initial funding has been received and processed and that the balance of the Fund, statements, investments, and account activity can be viewed on the client dashboard.

31.    The funding of the QSF occurred in Virginia via a decanting transfer from *The USA Gymnastics Trust*, the original master QSF, formed and operating under the laws of Indiana and holding the client's settlement proceeds Indiana. No

7

decanted funds from the original master QSF passed through Michigan.

32. All consideration for the operation of the QSF came from the interest income of the Fund, whose assets are located in Virginia. Pitt McGehee paid no consideration from Michigan or from its firm or client funds.

33. After the QSF was created, Pitt McGehee and its agent Ringler logged into their online EPTC account(s) at least 118 times.

34. EPTC's login portal pictured below was copied from EPTC's website on March 29, 2023.

## Welcome Back
Login to your account.

Email Address

Password

Forgot password?

By clicking the "LOG IN" action button below to access the Platform, I reaffirm my agreement to these Terms and Conditions and Privacy Statement

LOG IN

New to Eastern Point? Create an account!

35. EPTC's login portal, pictured above, clearly states "[b]y clicking the 'LOG IN' action button below to access the Platform, I reaffirm my agreement to these Terms and Conditions . . ."

36.     Support Index 3 of the Trust Agreement explains that distribution of funds requires submission of a "Petition for Distribution Form," available on EPTC's website, and sets forth the method of submission (i.e., via mail, email, and/or fax). (Ex. F.)

37.     Between June 13 and November 7, 2022, Pitt McGehee executed and emailed at least 40 Distribution Petition Agreements to EPS, establishing the unique verified digital signature and Digital-ID fingerprint of Pitt McGehee's authorized staff person. A true and accurate copy of Pitt McGehee's June 13, 2022 Distribution Petition Agreement is attached hereto as **Exhibit J**.

38.     EPTC's Trust Committee and appointed affiliates, including EPS, processed the Distribution Petition Agreements by initiating wires in Virginia drawn on Virginia banks.

39.     In July 2022, third-party cyber criminals reportedly took unimpeded control of Pitt McGehee's systems, devices and email systems for weeks and used those systems and client data along with verified passwords, signatures, client information and other confidential information to target and purloin client funds from the QSF.

40.     Pitt McGehee, through its agent Ringler, had the opportunity when submitting the application to create the QSF to appoint a Supervising Third Party to

9

perform secondary verification and approval of all Distribution Petition Agreements and intentionally declined that option. (*See* Ex. C at 1.)

41. Login records demonstrate that Pitt McGhee failed to monitor the activity of the account as required by the Terms of Use, which state:

> "The Grantor(s), Beneficiary(ies), Claimant(s), and their Parties in Interest have a duty to monitor the activity of the trust and acknowledge and agree that any resulting damages stemming from the failure to monitor the trust is not EPTC's liability, and the Grantor(s), Beneficiary(ies), Claimant(s) and their Parties in Interest waive all claims against EPTC and its Third Parties in such circumstances."

(Ex. B at 21.) This choice to not have secondary verification was reaffirmed with each submission of Distribution Petition Agreements, as the name and signature of an Additional Required Approving Authority were not included in any submitted Distribution Petition Agreement. (*See, e.g.*, Ex. J.)

42. Any correspondence between EPTC and Pitt McGehee or Ringler related to the facilitation and administration of the QSF.

43. EPTC is amenable to service of process in Virginia, which is the state in which the Fauquier County Circuit Court sits and the jurisdiction of the Governmental Authority which has continuing jurisdiction over the QSF pursuant to §1.468B-1(c)(1).

44. Exhibit A (EPTC website disclosure) and the images included therein were captured on March 29, 2023 from EPTC's website. Exhibit B (Terms of Use) was captured on November 7, 2022. EPTC updates its website and Terms of Use

10

from time to time. These images are the same or substantially similar to what Pitt McGehee and Ringler viewed when accessing EPTC's website, the "Create User Account" page, the Terms of Use, and the login portal in June 2022.

45. Based on the above, I certify that, the website images included herein and the Exhibits attached to this Declaration:

    a. were made at or near the time of the acts or events recorded in them;

    b. were made by, or from information transmitted by, persons believed to have knowledge of the acts or events recorded in them;

    c. were kept in the course of the EPTC's regularly conducted business activity; and

    d. it was the regular practice of EPTC to keep the records referenced in and attached to this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED this 26th day of May, 2023.

_____
Samuel Kott

11

# EXHIBIT A



**Eastern Point Services**
P.O. Box 536
Warrenton, VA 20188

**Solutions**

QSF360™

Settlement Protection Trust

C3BR Trusts

Foreign Payments

KissTrust™

Custom Solutions

Confidential Settlement
Solutions

Reg D/Reg A Escrow Services

Private Placement Escrow
Services

Custodial Escrow

**About Us**

Overview

Executive Team

**Learn**

FAQs

Fees

Forms

Glossary

**Contact**

Contact Us

KissTrust™ Site

Copyright © 2006-2020 Eastern Point Trust Company.
KissTrust is Patented. KissTrust is a registered trademark of
Eastern Point Trust Company.

Privacy Policy    Terms and Conditions



Eastern Point Trust Company is a member of
the American Bankers Association

Eastern Point Trust Company offers a variety of trust, trust administration services. In addition to self-help; and attorney support software; and document management systems, which provide self-service, automated software solutions. Fees charged are solely for trustee services or licensing fees to access the self-help system, and fees are not a drafting or document preparation fee. The content herein is provided, and limited to, information and descriptions of the features and benefits of our services, products, and the requirements of the trustee when applicable.This website is for informational purposes and is not an offer to sell or a solicitation of an offer to buy any security or legal or trust services. The information herein is not intended to be legal or investment advisory advice, and should not be constructed as legal or investment advisory advice. Eastern Point Trust Company and its affiliated companies are not law firms, are not a lawyer referral service, do not act as your attorney or investment advisor. We are not a substitute for the advice of an attorney or an investment advisor; as such, we do not provide any advice, explanation, opinion, or recommendation about possible legal rights nor express any legal guidance on the matters contained herein nor do we provide investment advice. As appropriate, seek the advice of an attorney if you have questions concerning legal questions, remedies, defenses, options; or a licensed investment advisor related to investment strategies and products.Your accessing and utilization of this website constitutes your agreement to the Terms and Conditions. Please review them carefully as they contain important information, disclosures and are legally binding.

# EXHIBIT B



# EPTC Platform & Website Terms & Conditions

## Acknowledgment and Acceptance of Terms of Use

These Terms of Use are entered into by and between the user of the Platform ("you") and Eastern Point Trust Company and its Affiliates and Third Parties (jointly "Eastern Point Trust Company," "EPTC," "we," or "us"). The following terms and conditions, together with any documents they expressly incorporate by reference, govern your access to, and use of, this Platform, all associated or linked EPTC websites and associated trust administration and trustee services, or related services provided by EPTC, its Affiliates, or its Third Parties. The preceding includes, but is not limited to, the websites www.easternpointtrust.com, www.kisstrust.com, and any linked or affiliated websites including any content, functionality, and services offered on or through the same (collectively, the "Platform"), whether as a guest or a registered user.

Please read these Terms of Use carefully. These Terms of Use constitute a binding legal agreement in consideration of, and regarding your use of, the entire Platform. By using or accessing the Platform, you acknowledge that you have read these Terms of Use and our Privacy Policy (located at https://www.easternpointtrust.com/privacy-policy), which is incorporated herein by this reference, and agree to be bound by them. With each access or use of the Platform, you agree to these Terms of Use as they may have been amended from time to time.

THESE TERMS OF USE CONTAIN BINDING WAIVERS AND DISCLOSURES WHICH MAY AFFECT YOUR LEGAL RIGHTS. PLEASE READ THE INFORMATION FULLY AND CAREFULLY.

These Terms of Use are a separate legal agreement and are in addition to, and not a replacement for, any other agreement you may enter into with EPTC. Additionally, these Terms of Use may also be incorporated by reference and made part of any other agreement you enter with EPTC or a trust you create.

Your access to, and use of, the Platform and ongoing trust services is conditioned upon your acceptance of, and compliance with, these Terms of Use. These Terms of Use apply to all visitors, users, Beneficiaries, Claimants, and others who wish to access or use the Platform.

The Platform is offered and available to users who are 18 years of age or older. By using the Platform, you represent and warrant that you are of legal age to form a binding contract with EPTC and meet all eligibility



requirements. If you do not meet all of these requirements, you must not access or use the Platform.

## Scope and Changes to the Terms of Use

By using the Platform, you agree to follow and be bound by these Terms of Use and agree to comply with all applicable laws and regulations, including but not limited to, United States Bank Secrecy Act laws, export and re-export control laws and regulations, all federal and state copyright and intellectual property laws, and any other federal or state regulation, statute, administrative code, or common law.

EPTC may amend these Terms of Use at any time at its sole discretion, including without limitation, by posting revised terms on its websites at www.easternpointtrust.com (or other affiliated websites). All changes are effective immediately when we post them and apply to all access to, and use of, the Platform thereafter. Your continued use of the Platform following the posting of revised Terms of Use means that you accept and agree to the changes. You are expected to check this page from time to time so you are aware of any changes, as they are binding on you. You further agree that the Terms of Use in effect at the time of each visit supersede and amend any prior Terms of Use and that all acts by you shall be governed by the Terms of Use then in effect.

If you disagree with any part of the current Terms of Use, then you do not have permission to access the Platform, must immediately suspend your use thereof, and must inform EPTC in writing via USPS certified Mail within 3 days of the suspension. Notices confirming suspension and objection to the Terms of Use must be mailed to Client Services, P.O. Box 232 Warrenton, VA 20188.

## Accessing the Platform and Account Security

We reserve the right to withdraw or amend the Platform and any service or material we provide on the Platform, at our sole discretion, without notice. We will not be liable if, for any reason, all or any part of the Platform is unavailable at any time or for any period. From time to time we may restrict access to some parts of the Platform to users, including registered users.

You are responsible for both:

- Making all arrangements necessary for you to have access to the Platform.
- Ensuring that all persons who access the Platform through your internet connection are aware of these Terms of Use and comply with them.

You may be asked to provide certain registration details or other information to access the Platform or some of the resources it offers. It is a condition of your use of the Platform that all information you provide on the Platform is correct, current, and complete. You agree that all information you provide to register with this Platform or otherwise, including, but not limited to, through the use of any interactive features on the Platform, is governed by our Privacy Policy located at https://www.easternpointtrust.com/privacy-policy, and you consent to all actions we take with respect to your information consistent with our Privacy Policy.



If you choose, or are provided with, a user name, password, or any other piece of information as part of our security procedures, you must treat such information as confidential and you must not disclose it to any other person or entity. You also acknowledge that your account is personal to you and agree not to provide any other person with access to this Platform or portions of it using your user name, password, or other security information. You agree to notify us immediately of any unauthorized access to, or use of, your user name or password or any other breach of security. You also agree to ensure that you exit from your account at the end of each session. You should use particular caution when accessing your account from a public or shared computer so that others are not able to view or record your password or other personal information.

We have the right to disable any user name, password, or another identifier, whether chosen by you or provided by us, at any time in our sole discretion for any or no reason, including if, in our opinion, you have violated any provision of these Terms of Use.

It is a violation and breach of these Terms of Use, and a deemed act of computer trespass subject to criminal and civil enforcement, to access the Platform, or attempt to access the Platform: (a) with a false Internet Protocol ("IP") address location other than the IP address of your actual physical access location; (b) through the use of any method similar to that of a proxy server, proxy server service, proxy redirect, IP address masking software, or another such service, method, or software whose purpose is to disguise or provide an IP address other than that of your physical access location; or (c) through the use of a Fictitious User Identity and/or the creation of a Fictitious User Account.

## Important Information About Procedures for Opening and Maintaining an Account

Pursuant to the Bank Secrecy Act and related laws, regulations and rules, federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity which opens or operates an account and all related Underlying Beneficial Owners ("UBOs") pursuant to EPTC's Customer Due Diligence, Know Your Customer and Anti Money Laundering policies.

A UBO is defined as an individual or entity (regardless of type, nature, or segmentation) which holds, directly or indirectly, twenty-five percent (25%) or more of capital, voting rights, beneficial rights, shares, membership interest, economic interest or other such rights in the underlying entity. Additionally, a UBO is any person, entity, arrangement, or structure that (i) ultimately owns, controls, or influences an account held at EPTC and the persons or entities on whose behalf a transaction is being conducted, and (ii) includes a person or entity who exercises ultimate effective control over said entity, arrangement or structure, or (iii) a person or entity which derives the benefits associated with ownership or control of said arrangement or structure. Finally, a UBO shall also include persons or entities (i) possessing a power of attorney relative to any of the preceding, (ii) persons or entities possessing sole veto authority, (iii) corporate directors or nominee directors that are appointed to conceal the true owners of a given firm, and (iv) shell companies, shell trusts, or other multi-layer structures or interconnected



arrangements.

The UBO of an Affiliate is that person or entity, proceeding up, down, or laterally in a chain of ownership beginning with and including the parent and all related, associated, or affiliated entities, subsidiaries, trust(s), persons, or any other legal structural type.

A Control Person ("Control Person") is defined as an individual or entity (regardless of type or nature) that, directly or indirectly, directs or controls the activity of an account or associated entity, including but not limited to its voting rights and ability to contractually bind the entity or control the disbursement or receipt of funds.

EPTC may request, as part of its government-mandated monitoring of accounts, updated Customer Due Diligence, Know your Customer, and Anti Money Laundering information at any time.

Notwithstanding the preceding, EPTC retains the absolute discretion to determine whether a party is a UBO or a Control Person and whether the provided information is responsive or warrants further inquiry.

## What does this mean for you?

We shall ask you for your name, address, date of birth, and other information that shall allow us to identify you and all associated UBO's Control Persons and entities. We may also require you to provide copies of driver's license(s), passport(s), or other identifying documents for all parties we deem appropriate. Additionally, we may access government and commercial databases to verify your identity and related information. In the case of an entity, information, including but not limited to all associated UBOs and Control Persons, as well as information regarding all related entities, trusts, affiliates, subsidiaries, or other holding structures, is specifically required by law and must be provided.

For non-compliant trusts and accounts, EPTC has no other option but to suspend further transactions. EPTC may also decide, at its sole discretion, to permanently close such non-compliant trusts without notice or right of appeal regardless of the terms of the associated agreement. In certain cases, EPTC may be compelled to file reports with various government agencies regarding a failure to comply with the BSA-related requirements or other suspicious activity.

## Prohibited Uses

You may use the Platform only for lawful purposes and in accordance with these Terms of Use. You agree not to use the Platform:

- In any way that violates any applicable federal, state, local, or international law or regulation (including, without limitation, any laws regarding the export of data or software to and from the U.S. or other countries).
- For the purpose of exploiting, harming, or attempting to exploit or harm minors in any way by exposing them to inappropriate content, asking for personally identifiable information, or otherwise.
- To send, knowingly receive, upload, download, use, or re-use any material that does not comply with these Terms of Use.



- To transmit or procure the sending of any advertising or promotional material, including any "junk mail," "chain letter," "spam," or any other similar solicitation.
- To impersonate or attempt to impersonate EPTC, an EPTC employee, another user, or any other person or entity (including, without limitation, by using email addresses associated with any of the foregoing).
- To engage in any other conduct that restricts or inhibits anyone's use or enjoyment of the Platform, or which, as determined by us, may harm EPTC or users of the Platform or expose them to liability.

Additionally, you agree not to:

- Use the Platform in any manner that could disable, overburden, damage, or impair the site or interfere with any other party's use of the Platform, including their ability to engage in real-time activities through the Platform.
- Use any robot, spider, or another automatic device, process, or means to access the Platform for any purpose, including monitoring or copying any of the material on the Platform.
- Use any manual process to monitor or copy any of the material on the Platform, or for any other purpose not expressly authorized in these Terms of Use, without our prior written consent.
- Use any device, software, or routine that interferes with the proper working of the Platform.
- Introduce any viruses, Trojan horses, worms, logic bombs, or other material that is malicious or technologically harmful.
- Attempt to gain unauthorized access to, interfere with, damage, or disrupt any parts of the Platform, the server on which the Platform is stored, or any server, computer, or database connected to the Platform.
- Attack the Platform via a denial-of-service attack or a distributed denial-of-service attack.
- Otherwise attempt to interfere with the proper working of the Platform.

## User Contributions

The Platform may contain interactive features (collectively, "Interactive Services") that allow users to post, submit, publish, display, or transmit to other users or other persons (hereinafter, "post") content or materials (collectively, "User Contributions") on or through the Platform.

All User Contributions must comply with the Content Standards set out below in these Terms of Use.

Any User Contribution you post to the site will be considered non-confidential and non-proprietary. By providing any User Contribution on the Platform, you grant us and our Affiliates and service providers, and each of their and our respective licensees, successors, and assigns, the right to use, reproduce, modify, perform, display, distribute, and otherwise disclose to third parties any such material for any lawful purpose.

You understand and acknowledge that you are responsible for any User Contributions you submit or contribute. You, not EPTC, have full responsibility for such content, including its legality, reliability, accuracy, and appropriateness.



We are not responsible or liable to any third party for the content or accuracy of any User Contributions posted by you or any other user of the Platform.

## Monitoring and Enforcement; Termination

We have the right to:

- Remove or refuse to post any User Contributions for any or no reason at our sole discretion.
- Take any action with respect to any User Contribution that we deem necessary or appropriate at our sole discretion, including if we believe that such User Contribution violates the Terms of Use, infringes any intellectual property right or another right of any person or entity, threatens the personal safety of users of the Platform or the public, or could create liability for EPTC.
- Disclose your identity or other information about you to any third party who claims that material posted by you violates their rights, including their intellectual property rights or their right to privacy.
- Take appropriate legal action, including without limitation, referral to law enforcement, for any illegal or unauthorized use of the Platform.
- Terminate or suspend your access to all or part of the Platform for any or no reason, including without limitation, for any violation of these Terms of Use.

Without limiting the foregoing, we have the right to cooperate fully with any law enforcement authorities or court order(s) requesting or directing us to disclose the identity or other information of anyone posting any materials on or through the Platform. YOU WAIVE AND HOLD HARMLESS EPTC AND ITS AFFILIATES, LICENSEES, AND SERVICE PROVIDERS FROM ANY CLAIMS RESULTING FROM ANY ACTION TAKEN BY ANY OF THE FOREGOING PARTIES DURING OR TAKEN AS A CONSEQUENCE OF INVESTIGATIONS BY EITHER SUCH PARTIES OR LAW ENFORCEMENT AUTHORITIES.

However, we cannot review material before it is posted on the Platform and cannot ensure prompt removal of objectionable material after it has been posted. Accordingly, we assume no liability for any action or inaction regarding transmissions, communications, or content provided by any user or third party. We have no liability or responsibility to anyone for performance or nonperformance of the activities described in this section.

## Reliance upon Information, Instruction, Representation, and Warrants; No Duty to Audit

Trustee and the Trust Administrator may rely solely upon the verbal and written (electronic and hard copy) information, instruction(s), representation(s), and warrants it receives from the Claimant, Grantor, Beneficiary, attorney, planner, their authorized agent, and all Parties in Interest (as the case may be) without any duty or obligation of the Trustee or the Trust Administrator to conduct any additional audit, investigation, or inquiry to investigate, detect or determine if such information, instruction(s), representation(s), or warrants are fraudulent, untrue, unauthorized, inaccurate, coerced, or inconsistent with tax laws and doctrine, or incomplete. Further, Trustee and the Trust Administrator have no duty to investigate, detect or determine theft, conversion, fraud, or inconsistency with tax laws and doctrine, or unauthorized fraudulent intent as it relates to



the information, instruction(s), representation(s), and warrants received by the Trustee or Trust Administrator from the Claimant, Grantor, Beneficiary, attorney, planner, their authorized agent or a third party and may rely solely on the documents and instructions it receives.

To protect the assets of the Trust from theft, conversion or misuse, the Claimant, Grantor, Beneficiary, attorney, planner, their authorized agent, and all Parties in Interest acknowledge and agree that they have a stipulated duty and a specific performance requirement to implement all possible safeguards to protect all information, passwords, system access information and forms related to the processes in their possessions associated with requesting distributions and information from the Trustee and Trust Administrator or contacting the Trustee and Trust Administrator. The forgoing shall include but not be limited to securing all physical files, computers, data files, network, and email systems from a breach, compromise, man-in-the-middle transmission intercept, malware, or any other security lapse. Further, the Claimant, Grantor, Beneficiary, attorney, planner, their authorized agent, and all Parties in Interest acknowledge their duty to conduct the ongoing monitoring of such events.

The Claimant, Grantor, Beneficiary, attorney, planner, or their authorized agent and all Parties in Interest acknowledge that the Trustee and Trust Administrator perform in Good Faith when acting under the provisions herein and, as such, completely release, hold harmless, indemnify and forever discharge the Trustee and the Trust Administrator from all past, present, or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of service, expenses, tax consequences, and compensation of any nature whatsoever, whether based on a tort, contract, fiduciary duty or other theory of recovery, which the Trust or Parties in Interest now have, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of Trustee's and Trust Administrator's reliance on the information, instruction(s), representation(s), and warrants which may be fraudulent, untrue, inaccurate, coerced, inconsistent with tax laws and doctrine, or incomplete.

This release and discharge shall apply jointly and severally to all Trustees and Trust Administrators, including, but not limited to, their respective officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors, and successors in interest, heirs and assigns, and all other persons, firms or corporations with whom any of the former have been, are now, or may hereafter be affiliated ("Trustee's Parties").

This provision shall be a fully binding and complete settlement of the associated rights and claims under the Trust by the Claimant, Grantor, Beneficiary, attorney, planner, their authorized agent, and all Parties in Interest and their heirs, assigns, and successors, including but not limited to any applicable insurance carrier's waiver of the rights of subrogation against Trustee and the Trust Administrator and the Trustee's Parties. This provision shall apply in addition to all other provisions and have supremacy and prevail even when in conflict. The Claimant, Grantor, Beneficiary, attorney, planner, their authorized agent and all Parties in Interest acknowledge and agree that the release and discharge set forth herein is a general release. All



Claimants, Grantors, Beneficiaries, attorneys, planners, their authorized agents and all Parties in Interest assume the risk that the facts or law may be other than Claimants, Grantors, Beneficiaries, attorneys, planners, their authorized agents and all Parties in Interest believe.

## Platform Offered for Educational Purposes Only

EPTC offers a variety of trust services, trust administration services, self-help support software, attorney support software, and document management systems, all of which provide self-service automated software trust solutions. Fees charged are solely for trustee services or licensing fees to access the self-help system, and fees are not a drafting or document preparation fee. The content herein is provided as, and limited to, information and descriptions of the features and benefits of our services, products, and the requirements of the trustee when applicable.

The Platform is for informational purposes only and is not an offer to sell, a solicitation, or an offer to buy any security or legal or trust services. The information herein is not intended to be legal or investment advisory advice and should not be constructed as legal or investment advisory advice. EPTC and its Affiliates are not law firms, are not a lawyer referral service, and do not act as your attorney or investment advisor. We are not a substitute for the advice of an attorney or an investment advisor; as such, we do not provide any advice, explanation, opinion, or recommendation about possible legal rights, express any legal guidance on the matters contained herein, nor do we provide investment advice. As appropriate, seek the advice of an attorney if you have questions concerning legal questions, remedies, defenses, options; or seek the advice of a licensed investment advisor related to Trust Holdings or investments.

## Limited Scope

EPTC provides discretionary and limited-discretionary (directed) fiduciary services as a non-depository trust company.

NO TRUSTS OFFERED BY EPTC ARE A SECURITY, FUTURE, OPTION, OR OTHER FINANCIAL INSTRUMENT OR AN OFFER TO PROVIDE ANY INVESTMENT ADVICE OR SERVICE(S). NOTHING HEREIN SHALL BE CONSIDERED A SOLICITATION OR OFFER TO BUY OR SELL ANY SECURITY, FUTURE, OPTION, OR OTHER FINANCIAL INSTRUMENT OR AN OFFER TO PROVIDE ANY INVESTMENT ADVICE OR SERVICE(S) TO ANY PERSON IN ANY JURISDICTION. NO RESULTING TRUST IS FORMED OR OPERATED BY EPTC TO ACQUIRE A SPECIFIC SECURITY, CREATE A SECURITY, OR TO BE OFFERED AS A SECURITY. SECURITIES AND INSURANCE PRODUCTS THAT MAY BE HELD IN ANY TRUST ARE NOT INSURED BY THE FDIC, NOR BY ANY OTHER FEDERAL OR STATE GOVERNMENT AGENCY, ARE NOT A DEPOSIT OF AND ARE NOT GUARANTEED BY A BANK OR ANY BANK AFFILIATE, AND MAY LOSE VALUE.

## Location of Products and Services

Our services are offered only in jurisdictions where they may be lawfully offered and are also subject to the terms of the specific applicable agreement. NOT ALL PRODUCTS OR SERVICES ARE AVAILABLE IN ALL JURISDICTIONS. Certain non-fiduciary ministerial services may be provided through third parties in their respective jurisdictions.



## Terms of Fiduciary Services Offer

All communications (whether by mail, by phone, through employees, agents, the internet, or otherwise) are solely made from, and within, the jurisdictions in which EPTC is licensed to operate and offer fiduciary services. All orders for services require acceptance from an authorized officer of EPTC operating within the offering jurisdiction before they become contracts. The use of the Platform does not constitute an offer to provide trust services beyond the borders of jurisdictions identified herein.

Applicable law provides that a trustee may, with respect to cash, money market, bank deposits, or other trust assets, exercise the rights of an absolute owner, including, but not limited to, the right to:

1. hold cash, money market, bank deposits, or other trust assets, in common and on an omnibus basis, in the name of a nominee or in another form without disclosure of the client trust so that title may pass by delivery and provide for more economical execution and acquisition and qualify as an Accredited Investor; and
2. deposit and hold the trust's assets with a depository or other regulated financial service institution.

Pursuant to the preceding, EPTC, as the trustee, may hold your trust's cash assets under the nominee's name of the trustee as common FDIC insured bank deposits, pursuant to the terms and conditions of EPTC's then current Money Market Common Trust. EPTC may receive compensation equal to the resulting float less the float credited to your Trust, if any. The Grantor(s), Beneficiary(ies), Claimant(s) and their Parties in Interest, as defined in each trust, acknowledge and agree to the foregoing, and waive any and all claims, demands, conflict of interest, or rights to such compensation or interest income that may have resulted from the operation of the funds held in common. Further, the Grantor(s), Beneficiary(ies), Claimant(s), and their Parties in Interest agree by utilizing EPTC services that the rate concession and float is a Reasonably Commensurate fee to EPTC as consideration for the additional FDIC insurance coverage that this arrangement affords.

NOTE: The beneficiary and the applicable designated person to direct Trust Holdings can contact the trust administrator, trust officer, or refer to the account statement in order to determine the specific manner cash balances are deployed. The applicable designated person may direct the Trust Holdings into other options, which includes being permitted to direct Trust Holdings into other options which are not FDIC insured and which may lose value.

Unless expressly provided for in writing, these revenue sharing amounts received by EPTC, its Affiliates, and its Third Parties shall be in addition to the fees due to EPTC and shall not offset any other fees due to EPTC. The Grantor(s), Beneficiary(ies), Claimant(s) and their Parties in Interest, as defined in each trust, acknowledge and agree to the foregoing, and waive any and all claims, demands, conflicts of interest, or rights to such compensation or additional income that may have resulted from the operation of such arrangements.

## Not Investment Advice



Case 2:23-cv-10166-PDB-EAS    ECF No. 13-2, PageID.453    Filed 05/26/23    Page 25 of 153

The Platform is intended to be a self-service trust creation and management platform. Therefore, we are not your investment advisor and the use of the Platform does not constitute any investment advisor relationship or engagement. As such, we provide no advice or recommendations related to your investment choices, the suitability of any investment, or the prudence of your risk tolerance. The content presented herein is not:

- investment advice;
- the creation of an investment advisory relationship or engagement; or
- the offer of any security, or the solicitation for the purchase or sale of any security; and
- We do not, and will not, make any representations about the suitability of a Trust Holdings, and we are not, and will not be, responsible for the suitability of your choices and directions for any trust.

The Platform is for general EDUCATIONAL purposes only. You, under the limited powers granted to you in the trust, are entirely responsible for making any Trust Holding decisions related to the trust. We cannot and do not guarantee profits of any kind, nor can we protect you from losses. You assume the entire cost and risk of any Trust Holding decision you choose to undertake related to the Trust Holdings of your trust. Investing involves risk, so you must always use your own best judgment when investing or seek advice from a licensed investment advisor. We are not an investment advisory firm, and your use of the Platform in no way constitutes a client/investment advisor relationship. All information we communicate to you either through the Platform, other affiliated platforms, or other forms of communications is for general EDUCATIONAL purposes only.

WE RECOMMEND YOU SEEK A LICENSED INDIVIDUAL INVESTMENT ADVISOR BEFORE MAKING ANY INVESTMENT, FOR YOU ARE ASSUMING THE SOLE LIABILITY FOR YOUR INVESTMENT DECISIONS. EPTC ACTS SOLELY IN A DIRECTED CAPACITY TO COMMUNICATE YOUR INSTRUCTIONS.

The inclusion of a supported Trust Holdings option on the Platform is not a recommendation or investment advice, nor is it a solicitation to buy or sell any security.

Certain Trust Holdings may have Fees or other Charges. These fees may be imposed by the fund manager/sponsor if the asset is typically held for less than one (1) year. As such, before selecting a Trust Holding for your trust, always take the time to do your own research relative to the Trust Holdings you are selecting for the trust, including but not limited to, utilizing public data available from an investment research firm service such as www.morningstar.com, and reading the prospectus of each asset carefully (for example a prospectus for securities can typically be found on the website of the respective mutual fund family.)

The net performance of your trust may be reduced by the fees and other expenses that your trust may incur and which are disclosed within your trust document. There is no guarantee that any particular Trust Holdings allocation will meet your objectives or provide you with a given level of income. Diversification does not ensure a profit or protect against a loss.

IN CONSIDERATION OF THE ADMINISTRATIVE EFFICIENCY AND THE RESULTING LOWER COST OF TRUST ADMINISTRATION FROM WHICH YOUR



TRUST BENEFITS, YOU ACKNOWLEDGE, AGREE AND SPECIFICALLY WAIVE ANY CLAIMS THAT MAY ARISE FROM OUR EXERCISE OF FIDUCIARY AND MINISTERIAL POWERS.

## ACH Electronic Funds Transfer Authorization Form

If you so request, EPTC shall initiate, through its ODFI banks, scheduled or periodic electronic funds transfer debits and/or credits requested for trust additions (or when applicable, apply electronic funds transfer credits to the same).

If your financial institution should return any such electronic debit(s) for any reason, you authorize EPTC to collect a returned item fee of $25.00 per item plus the associated ODFI bank fees from the associated trust account. You also agree to be bound by the ODFI financial institution's rules governing such transactions.

Upon the second occurrence of an authorized funds transfer being rejected, EPTC shall bar such Giftor from any future electronic fund transfers.

Through the use of the system to request electronic funds transfers, you attest that you are an authorized signer on the financial institution account associated with this request ("target account"), you agree to the terms herein, and you acknowledge, understand, and approve the associated electronic funds transfer transactions.

## Disclaimers

You understand that we cannot and do not guarantee or warrant that files available for downloading from the internet or the Platform will be free of viruses or other destructive code. You are responsible for implementing sufficient procedures and checkpoints to satisfy your particular requirements for anti-virus protection and accuracy of data input and output, and for maintaining a means external to our site for any reconstruction of any lost data.

The publicly available portions of the Platform are provided for educational purposes only and are not intended to provide legal, tax, investment or financial planning advice. In using the publicly available portions of the Platform, you agree that you are solely responsible for your own investment research and decisions, that you will not rely on the Platform as the primary basis for your decisions (investment, financial, legal or tax) and, except as otherwise provided herein, EPTC will not be liable for any actions you take based on information you receive via the Platform.

The Platform contains certain information EPTC has filed or incorporated by reference in its reports with state and federal agencies (collectively, the "Disclosure Materials"). EPTC expressly disclaims any duty to update any of the information set forth in the Disclosure Materials including, but not limited to, statements that may be considered forward-looking.

YOUR USE OF THE PLATFORM, ITS CONTENT, AND ANY SERVICES OR ITEMS OBTAINED THROUGH THE PLATFORM IS AT YOUR OWN RISK. THE PLATFORM, ITS CONTENT, AND ANY SERVICES OR ITEMS OBTAINED THROUGH THE PLATFORM ARE PROVIDED ON AN "AS IS" AND "AS



AVAILABLE" BASIS, WITHOUT ANY WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED. NEITHER EPTC NOR ANY PERSON ASSOCIATED WITH EPTC MAKES ANY WARRANTY OR REPRESENTATION WITH RESPECT TO THE COMPLETENESS, SECURITY, RELIABILITY, QUALITY, ACCURACY, OR AVAILABILITY OF THE PLATFORM. WITHOUT LIMITING THE FOREGOING, NEITHER EPTC NOR ANYONE ASSOCIATED WITH EPTC REPRESENTS OR WARRANTS THAT THE WEBSITE, ITS CONTENT, OR ANY SERVICES OR ITEMS OBTAINED THROUGH THE WEBSITE WILL BE ACCURATE, RELIABLE, ERROR-FREE, OR UNINTERRUPTED, THAT DEFECTS WILL BE CORRECTED, THAT OUR PLATFORM OR THE SERVER THAT MAKES IT AVAILABLE ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS, OR THAT THE PLATFORM OR ANY SERVICES OR ITEMS OBTAINED THROUGH THE WEBSITE WILL OTHERWISE MEET YOUR NEEDS OR EXPECTATIONS.

TO THE FULLEST EXTENT PROVIDED BY LAW, EPTC HEREBY DISCLAIMS ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, STATUTORY, OR OTHERWISE, INCLUDING BUT NOT LIMITED TO ANY WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT, AND FITNESS FOR PARTICULAR PURPOSE.

THE FOREGOING DOES NOT AFFECT ANY WARRANTIES THAT CANNOT BE EXCLUDED OR LIMITED UNDER APPLICABLE LAW.

To the extent the Platform or any attachment concerns tax matters, it is not intended to be used and cannot be used by a taxpayer to avoid regulations, laws, or penalties that may be imposed by law. WE PROVIDE YOU WITH THIS INFORMATION WITH THE UNDERSTANDING THAT WE ARE NOT RENDERING ACCOUNTING, INVESTMENT, LEGAL OR TAX ADVICE. PLEASE CONSULT YOUR INVESTMENT, LEGAL OR TAX ADVISOR CONCERNING SUCH MATTERS.

Further, with regards to the completion and submission of a qualified settlement fund ("QSF"), the following terms apply:

1. Pursuant to 26 CFR § 1.468B-2(k)(2), upon an account satisfying the requirements of 26 CFR § 1.468B-1(c), the QSF is now active and must comply with the accounting and reporting requirements of 26 CFR § 1.468B-1 et seq. regardless of activity or funding. As such, the operation of the QSF, and the various obligations of the QSF trustee, begin with the establishment and government approval. Correspondingly, the annual QSF fees apply to each year a QSF is in force, regardless of the timing of the funding. If the QSF is a pre-approved "Contingency QSF" and the underlying litigation is unsuccessful, the accrued fees are waived. However, if a successful conclusion to the underlying litigation produces a settlement, the accumulated fees are assessed in arrears and payable.

2. Any Agent submitting the request to create the associated QSF attests that such Agent is authorized to act on behalf of the affiliated parties regarding the creation of the subject QSF, including but not limited to the law firm(s) representing the claimant(s). Accordingly, any such Agent acknowledges and agrees that it is his or her duty and responsibility to inform those affiliated parties as necessary regarding the fees and terms of the QSF and their responsibilities thereunder. In addition to this



notice, the use, receipt, access, or availability of the associated QSF or the related documents establishes "actual notice" to the affiliated parties.

## Funds Hold, Clearing, Settlement, and Risk Management Policy

You acknowledge and agree that Funds are considered "Collected Funds" as follows:

1. Wires – Twenty-four (24) hours (One (1) Business Day after receipt of funds).
2. Domestic Checks – Nine (9) Business Days after deposit.
3. Foreign Checks – Only Bank Certified Check(s) from EPTC approved bank.

## Links Provided to Third Party Sites

Some of the sites listed as links herein will let you leave our server, are not under our control, and are provided for your convenience only. Access to any other internet site linked to the Platform is at the user's own risk, and EPTC is not responsible for the accuracy or reliability of any information, data, opinions, advice, or statements made on these linked sites. We do not make any representations whatsoever concerning the content of those sites. The fact that we have provided a link to a site is NOT an endorsement, authorization, sponsorship, or affiliation by us with respect to such site, its owners, or its providers; we are providing these links only as a convenience to you. We have not tested any information, software, products, or services found on these sites and therefore cannot make any representations whatsoever with respect thereto. There are risks in using any information, software, products, or services found on the internet, and we caution you to make sure that you completely understand these risks before retrieving, using, relying upon, or purchasing anything via the internet.

## Limitation of Liability

TO THE FULLEST EXTENT PROVIDED BY LAW, IN NO EVENT WILL EPTC, ITS AFFILIATES, OR THEIR LICENSORS, SERVICE PROVIDERS, EMPLOYEES, AGENTS, OFFICERS, OR DIRECTORS BE LIABLE FOR DAMAGES OF ANY KIND, UNDER ANY LEGAL THEORY, ARISING OUT OF OR IN CONNECTION WITH YOUR USE OR INABILITY TO USE THE PLATFORM, ANY WEBSITES LINKED TO IT, ANY CONTENT ON THE PLATFORM OR SUCH OTHER WEBSITES, OR ANY ASSOCIATED FIDUCIARY OR TRUST ADMINISTRATION SERVICES INCLUDING ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES, INCLUDING BUT NOT LIMITED TO, PERSONAL INJURY, PAIN AND SUFFERING, EMOTIONAL DISTRESS, LOSS OF REVENUE, LOSS OF PROFITS, LOSS OF BUSINESS OR ANTICIPATED SAVINGS, LOSS OF USE, LOSS OF GOODWILL, LOSS OF DATA, AND WHETHER CAUSED BY TORT (INCLUDING NEGLIGENCE), BREACH OF CONTRACT, OR OTHERWISE, EVEN IF FORESEEABLE. NOTWITHSTANDING THE FOREGOING, IN NO CASE SHALL ANY RESULTING LIABILITY BE GREATER THAN THE TRUSTEE FEES ASSESSED AND COLLECTED WITHIN THE PRECEDING TWELVE (12) MONTH PERIOD.

FURTHER, TRUSTEE SHALL NOT HAVE ANY OBLIGATION OR LIABILITY (WHETHER IN CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE



(WHETHER ACTIVE, PASSIVE OR IMPUTED), REPRESENTATION, STRICT LIABILITY OR PRODUCT LIABILITY) FOR ANY INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES OR LOSS OF REVENUE, PROFIT, SAVINGS OR BUSINESS ARISING FROM OR OTHERWISE RELATED TO YOUR ACCESS TO, AND USE OF, THIS PLATFORM, ALL ASSOCIATED OR LINKED EPTC WEBSITES AND ASSOCIATED TRUST ADMINISTRATION AND TRUSTEE SERVICES, OR RELATED SERVICES PROVIDED BY EPTC, ITS AFFILIATES, OR ITS THIRD PARTIES EVEN IF SUCH A PARTY OR ITS EMPLOYEES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

FURTHER, YOU AGREE THAT IN ANY JUDICIAL, NEGOTIATION, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG YOU AND TRUSTEE OR TRUSTEES AFFILIATES THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH YOUR ACCESS TO, AND USE OF, THIS PLATFORM, ALL ASSOCIATED OR LINKED EPTC WEBSITES AND ASSOCIATED TRUST ADMINISTRATION AND TRUSTEE SERVICES, OR RELATED SERVICES PROVIDED BY EPTC, ITS AFFILIATES, OR ITS THIRD PARTIES, YOU SHALL NOT HAVE A REMEDY OF, AND EPTC SHALL NOT BE LIABLE FOR (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. YOU HEREBY EXPRESSLY WAIVE ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY YOU MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE.

## Indemnification

You agree to indemnify, defend, and hold EPTC harmless from any liability, loss, claim, and expense, including attorney's fees, related to your violation of these Terms of Use or use of the Platform. Nothing in these Terms of Use shall affect any non-waivable statutory rights that apply to you. EPTC reserves the right to assume the exclusive defense and control (at your expense) of any matter that is subject to indemnification under this section. In such case, you agree to cooperate with any reasonable requests assisting EPTC's defense of such matter.

## Choice of Law; Jurisdiction

You irrevocably agree that the Circuit Court of Fauquier County, located in Warrenton, Virginia, shall hear and determine any suit, action, or proceeding and settle any dispute that may arise out of or in connection with the Platform and Terms of Use, and for such purposes you irrevocably submit to the exclusive jurisdiction of such court. You irrevocably waive all objections and irrevocably consent to the exclusive jurisdiction of the Circuit Court of Fauquier County, Virginia, as the court of jurisdiction for all matters arising from the Platform or Terms of Use.

Further, you waive any rights to remove any action or proceeding to any federal court of the United States, and hereby waive any right you may have to transfer or change the venue of any litigation brought against you, whether such action or proceeding arises directly, indirectly, or otherwise in connection with, out of, related to, or from the Platform and Terms of Use.

## Negotiation, Mediation, and Arbitration



Case 2:23-cv-10166-PDB-EAS   ECF No. 13-2, PageID.458   Filed 05/26/23   Page 30 of 153

With each use of the Platform, you (or in your role as an agent/attorney for any Beneficiary(ies)/Claimants) agree to and affirm the following Negotiation, Mediation, and Arbitration provisions. You also agree that the Negotiation, Mediation, and Arbitration process applies to all past, current, and future actions, transactions, and claims. Further, you consent to the following Negotiation, Mediation, and Arbitration process for any matter for which litigation has not been appropriately filed with the office of the Clerk of Court for the applicable court of competent jurisdiction of Fauquier County, Virginia, before your first use date following the publication of this provision of these Terms of Use.

Any and all disputes arising out of, or relating to, the associated trust, account, or this Platform, including any alleged breach or any other theory of recovery or claim, at law, in equity or by statute, which the Parties in Interest now have or which may hereafter accrue or otherwise be acquired or asserted on account of, or may in any way grow out of, the associated trust, account or this Platform, shall be resolved with the following procedures:

(a) Negotiation. Upon any Party in Interest providing written notice of any dispute to EPTC, the Party in Interest noticing the dispute shall request, in writing, to schedule a Negotiation of said dispute, and the parties shall attempt to resolve the subject dispute promptly by good faith Negotiation. The party noticing the dispute and asserting the claim shall provide said request for Negotiation within fifteen (15) business days of determining that there is a potential dispute. Said notice shall be titled as follows: "NOTICE OF REQUESTED DISPUTE RESOLUTION BY NEGOTIATION." The party noticing the dispute and asserting the claim shall submit a complete detailed brief of the facts, arguments, exhibits, supporting citations and analysis of all related provisions of the associated trust and incorporated provisions. The foregoing shall constitute the sole facts, arguments, exhibits, supporting citations and analysis of all related provisions of the associated trust and incorporated provisions allowable by the party asserting the claim during Negotiation, Mediation, and Arbitration and shall be solely relied upon during Mediation and Arbitration, if any.

The involved parties must satisfy the requirements of the Negotiation process detailed in this paragraph (a) prior to the initiation of the Mediation process detailed in paragraph (b) below. The parties shall make all reasonable efforts to complete the Mediation session within thirty (30) business days of the first Mediation session. Should the Negotiation process not be completed due to a failure of the party noticing the dispute to comply with its requirements, said party shall irrevocably waive all associated claims or causes of action.

(b) Mediation. If the preceding Negotiation fails to resolve the dispute, the parties shall proceed to Mediation unless all parties have previously agreed to a different time frame in writing. A "NOTICE OF REQUESTED DISPUTE RESOLUTION BY MEDIATION" shall be served upon the party who initially noticed the dispute, signifying that the good faith negotiation was not successful and commencing the Mediation process. The parties shall agree on a mediator; however, if they cannot mutually agree to a mediator within fourteen (14) days, then William Ashwell of Mark B. Williams and Associates, PLC, shall appoint a mediator. If William Ashwell is unavailable, then a successor to be named by EPTC shall appoint a mediator. The Mediation location shall be in Fauquier County, Virginia. The Mediation session shall be



held within forty-five (45) days of the retention of the mediator and last for at least three (3) full Mediation days before any involved party has the option to withdraw from the process. The parties involved in the Mediation may agree to continue the Mediation process beyond the three (3) Mediation days until there is a settlement agreement or one of the involved parties or the mediator states that there is no reason to continue because of an impasse that cannot be overcome and sends a written "NOTICE OF TERMINATION OF MEDIATION" to all parties. All reasonable efforts shall be made to complete the Mediation session within thirty (30) business days of the first Mediation session.

During the Mediation, EPTC can assert the failure to fully comply with paragraph (a) above as a reason not to proceed to or to delay the Mediation. The party that noticed the dispute per paragraph (a) above shall bear the Mediation costs unless agreed otherwise in writing. The service of the NOTICE OF REQUESTED DISPUTE RESOLUTION BY MEDIATION shall stay the running of any applicable statute of limitations regarding the dispute in question until thirty (30) days after the parties involved in the Mediation agree that the Mediation is concluded or the mediator issues a NOTICE OF TERMINATION OF MEDIATION.

All communications, both written and oral, during the phases outlined above are confidential and treated as settlement negotiations for purposes of any applicable rules of evidence; however, documents generated in the ordinary course of business prior to the dispute in question that would otherwise be discoverable do not become confidential simply because of their use in the Negotiation or Mediation process.

The Mediation process shall be confidential based on terms acceptable to the mediator or the Mediation service provider.

(c) Arbitration. Any dispute that is not resolved through Negotiation or Mediation in accordance with the preceding paragraphs (a) and (b) shall be resolved by final and binding Arbitration in accordance with the rules of the American Arbitration Association and the limitations provisions herein. The Arbitration location shall be Fauquier County, Virginia, using one arbitrator unless the dispute in question exceeds one million dollars ($1,000,000) in which case there shall be three neutral arbitrators as a panel. The arbitrators may award costs and attorneys' fees to the prevailing party.

You (or in your role as an agent/attorney for any Beneficiary(ies)/Claimants) hereby waive all rights to have disputes heard or decided by a jury or in a court trial and the right to pursue any class or collective claims against EPTC in court, arbitration, or any other proceeding. Each party shall only submit its own individual claims against the other and shall not seek to represent the interests of any other person. The arbitrator shall have no jurisdiction or authority to compel any class or collective claim or to consolidate different Arbitration proceedings with, or join any other party to the Arbitration between the parties. The arbitrator, not any court, shall have exclusive authority to resolve any dispute relating to the Platform and the arbitrability of any dispute between the parties, except for any dispute relating to the enforceability or scope of the class and collective action waiver, which a court of competent jurisdiction shall determine.

Arbitration is final and binding, and you (or in your role as an agent/attorney for any Beneficiary(ies)/Claimants) waive all rights to other resolution processes, such as court actions or administrative proceedings, and waive



the right to bring forth any other theory of recovery or claim, at law or in equity or by statute, related to the Platform or any associated trust. Judgment on the arbitrator's award may be entered in any court of competent jurisdiction per the terms hereof.

Notwithstanding the foregoing, EPTC shall have the right to institute any action against any party in a court of proper jurisdiction for injunctive or other equitable relief as EPTC deems appropriate.

Further, with each use of the Platform, you (or in your role as an agent/attorney for any Beneficiary(ies)/Claimants) agree and affirm that, consistent with the Public Statements & Non-disparagement provisions herein, you shall not, directly or indirectly, make any public statements or announcements regarding any pending, active, or resolved dispute, the Negotiation, Mediation, and Arbitration provision outlined above, or the ultimate findings or determinations in connection therewith. Failure to comply with these conditions shall be a material breach of these Terms and Conditions, and the party who failed to so comply shall waive any and all other rights said party may have otherwise had hereunder.

The preceding is consistent with the purposes of this Platform and any associated trust and is an acceptable and reasonable condition of EPTC's requirements.

## Scrivener's Errors

EPTC, in its sole authority and absolute discretion, shall have the power to make amendments to correct ambiguities or Scrivener's Errors sua sponte. Scrivener's Errors are errors due to a minor mistake or inadvertence.

## Intellectual Property (Including Trade Secrets)

The Platform contains trade secrets and intellectual property of EPTC collectively defined as "Intellectual Property." "Intellectual Property" is further defined as Intellectual Property owned, commissioned, developed, or created by EPTC. Certain Intellectual Property may exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process and operation of which, in a unique combination, affords a competitive advantage and is a protectable secret.

The term "Intellectual Property" includes, but is not limited to (collectively and separately): (a) Marks; (b) user interfaces functions and design; (c) process design; (d) lists; (e) pricing information; (f) business strategy; (g) financial information; (h) marketing and advertising strategies; (i) sales techniques; (j) methods of conducting business; (k) technology platforms; (l) software; (m) web sites, publications, databases, and other content; (n) business processes material to the operation of the business; (o) symbols; (p) artwork; (q) copyrights; (r) franchise systems; (s) object code; (t) trading platforms; (u) trust document design and component elements; (v) patents and patent applications (including any abandoned applications); (w) pending trademark and service mark applications; (x) domain names and domain name registrations; (y) all products and services currently produced, marketed, licensed, sold or distributed by EPTC; (z) all products and services currently under development that EPTC intends to make commercially available within 24 months from your last use the Platform; (aa) inventions, whether or not patentable, whether or not reduced to practice, or whether or not yet made the subject of a pending patent application or applications;



(bb) ideas and conceptions of potentially patentable subject matter, including, without limitation, any patent disclosures, whether or not reduced to practice and whether or not yet made the subject of a pending Patent application or applications; (cc) trade secrets and confidential, technical, or business information (including ideas, formulas, compositions, designs, inventions, and conceptions of inventions whether patentable or unpatentable and whether or not reduced to practice); and (dd) technology (including know-how), manufacturing and production processes and techniques, methodologies, research and development information, drawings, specifications, designs, plans, proposals, technical data, copyrightable works, financial, marketing and business data, pricing and cost information, business and marketing plans, and customer and supplier lists and information.

You agree to not, directly or indirectly:

1. Acquire, use, or disclose Intellectual Property, or any element of the Intellectual Property, to another person(s), or
2. Engage in acquiring, or attempting to acquire, Intellectual Property by improper means;
3. Engage in the improper use of the Platform, including creating fictitious user identities or accounts, or acts of espionage (whether through electronic or other means).

All rights, title, interest in, and ownership of the Intellectual Property shall remain the sole property of EPTC. Nothing in these Terms of Use conveys any right or license to use Intellectual Property other than as expressly provided herein for the stated purpose of evaluating EPTC and its product(s) for your personal use.

Foreground Intellectual Property means all intellectual property worldwide, including but not limited to, patents, unpatented inventions, copyrights, trademarks, mask works, trade secrets, standard operating procedures (SOPs), know-how, and all other forms of intellectual property conceived or first reduced to practice, or to a tangible medium of expression, or conceived or made during the performance of EPTC under this Agreement and all Foreground Intellectual Property embodied in deliverables under this Agreement. Nothing herein shall constitute or infer a transfer of Foreground Intellectual Property to any other party.

You acknowledge and agree that you will not, directly or indirectly, use any Intellectual Property in any way detrimental to the EPTC. You agree to keep all Intellectual Property in confidence and, except as expressly provided in these Terms of Use, will not disclose, or cause to be disclosed, Intellectual Property to anyone without EPTC's prior written consent. You agree that you will not use, or permit others to use, Intellectual Property for any purpose other than to evaluate the possible use of EPTC and its products for personal use. You will use all necessary efforts and safeguards to ensure that there is no disclosure, dissemination or unauthorized use of Intellectual Property.

## Use of Copyrights and Trademarks

The content of the Platform, in all of its parts, including but not limited to the text and images and their arrangement, are the copyright ©, of EPTC 2006 – 2022. All rights reserved.



Except as otherwise provided herein, you may not copy, upload, publish, transmit, distribute, archive, transcribe, create derivative works from the Platform, display the Platform content, use the Platform's content, link, or redirect to the Platform without the prior written consent of EPTC.

Copies made incidentally in the ordinary course of your use of the Platform (such as in cache memory), and a reasonable number of printed copies for your own internal use are permitted, provided you do not delete or change any copyright, trademark or other notices or display to the public.

Title to all Intellectual Property rights in the Platform and material thereon remain EPTC's and its Affiliates or licensors. If EPTC is made aware of any unauthorized use of its material, it may demand you immediately remove or destroy the same from all sources. Any failure to immediately remove or destroy such material is a breach of these Terms of Use, and you hereby explicitly agree to indemnify and hold harmless EPTC from any damages arising therefrom, and explicitly agree to pay for all costs associated with any legal action taken in furtherance of your removing or destroying said material, including reasonable attorney's fees, costs, and damages.

The following elements are owned by EPTC as copyrights, trademarks and registered trademarks (collectively and individually "Marks"):

- The Kiss Trust Tree symbol image is a copyrighted and registered trademark.
- Kiss Trust® ©
- KissTrust® ©
- Sleeping Trust ™ ©
- Kiss Trust Memorial Trust ™ ©
- Trusts Made ~ Flexible, Affordable and Secure ™ ©

Before any use of the Marks, you must make a written request for permission to use the Marks at support@easternpointtrust.com, and we may grant or withhold permission to use the Marks at our sole discretion. No use is allowed unless you have express prior written permission. If permission to use the Mark is granted, your use of the Mark must always be fully and clearly reproduced, and you may not incorporate any of our Marks into the other published work unless you have express prior written permission.

The first time that you use the Mark in any medium, you must conspicuously indicate that:

"The mark is a trademark of EPTC and is being used with the permission of Eastern Point Trust Company."

If you use any of the other Marks in any medium, you must also conspicuously indicate that such Marks are:

"The mark is a trademark of EPTC and is being used with the permission of Eastern Point Trust Company."

You must use the Marks in their entirety unless you have express prior written permission. A trademark symbol ® or ™, as applicable, should follow all prominent uses of the Marks. Certain types of expressions, postings,



projects, products, and packaging may require additional or different notices. Contact us for more information and to discuss your intended use.

## Entire Agreement

These Terms of Use, our Privacy Policy, and any separate agreement entered into between you and EPTC constitute the entire agreement between you and EPTC with respect to the Platform and constitute and supersede all prior agreements, representations, and understandings, written or oral; EXCEPT for any related trust agreement(s) that may exist. Any agreements entered into between you and EPTC subsequent to this agreement may be incorporated into said trust agreement at that time.

## Public Statements & Non-disparagement

Without the prior written release of EPTC, you shall not, directly or indirectly, issue any press release, or make other public statements or announcement related to the Platform or any EPTC product, written or oral, without the prior written consent of EPTC, except as required by law as part of a civil or criminal legal proceeding or a court order.

You agree that you will not disparage EPTC, its officers and management, current or former employees, and/or its shareholders. You further agree not to relay, communicate or repeat disparaging comments from others or cause such statements to be made by a third party or through an anonymous persona. Disparagement includes, but is not limited to: public writings, remarks, comments or statements (with or without malice); which are false in nature, fact or substance; and which impugn the character, honesty, integrity, morality or business acumen or abilities in connection with any aspect of the operation of business of the covered individual or entity and includes, but is not limited to, the torts of defamation, product disparagement, insulting words, injurious falsehood and/or trade libel. Any violation of this section shall require you to remove any such disparaging statements immediately. You shall be liable for any loss of revenue associated directly or indirectly with said statements and said liability shall begin from the moment the statement is made or posted. All damages associated with said disparaging statements shall include reasonable attorney's fees and costs.

## Regulatory Information and Legal Entities

EPTC is a non-depository trust company incorporated within the U.S. Virgin Islands and is authorized and regulated by the Department of Licensing and Consumer Affairs to provide Fiduciary Services and Non-Depository Trust Services.

The material within, and any linked material accessed via, the Platform is directed to eligible counterparties and professional clients only and should not be distributed to or relied upon by any retail investor.

ALL ASSETS ARE SOLELY OWNED BY THE TRUST TO WHICH THEY ARE GIFTED. THE GRANTOR, GIFTOR OR BENEFICIARY IS NOT THE OWNER OF THE ASSETS OF THE TRUST. Unless otherwise provided for in writing, EPTC may act solely as a directed trustee related to communicating your instructions regarding your Trust Holdings directions. As a directed trustee, EPTC relies exclusively on instructions of the applicable designated person



as to what Trust Holdings shall be acquired, liquidated and held within the trust.

## USA Patriot Act

Pursuant to the USA PATRIOT Act and final rules issued by the U.S. Department of the Treasury, EPTC complies to the extent applicable with the terms and conditions of the USA PATRIOT Act and the Dodd-Frank Act, including, but not limited to Know Your Customer rules and Anti Money Laundering Rules.

## Limitation on Actions

ANY CAUSE OF ACTION OR CLAIM YOU MAY HAVE ARISING OUT OF OR RELATING TO THESE TERMS OF USE, THE PLATFORM, OR THE ACTIVITY OF THE UNDERLYING TRUST MUST BE COMMENCED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES OR WAS REPORTED VIA THE PLATFORM OR WAS OTHERWISE REPORTED OR KNOWABLE; OTHERWISE, SUCH CAUSE OF ACTION OR CLAIM IS PERMANENTLY BARRED. The Grantor(s), Beneficiary(ies), Claimant(s), and their Parties in Interest acknowledge and agree that the information regarding the activity of the trust is readily available herein and accessible and available at any time upon request. The Grantor(s), Beneficiary(ies), Claimant(s), and their Parties in Interest have a duty to monitor the activity of the trust and acknowledge and agree that any resulting damages stemming from the failure to monitor the trust is not a liability of the Trustee, and the Grantor(s), Beneficiary(ies), Claimant(s) and their Parties in Interest waive all claims against the Trustee and its Third Parties in such circumstances.

## No Interpretation Against Drafter

You recognize that this Terms of Use is a legally binding contract and acknowledge that you had the opportunity to review its contents and consult with legal counsel of choice before creating a user account and using the Platform. You acknowledge and agree that in any construction of the terms of this Terms of Use, the same shall not be construed against any party on the basis of that party being the drafter of such terms. Accordingly, any rule of law or any legal decision that would require interpretation of any claimed ambiguities in these Terms of Use against the drafting party has no application and is expressly waived.

## Survivability and Enforceability

Any clause, provision, or section of these Terms of Use, or any amendment hereto, shall be void if it violates federal law or the laws of the state of jurisdiction. If a court of competent jurisdiction rules that any clause, provision, or section of these Terms of Use or any amendment hereto is illegal or invalid, then such clause, provision, section, power, or obligation shall be deemed to be written only to the extent permitted by law.

## Waiver and Severability

Any waiver of any provision contained in these Terms of Use shall not be deemed to be a waiver of any other right, term, or provision of these Terms of Use. If any provision in these Terms of Use is determined to be wholly or partially invalid, illegal or unenforceable, such provision shall be enforced to



Case 2:23-cv-10166-PDB-EAS   ECF No. 13-2, PageID.465   Filed 05/26/23   Page 37 of 153

the extent it is legal and valid, and the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

## Assignment

You may not assign these Terms of Use (by operation of law or otherwise) without the prior written consent of EPTC, and any prohibited assignment will be null and void. EPTC may assign these Terms of Use or any rights hereunder without your consent.

## Your Comments, Concerns, and Communications with EPTC

This website is operated by Eastern Point Trust Company.

All other feedback, comments, requests for technical support, and other communications relating to the Platform should be directed to: support@easternpointservices.com.

Authorized employees or agents of EPTC may monitor and record all or portions of your telephone calls, emails, text messages, chats, and other communications with EPTC for quality control, customer service, employee training, security, legal, compliance, and other lawful purposes. You hereby consent to such recording. That consent is ongoing and need not be confirmed prior to, or during, such monitoring or recording, except to the extent applicable law expressly requires otherwise. EPTC may also archive your communications with EPTC for regulatory and other purposes.

# Get More Information

**FIRST NAME ***

**LAST NAME ***

**BUSINESS EMAIL ***

**PHONE NUMBER ***

CONTACT ME

**SOLUTIONS**

**LEARN**

**QSF 360™**

**SETTLEMENT TRUSTS**

Settlement Protection Trust

Special Needs Trust

C3BR

Confidential Settlement Solutions

**ESCROW SERVICES**

A, A+, CF, D, and S

Custodial Escrow

**PLAINTIFF RECOVERY TRUST**

**IST 360**

**CROSS-BORDER**

Foreign Payments

**CUSTOM SOLUTIONS**

Annuity Maximizer Trust

Liquidating Trust Services

KissTrust™

CORfx

**FAQS**

**FEES**

**GLOSSARY**

**ABOUT EPTC**

**OVERVIEW**

**EXECUTIVE TEAM**

**PRIVACY POLICY**

**TERMS AND CONDITIONS**



CONTACT US

LOGIN



Eastern Point Trust Company is a member of the American Bankers Association.

KissTrust is patented. KissTrust is a registered trademark of Eastern Point Trust Company.

Copyright © 2006-2022 Eastern Point Trust Company

Eastern Point Trust Company offers a variety of trust services, trust administration services, self-help support software, attorney support software, and document management systems, all of which provide self-service automated software solutions. Fees charged are solely for trustee services or licensing fees to access the self-help system, and fees are not a drafting or document preparation fee. The content herein is provided as, and limited to, information and descriptions of the features and benefits of Eastern Point Trust Company's services, products, and the requirements of the trustee when applicable. This website is for informational purposes only and is not an offer to sell, a solicitation, or an offer to buy any security or legal or trust services. The information herein is not intended to be legal or investment advisory advice, and should not be constructed as legal or investment advisory advice. Eastern Point Trust Company and its affiliated companies are not law firms, are not a lawyer referral service, and do not act as your attorney or investment advisor. Eastern Point Trust Company is not a substitute for the advice of an attorney or an investment advisor; as such, Eastern Point Trust Company does not provide any advice, explanation, opinion, or recommendation about possible legal rights, express any legal guidance on the matters contained herein, nor provide investment advice or management. As appropriate, seek the advice of an attorney if you have questions concerning legal questions, remedies, defenses, or options; or seek the advice of a licensed investment advisor related to trust holding(s) or investments. Eastern Point Trust Company and its affiliated companies are not a broker dealer and only forward your instructions to executing custodians/broker dealers. Your accessing and utilization of this website constitutes your agreement to the Terms and Conditions as shown herein. Please review them carefully as they contain important information, disclosures and are legally binding.

# EXHIBIT C



**MONIQUE CROSBY**

You are creating a Qualified Settlement Fund in TrustWare

**Summary and Submit >>**

## Qualified Settlement Fund

What are the details of the Qualified Settlement Fund?   (Complete)                                    Collapse

**Qualified Settlement Fund Essentials**

Name of QSF:*   More Info

Pitt McGehee USAG Qualified Settlement Fund

**Case Sensitivity**

Is this a sealed case? *   More Info                                              ○ Yes   ● No

Case Caption or Matter(s) of Conflict Resolved: *

United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division, In re: USA Gymnastics, Chapter 11, Case No. 18-09108-RLM-11

**Case Details**

Summarized description of cause(s) of action:*
*Please provide a description of the claim(s) at issue, as well as the event (or related series of events) that gave rise to the claim(s) at issue*   More Info

Sexual abuse claims by multiple claimants against USA Gymnastics.

Does this case have a Claw Back Provision?   More Info          ○ Yes   ● No

Must the Supervising Court approve distributions made from this QSF?*          ○ Yes   ● No

Must a third-party supervisor approve distributions made from this QSF?*       ○ Yes   ● No

Distributions shall only be allowable pursuant to the following limitations:
*Please include language from the associated Settlement Agreement or judicial order that defines any applicable distribution restrictions. You may leave this blank if not applicable.*

Not applicable.

Type of liability:*                                              Tort

**Fees**

How will the fees; for establishment of this QSF, its annual administrative fees, and fee relative to distributions from the QSF be handled?*

○ Taken from the balance of the QSF
● Invoice

| | |
|---|---|
| Attention:* | Megan Bonanni Khoury |
| Address:* | 117 West 4th Street, Suite 200 |
| Apt/Suite: | |
| City: * | Royal Oak |
| State: * | Michigan |
| Zip Code: * | 48067 |
| Email Address: * | mbonanni@pittlawpc.com |

○ Establish a fees escrow account and pre-fund to offset all associated fees.

Will you be uploading any supporting documentation?          ○ Yes   ● No

(*) Required Data

Save    Clear

## Law Firm Associated

Please provide information relative to the lawyer/law firm representing the claimant(s)   (Complete)      Collapse ✅

| | |
|---|---|
| Name of the firm* | Pitt, McGehee, Palmer, Bonanni & Riv |
| Phone number * | 248-398-9800 |
| Primary point of contact (name):* | Megan Bonnani Khoury |

(*) Required Data

Save    Clear

## Authorized Users

(Elected)                                                                                       Collapse ✅

☑  *I understand and acknowledge that the individuals to whom I am granting online access will also have the ability to petition the Trust for Distributions, and I attest that such individuals have the legal authority to act on behalf of the Claimant and to petition the Trust for Distributions, and that such individuals are bound by the terms of the Trust as well as EPTC's then current Terms and Conditions, policies, and procedures*

**Online Access 1**

| | |
|---|---|
| Party Type:* | Advisor |
| Contact Name: * | Mark Vogel |
| Contact Phone: * | 616-235-1400 |
| Contact Email: * | mvogel@ringlerassociates.com |
| Address1: * | P.O. Box 2647 |
| Address2: | |
| City:* | Grand Rapids |
| State:* | Michigan |
| Zip Code:* | 49501 |

(*) Required Data

Save and Add Another     Save and Close     Clear

☑  *I understand and acknowledge that the individuals to whom I am granting online access will also have the ability to petition the Trust for Distributions, and I attest that such individuals have the legal authority to act on behalf of the Claimant and to petition the Trust for Distributions, and that such individuals are bound by the terms of the Trust as well as EPTC's then current Terms and Conditions, policies, and procedures*

**Online Access 2**

| | |
|---|---|
| Party Type:* | Other |
| Contact Name: * | Tami Visser |
| Contact Phone: * | 616-235-5500 |
| Contact Email: * | tvisser@ringlerassociates.com |
| Address1: * | P.O. Box 2647 |
| Address2: * | |
| City:* | Grand Rapids |
| State:* | Michigan |
| Zip Code:* | 49501 |

(*) Required Data

Save and Add Another     Save and Close     Clear

☑  *I understand and acknowledge that the individuals to whom I am granting online access will also have the ability to petition the Trust for Distributions, and I attest that such individuals have the legal authority to act on behalf of the Claimant and to petition the Trust for Distributions, and that such individuals are bound by the terms of the Trust as well as EPTC's then current Terms and Conditions,*

**Online Access 3**

| | |
|---|---|
| Party Type:* | Attorney |
| Contact Name: * | Megan Bonanni Khoury |
| Contact Phone: * | 248-398-9800 |
| Contact Email: * | mbonanni@pittlawpc.com |
| Address1: * | 117 West 4th Street, Suite 200 |
| Address2: * | |
| City:* | Royal Oak |
| State:* | Michigan |
| Zip Code:* | 48067 |

(*) Required Data

[Save and Add Another]  [Save and Close]  [Clear]

☐ *I understand and acknowledge that the individuals to whom I am granting online access will also have the ability to petition the Trust for Distributions, and I attest that such individuals have the legal authority to act on behalf of the Claimant and to petition the Trust for Distributions, and that such individuals are bound by the terms of the Trust as well as EPTC's then current Terms and Conditions, policies, and procedures*

**Online Access 4**

| | |
|---|---|
| Party Type:* | Other |
| Contact Name: * | Renee Ricken |
| Contact Phone: * | 248-398-9800 |
| Contact Email: * | rricken@pittlawpc.com |
| Address1: * | 117 West 4th Street, Suite 200 |
| Address2: * | |
| City:* | Royal Oak |
| State:* | Michigan |
| Zip Code:* | 48067 |

(*) Required Data

[Save and Add Another]  [Save and Close]  [Clear]

## Additional Information

**Additional Information** (Complete)                                    Collapse ⌄

Number of claimants:*

- ○ 10 or less
- ⦿ 11-50
- ○ 51-100
- ○ 101+
- ○ Unknown

Nature of the claims?*

- ○ Taxable
- ○ Nontaxable
- ⦿ Both
- ○ Unknown

Is any portion of the settlement related to any of the following? *

- ○ Punitive damages, penalties & interest
- ○ Alimony & child support
- ○ Consumer claims with civil damages or attorney fees awarded
- ○ Emotional distress without physical injury
- ○ Fraud, negligence, breach of contract
- ○ Interference with property/contract
- ○ Defamation, libel, privacy violations
- ○ Professional malpractice
- ○ Opt-in class actions
- ⦿ Unknown

Has the case been settled, has the settlement agreement been signed? *

○ Yes
○ No
○ Unknown

Are any claimants currently receiving or eligible to receive government or state sponsored benefits?*

◉ Yes
○ No
○ Unknown

Are any claimants' minors?*

○ Yes
◉ No
○ Unknown

Will you need settlement administration, i.e., sub accounting, court supervision or providing reports to the court, lien resolution, ongoing litigation/ allocation? *

○ Yes
◉ No
○ Unknown

Will any of the claimants' funds be utilized to purchase an annuity? *

◉ Yes
○ No
○ Unknown

If attorneys are involved, is there any interest in attorney fee structure/deferrals?*

◉ Yes
○ No
○ Unknown

(*) Required Data

[ Save ]   [ Clear ]

## Important Notice

This notice contains three important notice topics, please review all three.   (Complete)   Collapse ✓

### NOTICE ONE - FUNDS AVAILABILITY:
IMPORTANT NOTICE - Funds sent via check are subject to a 9 day business day holding period.   More Info

### NOTICE TWO - ANNUAL TAX REPORTING OBLIGATION NOTICE:
Pursuant to 26 CFR §1.468B-2(k)(1), the QSF must file an income tax return for every year the fund is in existence, whether or not the fund has gross income for that taxable year. Consequently, the submission of a QSF to EPTC constitutes an acknowledgement and acceptance that EPTC will provide the IRS with a tax and informational reporting for the QSF regardless of account activity or inactivity for as long as the QSF is in existence. The associated tax filing fees shall be assessed to the QSF for each tax return prepared and filed.

### NOTICE THREE - ANNUAL QSF FEE:
The operation of the QSF, and the various obligations of the QSF trustee, begins with its establishment and government approval. As such, the annual QSF fees apply to each year a QSF is in force regardless of the funding's timing.

If the QSF is a "Contingency QSF" and the underlying case is unsuccessful, then accrued fees are correspondingly waived.

☑ I UNDERSTAND AND ACKNOWLEDGE THE ABOVE NOTICES.

[ Save and Close ]

Summary and Submit >>

TOP

# EXHIBIT D

| | |
|---|---|
| **From:** | Trust Processing <trustprocessing@easternpointtrust.com> |
| **Sent:** | Thursday, June 2, 2022 10:48 AM |
| **To:** | mcrosby@ringlerassociates.com |
| **Subject:** | Congratulations, your QSF submission was successful! |



Greetings,

Congratulations, your Qualified Settlement Fund (QSF) submission was successful!

## What Happens Next?

Following the approval process, you will receive an email indicating your trust is established and ready to receive initial funding.

## What To Expect?

Following receipt of your approval email, you will have access to log in to your client portal and view the following documents:

- **QSF specific documents**
- **W9**
- **Important Notices - Notice of Check Hold Policy and Procedures, and**
- **Custom Funding and Wiring Instructions**

Thank you for selecting Eastern Point, if you have additional questions, please call or email us:

Phone: 855-222-7513

Email:trustprocessing@easternpointtrust.com

Regards,

Eastern Point Trust Company Staff

The information contained in this message may be privileged, confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it

1

from your computer.The content herein is provided, and limited to, information and descriptions of the features and benefits of our services, products, and the requirements of the trustee when applicable.The information herein is not intended to be legal advice, and should not be constructed as legal advice. We are, not a law firm and do not act as your lawyer. We express no legal guidance or opinion on the matter contained herein. Seek the advice of an attorney if you have legal questions.IRS Circular 230 Disclosure: To ensure compliance with requirements imposed on us by IRS Circular 230 (31 C.F.R. part 10), we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.Fiduciary services are only offered in the jurisdictions where valid to offer such services.

# EXHIBIT E

| | |
|---|---|
| **From:** | Support EPT <support@easternpointtrust.com> |
| **Sent:** | Thursday, June 2, 2022 11:39 AM |
| **To:** | mcrosby@ringlerassociates.com |
| **Subject:** | Your QSF has been approved and fully established! |
| **Attachments:** | QSFNotice.pdf; QSF06022201.pdf; QSF06022201QSFApproval.pdf; QSF06022201QSFCertificateofTrust.pdf; QSF06022201W9.pdf; QSF06022201QSFFundingandWiring.pdf; QSF06022201Agreement.pdf; QSFSummary.pdf |

Greetings,

Your recently submitted Qualified Settlement Fund (QSF) has been established and processed and is ready for funding, at your convenience. All associated trust documents, funding and wiring instruction, and notices, have been attached, are available for access 24/7 via your Documents section of your client portal's trust block.

Note: Please ensure you have read the notice regarding check hold policy and procedures and have notified neccssary parties.

Please contact our office with any questions via phone or email.

Regards,

Eastern Point Staff
(855) 222-7513
trustprocessing@easternpointtrust.com

******************************************************************** NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, is confidential and may be legally privileged, confidential and protected from disclosure. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it. This email and its contents are not a legally binding contract. The content herein is provided, and limited to, information and descriptions of the features and benefits of our services, products, and the requirements of the trustee when applicable. This content is not intended to be investment or legal advice, and should not be constructed as investment or legal advice. We are, not a law firm or investment advisor and do not act as your lawyer or your investment advisor. As such, we provide no legal or investment guidance or opinion on the matter(s) contained herein. Seek the advice of an

1

attorney or registered investment advisor if you have such questions. Fiduciary services are only offered in the jurisdictions where valid to offer such services. Nothing herein, nor via the Trust's operation, shall be regarded as an offer to sell or as a solicitation of an offer to buy any financial product; and shall not be considered a solicitation or offer to buy or sell any security, future, option or other financial instrument or an offer to provide any investment advice or service to any person in any jurisdiction. We reserve the right to monitor, review and retain the content of all email communications sent or received.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT F

Pitt McGehee USAG Qualified Settlement Fund
## TRUST AGREEMENT
Created: June 2nd, 2022

This Trust Agreement and the associated Pitt McGehee USAG Qualified Settlement Fund Trust Administration Agreement (the "Trust Administration Agreement"), which is hereby incorporated by reference into this Trust Agreement in its entirety, and the appendices and support appendices attached hereto, shall govern the operation of the:

 **Pitt McGehee USAG Qualified Settlement Fund**

The aforementioned Trust shall hereinafter also be referred to as "Trust."

## RECITALS:

WHEREAS, the related Settlement Agreement is related to a tort, breach of contract or violation of law as referenced and indicated in Appendix A attached hereto and incorporated into the Trust Administration Agreement by reference; and

WHEREAS, the Claimants are a party to a Matter; and

WHEREAS, the Defendant parties' obligations associated with Settlement Agreement or Order are hereby assigned and transferred by the Defendant parties, as the Transferor, into this Trust are intended to resolve the contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and given rise to at least one claim asserting liability; and

WHEREAS, known Adverse Claims exist against the funds held within the Trust. Additionally, as of yet unknown Adverse Claims may also arise against the funds held within the Trust. Adverse Claims create restrictions against the final allocation, vesting, use and disposition of the Trust Assets. Such known Adverse Claims, and as of yet unknown Adverse Claims, may exist or arise from one or more person(s) or entity(ies) which possess current, future or ongoing adverse interests against the funds of this Trust. These Adverse Claim holders may include but are not limited to: (i) lien holders, or (ii) bankruptcy liens, or (iii) service provider(s), or (iv) general creditor(s) or any other person or entity asserting an Adverse Claim against the Trust Assets. Such adverse interests, obligations, and claims may include, but are not limited to, contested or uncontested: (i) debt or contractual obligations, or (ii) potential liability(ies), or (iii) residual or contingent interests against the respective Claimant's potential gross settlement and the Trust Assets; and

WHEREAS, the Claimants final vested rights under the QSF shall not be determined until the Trustee in its sole authority and absolute discretion allocates and vested said rights to the Claimant as a Distributee; and

WHEREAS, the Claimants wish to create a domestic qualified settlement fund (the "QSF") pursuant to Section 468B of the Internal Revenue Code of 1986 and the associated regulations Section 1.468B-1(c), as they may be amended from time to time; and

WHEREAS, this Trust is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that Governing Authority; and

WHEREAS, the Trustee and the approving Governing Authority (within the meaning of Section 1.468B-1), including but not limited to their respective staff and officers, are not related parties within the meaning of Section 267(b); and

WHEREAS, pursuant to § 1.468B-1(j); on the date that the assets of this QSF satisfy all the requirements of §1.468B-1(c), as acknowledge by the approval of the Governing Authority, the Transferor is treated as irrevocably transferring the assets to this QSF and the QSF is the assigned sole owner of the QSF assets. Additionally, on the date the QSF satisfies all the requirements of §1.468B-1(c) the Transferor shall have no right of ownership or control over the assets of the QSF; and

WHEREAS, Ex-Parte creation is suitable pursuant to Section 468B of the Internal Revenue Code of 1986 and the associated regulations in Section 1.468B-1, and as the Defendant parties have no standing to object, as this Trust merely provides for the Claimants to have the flexibility to plan for the most advantageous use of the settlement and it preserves the deductibility of the settlement for the Defendant parties; and

WHEREAS, an Ex-Parte Order Establishing this QSF (the "Order"), which provides for the creation of this Trust (the "Trust") and the transfer of the Fund Settlement Payment(s) pursuant to the Settlement Agreement to the Trust was:

> a) entered on June 2nd, 2022,
>
> b) in the Commonwealth of Virginia, Office of Town Counsel, Town of Warrenton; and

Pitt McGehee USAG Qualified Settlement Fund
Created: June 2nd, 2022

WHEREAS, the Defendant shall have no secondary or residual liability related to (i) the operation of the QSF, or (ii) the disposition of the settlement proceeds paid into the QSF, or (iii) the Plaintiff's subsequent use or loss of the settlement proceeds; and

WHEREAS, the QSF will be for the satisfaction of multiple Claims and the satisfaction of the respective Claims of the Claimants, as defined within the Trust Administration Agreement incorporated by reference hereto, including but not limited to:

> a) the Plaintiffs; and

> b) any third parties asserting valid claims and liens against the settlement proceeds and the assets of the QSF; and

> c) the Plaintiffs' associated attorneys' fees and costs; and

> d) the associated Trustee and Trust Administrator fees and costs; and

WHEREAS, the Defendants shall not incur any cost nor have any liability arise from the operation of the QSF.

NOW, THEREFORE, subject and pursuant to the restrictions, future contingencies and the terms and conditions set forth herein, pursuant to and consistent with the terms of the Settlement Agreement, and in consideration of the mutual covenants and understandings contained and set forth herein, this Irrevocable Trust Agreement (the "Trust Agreement") is made to establish the Trust as referenced above herein and appoints as the Trustee (as defined in the Trust Administration Agreement incorporated herein by reference), to hold, administer and distribute the Trust Assets, as follows:

## ARTICLE 1 – ESTABLISHING THE TRUST

1.1 *Incorporation by Reference*
All terms, provisions, and agreements set forth in the Trust Administration Agreement are hereby incorporated by reference with the same force and effect as though fully set forth herein.

1.2 *Qualified Settlement Fund.*
The Trust is intended to be established as a Qualified Settlement Fund within the meaning of § 1.468B-1(c) of the Treasury Regulations promulgated under § 468B of the Code. The Trustee shall take any action or cause the Trust to take any action necessary to create and maintain the status of the Trust as a Qualified Settlement Fund. The Trustee shall not take any action that

Ver 4-25-2022

will adversely affect the qualification of the Trust as a Qualified Settlement Fund. The Trust meets the requirement of § 468B of the Code as the Trust:

(a) was established pursuant to an order of, or is approved by, a territory, possession, or political subdivision thereof, or any agency or instrumentality of a state of the United States and is subject to the continuing jurisdiction of that Governing Authority pursuant to §1.468B-1(c); and

(b) was established to resolve or satisfy one or more related contested or uncontested claims from liability arising out of alleged liability in connection with a tort, breach of contract or violation of law; and

(c) is a trust constructed and operated under the state trust laws of the Principal Place of Administration, and Trust Assets are segregated from other assets of the Transferor; and

(d) pursuant to IRS Rev. Proc 93-94 is a Party to the Suit or Agreement and thus has standing to receive the settlement payment.

1.3 *Purpose.*
The purpose of the Trust is to implement and carry out the provisions and purposes of the Settlement Agreement, including but not limited to, receiving the Settlement Fund Payment from the Defendant, holding the Settlement Fund Payment and paying Claimants who hold valid Claims, all in accordance with the terms and conditions set forth in the Settlement Agreement. The Trust as established shall be: (i) a "domestic trust" as defined by Section 7701 of the Code; (ii) constructed as a common-law trust; and (iii) sitused and governed under the laws of the Principal Place of Administration of the Trust, as established by the Trustee in writing. The intended purposes of the Trust further include that:

(a) The Trust and the Claimants have legally separate taxable existences, and only the Trustee retains the sole power and authority of absolute discretion to grant a Vested Right, thereby qualifying a Claimant as a Distributee as defined in the Trust Administration Agreement incorporated herein by reference, and distribute the Trust's assets to the Claimants, as Distributees, in such amounts and proportions as the Trustee might from time to time decide. The Trustee, without exception, has exclusive control over the allocation, timing, and Vesting of Trust distributions.

(b) Pursuant to Treas. Reg. § 1.451-2(a) "income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." As

such, Claimant funds not constructively received as the Assets of the Trust are held under the Trustee's sole authority and absolute discretion under the Trust's terms, conditions, and restrictions consistent with Treas. Reg. § 1.451-2(a) and the protections afforded under § 468B.

(c) The Claimants have no degree of possession, control, or enjoyment of the Trust property or a right to receive, assign, or demand the Trust Assets. Only the Trustee has the sole power and authority of absolute discretion to grant a Vested Right, thereby qualifying a Claimant as a Distributee, and distribute the Trust's assets to the Claimants, as Distributees, in such amounts and proportions as the Trustee might from time to time decide.

1.4 *Transfer and Acceptance of Assets; Assumption of Liabilities.*
Pursuant to the Settlement Agreement and Order, the Defendant shall promptly transfer the Settlement Fund Payment to the Trust. All property, assets or funds received by the Trust, and any earnings thereon, shall be held, administered and disbursed under the terms of this Trust Agreement, the Trust Administration Agreement, and consistent with the Settlement Agreement. In furtherance of the purposes of the Settlement Agreement, the Trust accepts the transfer of the Settlement Fund Payment and assumes all liability for the Claims.

Another valid § 468B Qualified Settlement Fund, properly formed and operated, which holds funds related to the same matter as referenced in Appendix A - Case Caption of Matter(s) or Matter(s) in Conflict Resolved (attached hereto and incorporated into the Trust Administration Agreement by reference), may transfer or assign all or a part of the transferring Qualified Settlement Fund's proceeds and associated Settlement Agreement Claimant liabilities into this Trust by decanting, or equivalent transfer or assignment. Such decanting transfer shall be deemed an act of decanting and assignment and not a taxable distribution. Further, the mere act of decanting or assignment into this Trust does not create an economic benefit, constructive receipt or cash equivalence of such transferred proceeds within the meaning of 26 C.F.R. 1-451-2(a) or like doctrines to this Trust or any Claimant hereunder.

1.5 *No Actual or Constructive Receipt of Payments on Behalf of Claimants.*
The attorneys for Claimants shall ensure that all monies received from the Defendants or paid on behalf of the Defendants, regardless of the named payee, are deposited directly into the Fund, without first taking actual receipt, such as by depositing into an office trust account, or otherwise taking constructive receipt within the meaning of 26 C.F.R . 1.451-2(a).

Under the property laws of the situs state, no Claimant shall be considered to have constructive receipt, as defined in 26 C.F.R. § 1.451-2(a), or economic benefit or cash equivalence, as defined

in common law, of any Trust Assets while they are (i) under the control of the Administrator; (ii) subject to the jurisdiction of the Governing Authority; or (iii) their distribution is subject to future events and agreements.

1.6 *Check Endorsement by Trust Administrator.*

In the event the payee or payees of any check that might be received from a Defendant or on behalf of a Defendant for the benefit of any Claimant is other than the Fund, or if additional payees are specified on the check, the Trust Administrator shall deposit such check or checks into the Fund, without the endorsement of the other payees whether or not the Fund is a named payee; and the Trust Administrator is hereby authorized to endorse any such check on behalf of any other payee.

1.7 *No Further Obligation or Reversion.*

Following the final installment of Settlement Fund Payment to the Trust, the Defendants shall have no further obligation to contribute to the Trust, nor shall Defendants have any right to a refund or reversion of that payment or any interest thereon unless so stipulated in Appendix B - Claw Back (Reversion) Provision attached hereto and incorporated into the Trust Administration Agreement by reference.

1.8 *Nature of Payments.*

The Settlement Fund Payments made to the Trust shall not be construed as fines, penalties, monetary sanctions, or punitive damages.

1.9 *Additional Deposits.*

Additional deposits to the Trust shall be allowed.

1.10 *No Amendment or Revocation of Trust.*

The Claimants shall not have any right whatsoever to amend, modify, terminate, transfer, revoke or alter this Trust, in whole or in part. This Trust may only be terminated, amended, Decanted or revoked in accordance with the terms set forth in this Trust Agreement and the Trust Administration Agreement, or by means of the distribution of the Trust Assets, to the persons or entities entitled thereto in accordance with this Trust Agreement, the Trust Administration Agreement, or by order of the Governing Authority.

1.11 *No Constructive Receipt.*

As established by *Davis v. Commissioner*, T.C. Memo. 1978-12, for income to be constructively received, the funds must be made available to the taxpayer without substantial limitations. The funds of this Trust are not unqualifiedly subject to Claimant's demand or withdrawal. It is conclusively evident herein that only the Trustee has unfettered control in determining when a

distribution will or should be paid or has become a Vested Right, thereby qualifying a Claimant as a Distributee (as defined in the Trust Administration Agreement incorporated herein by reference); subject to the ongoing authority of the court supervising the settlement agreement.

Further, pursuant to Treas. Reg. § 1.451-2(a) "*income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions*." As such, Claimant funds are not constructively received as the Assets of the Trust are held under the Trustee's sole authority and absolute discretion under the terms, conditions, and restrictions of this Trust Agreement and the Trust Administration Agreement in accordance with Treas. Reg. § 1.451-2(a) and the protections afforded under § 468B.

1.12 *No Economic Benefit.*
As established by *Minor v. U.S.*, 772 2d. 1472 (9th Cir 1985), the economic benefit doctrine does not apply to funds held in a trust when the Claimant's receipt of these funds is restricted or subject to future contingencies. As such, Claimant funds held in this § 468B Trust are not subject to the economic benefit doctrine since the Assets of the Trust are held under the Trustee's sole authority and absolute discretion under the Trust's terms, conditions, and restrictions of this Trust Agreement and the Trust Administration Agreement.

Further, as enumerated in Sproull v. Commissioner, 16 TC 244, 247 (1951), aff'd. 194 F. 2d 541 (6th 1952), and Thomas v. U.S. 45 F. Supp. 2d. 618, 620 (1999), aff'd. 213 F. 3d 927 (6th 2000), economic benefit only occurs upon the satisfaction of all three (3) of the following elements:

(a) *There must be some fund in which money or property is placed;*

(b) *The fund must be irrevocable and beyond the reach of the creditors of the party who transferred the funds to the escrow or trust; and*

(c) *The beneficiary must have vested right to the money, with the receipt conditioned only on the passage of time.*

While the Defendant(s) payment into a QSF would generally satisfy the first two elements of the economic benefit doctrine, a QSF Claimant would never satisfy the third element because the Claimants, under the terms of this Trust, do not possess vested rights in the funds held in the QSF until (i) the Trustee and Settlement Administrator determines a Claimant's allocated portion of the settlement monies and (ii) the Trustee enters into a settlement agreement with the Claimant and (iii) the Trustee then grants a Vested Right to the monies to the Distributee and disburses the cash from the QSF to them. All of these requirements stand in stark contrast

to the economic benefit doctrine's requirement that the claimant's possession be conditioned solely on the passage of time.

### 1.13 *No Cash Equivalence.*

As established by *Cowden v. Commissioner*, 289 F.2d 20 (5th Cir. 1961) the doctrine of cash equivalence does not apply to promises of payment, when the claimant's receipt of these funds is: (i) conditional; (ii) not assignable; (iii) subject to set-offs; and (iv) not marketable. As such, Claimant funds as held in this § 468B Trust are not subject to the doctrine of cash equivalence since the Assets of the Trust are held under the Trustee's sole authority and absolute discretion; and are conditional; not assignable; subject to set-offs; and not marketable under the terms, conditions and restrictions of this Trust Agreement and the Trust Administration Agreement.

The Trust and the Claimants have legally separate taxable existences, and only the Trustee retains the sole power and authority of absolute discretion to grant a Vested Right, thereby qualifying the Claimant as a Distributee, and distribute the Trust's assets to the Distributee(s) in such amounts and proportions as the Trustee might from time to time decide. The Trustee, without exception, has exclusive control over the allocation, timing, and Vesting of Trust distributions.

### 1.14 *Ongoing and Adverse Claims.*

Known Adverse Claims exist against the funds held within the Trust. Additionally, as of yet unknown Adverse Claims may arise against the Trust Assets. Adverse Claims create restrictions against the final allocation, vesting, use, and disposition of the Trust Assets. Such known claims, and as of yet unknown claims, may exist or arise from one or more person(s) or entity(ies) which possess current, future or ongoing Adverse Claims against the funds of this Trust. These Adverse Claim holders may include but are not limited to: (i) lien holders; (ii) bankruptcy liens; (iii) service provider(s); (iv) general creditor(s); or (v) any other person or entity asserting a claim against the Trust Assets. Such Adverse Claims, obligations, and claims may include, but are not limited to, contested or uncontested: (i) debt or contractual obligations; (ii) potential liability(ies); or (iii) residual or contingent interests against the respective Claimant's potential gross settlement and the Trust Assets. In consideration of the foregoing, it is conclusively stipulated that the Trustee, within its sole authority and absolute discretion, may distribute funds to one Claimant to the exclusion of other Claimants.

The Trustee shall, within its sole authority and absolute discretion, determine when such Ongoing and Adverse Claims have been resolved based on the then-known facts, available information, requests, and representations. Prior to the Trustee's awarding a Vesting Right to a Claimant, each respective Claimant's receipt of these funds is substantially limited, restricted and subject to future contingencies. Notwithstanding the preceding, the Trustee may transfer Trust Assets to a third party whose assigned and accepted duty it shall be to resolve such obligations.

The Trustee's responsibilities, duties, and liabilities shall end with said good faith transfer. For the purpose of clarity and the avoidance of doubt, and by way of only one example, the transfer of Trust Assets into a law firm's respective IOLTA account for the purpose of the law firm assuming the duty for the satisfaction of Ongoing and Adverse Claims by and through the payment of such funds shall be a good faith transfer.

1.15 *Not a Security.*

This Trust and the associated common funds of the Trustee are NOT a security, future, option, or other financial instrument or an offer to provide any investment advice or service. Nothing herein shall be considered a solicitation or offer to buy or sell any security, future, option or other financial instrument or an offer to provide any investment advice or service to any person in any jurisdiction. No resulting Qualified Settlement Fund or trust is formed or operated by the Trustee to acquire a specific security, to create a security or to be offered as a security. Securities and insurance products that may be held are not insured by the FDIC nor by any other federal or state government agency, are not a deposit of and are not guaranteed by a bank or any bank affiliate and may lose value.

1.16 *No Investment in Trustee*

No investment under the Trust is an investment in the Trustee or Trust Administrator.

## ARTICLE 2 – GENERAL PROVISIONS

2.1 *Termination of the Trust.*

The Trust shall terminate within a reasonable time after any one of the following circumstances:

(a) Few Assets. The date the Trust no longer has any Assets (other than a reasonable reserve for potential tax liabilities and related professional fees) and will not receive any more transfers;

(b) Trustee's Determination. The Trustee's determination that the purposes of the Trust have been met; or

(c) On Trustee's Notice. Notice by the Trustee to the Governing Authority recommending to the Governing Authority that the Trust be terminated;

Pursuant to the preceding conditions and IRC Section 468B, in no circumstance shall any party, other than the Trustee or the Governing Authority supervising the Trust, have any power or control, directly or indirectly, to cause the termination of this Trust, remove the Trustee or Decant the Trust Assets. For clarity, it is expressly prohibited that any claimant or other person

or Parties in Interest shall have any power, authority or control to request or compel the termination of the Trust.  In the event of the premature termination of the Trust being approved by the Governing Authority; the Trustee shall be allowed to charge a termination accounting hourly fee which shall not exceed two percent (2%) of the Trust Assets on the date of the notice or the date of the termination approval, whichever is greater.

If Governing Authority approval is required to terminate the Trust, the Trust Administrator may maintain a reserve of funds to pay anticipated and outstanding obligations of the Trust prior to its termination to include, but not limited to, the taxes and tax filing preparation fees.

### 2.2 *Supervision by the Governing Authority.*
The Trustee and Trust Administrator shall operate under the ongoing jurisdiction of the Governing Authority, which shall have the continuing and exclusive authority and jurisdiction over matters relating to the Trust's qualification and operation pursuant to Section 468B. For further clarification, please refer to Support Appendix 2 attached hereto and incorporated into the Trust Administration Agreement by reference.

### 2.3 *No Conflict of Jurisdiction.*
The Governing Authority shall exercise the sole authority and jurisdiction over matters relating to the Trust's qualification and operation pursuant to Section 468B. However, any matters of conflict arising that are associated with compliance with the Settlement Agreement shall be exclusively adjudicated under the applicable law and by the court that retains jurisdiction to supervise the Settlement Agreement.  To that end, if the Supervising Court issues specific instructions to the Trustee regarding distributions, such instructions shall have supremacy, and the Trustee will act in accordance with said instructions. For further clarification, please refer to Support Appendix 2 attached hereto and incorporated into the Trust Administration Agreement by reference. Additionally, for actions arising related to the operation of the Trust, the Claimant(s) submits personally to the jurisdiction of the courts of the Principal Place of Administration of the Trust or the jurisdiction in which the assets are located.

### 2.4 *Conflict with Settlement Agreement.*
In the event of any conflict between the terms or provisions of this Trust Agreement or the Trust Administration Agreement and any terms agreed to between the Parties as evidenced by the Settlement Agreement, the terms of the Settlement Agreement shall control, as this primary purpose of this Trust Agreement and the Trust Administration Agreement is to effectuate the Settlement Agreement. For further clarification, please refer to Support Appendix 2 attached hereto and incorporated into the Trust Administration Agreement by reference.

2.5 *Governing Law.*

This Trust is governed, construed and administered according to the laws of the then-Principal Place of Administration, as amended, except that all matters of federal tax law and this Trust's compliance with Section 7701 and Section 468B of the Code and the applicable Treasury Regulations shall be governed by federal income tax law.

2.6 *Indemnification.*

The Trustee and Trust Administrator and their Third Parties, and their officers, employees, representatives, agents, advisors, and consultants (the "Indemnitees") shall be indemnified, defended and held harmless by Claimants and the Trust Assets against any and all claims, demands, suits, liabilities, awards, expenses, losses, costs, fees (including reasonable attorneys' fees and costs), damages, causes of action and judgments ("Losses") incurred by the Indemnitees in the performance of their duties hereunder, or in connection with activities undertaken by them prior to the date of this Trust Agreement relating to the formation, establishment or funding of the Trust; provided that the Indemnitee acted in good faith and a manner the Indemnitee reasonably believed to be in, or not opposed to, the best interests of the Trust. Should any Indemnitee(s) be named as a party to, or threatened to be made a party to, any threatened, pending, active or completed action, suit, investigation, inquiry or proceeding of any kind, whether governmental, civil, administrative or arbitrative, and whether brought by or against or otherwise involving the Trust, by reason of the Indemnitee(s) having served in any capacity on behalf of the Trust, such Indemnitee(s) shall be indemnified, defended and held harmless by the Claimant and the Trust Assets.  This agreement to indemnify, defend, and hold harmless shall apply to the reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement and liabilities of all kinds incurred by the Indemnitee(s) in connection with or resulting from such actual or threatened action, suit, investigation, inquiry or proceeding; except to the extent that it is finally determined by this Governing Authority that the Indemnitee(s) was (or were) grossly negligent or acted with willful misconduct in connection with the administration of this Trust. The Indemnitees may reasonably rely on the specimen signatures and the proximity of signatures on distribution requests to such specimen(s). The Indemnitees are released, held harmless and indemnified from any claims arising from reasonable reliance on such specimen signatures and have no additional duty to verify the identity of the signor. Absent a serious breach of this Trust Agreement or the Trust Administration Agreement by willful misconduct; no Indemnitee is liable to a Claimant for: (i) a loss or depreciation in the value of Trust Assets; (ii) not having made a profit; or (iii) having realized an investment loss.

2.7 *Lien.*

The Trustee and Indemnitees shall have a prior lien as Claimants upon the Trust Assets as an Adverse Claim to secure the payment of any amounts payable to the Trustee or Indemnitees

pursuant to the terms and conditions of this Trust Agreement and the Trust Administration Agreement, and the Trustee may take such actions as may be necessary to evidence such lien, including, without limitation, filing appropriate financing statements.

Notwithstanding the foregoing, no party, other than as described above, has or shall have any lien, claim or security interest in the Trust or any part thereof.  No financing statement under the Uniform Commercial Code is on file in any jurisdiction claiming a security interest in or describing (whether specifically or generally) the Trust or any part thereof.

2.8 *Bond.*

No bond is required of the Trustee or any Successor Trustee of the Trust.

2.9 *Irrevocability; Modifications.*

The Trust shall be irrevocable. The Defendants shall have no power or authority to direct the Trustee to return any of the corpus of the Trust to Defendants except as may be provided for by the Settlement Agreement and the Claw Back Provisions when in compliance with Section 468B.  For further clarification please refer to Appendix B-Claw Back (Reversion) Provision attached hereto and incorporated into the Trust Administration Agreement by reference. This Trust Agreement may be amended by an agreement executed by the Trustee in its sole discretion and absolute authority, or by the Governing Authority upon application of the Trustee. Notwithstanding the preceding, this Trust Agreement and the Trust Administration Agreement shall not be amended in any manner that adversely affects the treatment of the Trust as a Qualified Settlement Fund. Should any provision of this Trust Agreement or the Trust Administration Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Trust Agreement and the Trust Administration Agreement.

2.10 *Disclaim or Release Any Power.*

Notwithstanding any provision of this Trust Agreement or the Trust Administration Agreement to the contrary, any Trustee may relinquish any Trustee power in whole or in part, irrevocably or for any specified period, by a written instrument. The Trustee may relinquish a power solely for itself or may relinquish the power for all subsequent Trustees.

2.11 *Savings Provisions.*

Notwithstanding anything stated herein, in the event that any portion of this Trust Agreement shall at any time be considered not to be in compliance with §468B, as amended, together with any and all Treasury Regulations and Internal Revenue Service's Notices, Announcements and directives thereunder, such offending Article of this Trust Agreement shall be considered null, void and of no effect, without any action by any judicial court or the Governing Authority or by

the Trustee. The overarching purpose of this Trust Agreement is to comply with Internal Revenue Code §468B and all administrative authority and announcements thereunder. In the event that this paragraph applies and renders an offending Article or Articles null, void or of no effect, Severability shall still apply with respect to the remaining non-offending Articles of this Trust Agreement.

### 2.12 *Severability.*

The invalidity or unenforceability of any provision of the Trust Agreement does not affect the validity or enforceability of any other provision of this Trust Agreement. If the Governing Authority of competent jurisdiction determines that any provision is invalid, the remaining provisions of the Trust Agreement are to be interpreted as if the invalid provision had never been included.

### 2.13 *Spendthrift Provision.*

No Claimant may assign, anticipate, encumber, alienate or otherwise voluntarily transfer the income or principal of the Trust Assets. Also, neither the income nor the principal of the Trust Assets is subject to attachment, bankruptcy proceedings or any other legal process, the interference or control of creditors or others, or any involuntary transfer. Notwithstanding the foregoing, preexisting liens and contingent liabilities of the Claimant, as provided for in the Settlement Agreement or otherwise documented, may in the Trustee's sole authority and absolute discretion, have standing against the Trust Assets as an Adverse Claim in proportion to the associated Claimants potential share of the Trust Assets.

### 2.14 *Successors and Assigns.*

The provisions of this Trust Agreement and the Trust Administration Agreement shall be binding upon and inure to the benefit of the Trust, and the Trustee, and their respective successors and permitted assigns.

### 2.15 *Notice.*

Any notice required to be given by the Trustee to a Claimant under the terms of this Trust, the Trust Administration Agreement, or the Settlement Agreement may be given to Claimant's Attorney and if the Claimant is not represented by legal counsel, mailed to the Claimant at the Claimant's last known address or email address, or electronic notice posted on the Trustee's website pursuant to the Trustee's published Terms and Conditions. The Notice provided to the Claimant in accordance with this Section shall be deemed sufficient for any notice the Trustee may be required to provide to the Claimant under the terms of this Trust Agreement, the Trust Administration Agreement, and the Settlement Agreement.

**Pitt McGehee-USAG Qualified Settlement Fund**
**Created: June 2nd, 2022**

2.16 *Headings.*

The headings, titles, subtitles, table of contents and indexes in this Trust Agreement have been inserted solely for convenient reference and are not intended to qualify or restrict the meaning of any section, nor do they have any legal or dispositive effect.

2.17 *Gender and Number.*

Whenever the context requires, the feminine shall be substituted for the masculine, the singular for the plural and vice versa.

2.18 *Validity.*

If any provision of this Trust Agreement or application of such provision to any person or circumstance shall be held invalid by a United States judicial court of competent jurisdiction, the remainder of the Trust Agreement shall not be affected thereby.

2.19 *Facsimile and Email Copies.*

All copies of this Trust Agreement, including but not limited to facsimile, electronic, email and photostatic images, shall be deemed to be originals and shall serve to bind the Parties and have the same force and effect as non-facsimile signatures and documents.

2.20 *References.*

A reference to a paragraph without identifying the Section or Article in which it appears has the same effect as naming the Section or Article in which the reference appears. A reference to a Section without identifying the Article in which it appears has the same effect as naming the Article in which the reference appears.

2.21 *Verbs.*

Use of the verb "shall" in this Trust Agreement indicates a mandatory direction, and use of the verb "may" indicates an authorization to take action or not take action as the Trustee deems appropriate under the circumstances at the sole authority and absolute discretion of the Trustee. Any use of the word "shall" in any specific provision or group of provisions shall not imply any intent to remove discretion from any other provisions of the Trust Agreement or limit the exercise of the Trustee discretion in other matters. In the event the word "shall" appears in a provision that is otherwise preconditioned, then the "shall" provision is dependent on the preconditioning provision first being satisfied or evoked in the sole authority and absolute discretion of the Trustee.

2.22 *Gate Provision.*

The Trustee, in its sole authority and absolute discretion, may limit the amount and frequency of distributions to prevent a "run on the trust" during periods of abnormal or adverse banking

Ver 4-25-2022

or market conditions or economic volatility. This provision shall have supremacy and prevail even if in conflict with any other provision of the Trust Agreement or the Trust Administration Agreement.

2.23 *Minor Claimant.*

The Trustee shall only make distributions for the sole benefit of a Minor claimant pursuant to a court order if a Claimant of this QSF has not obtained the Age of Majority.

In the absence of any other court order; if a Claimant has not obtained the Age of Majority on the date the Claimant becomes a Distributee, then the Trustee may, in its sole authority and absolute discretion, petition a court to create a Minor's Trust to receive the Minor Claimant's beneficial rights under this QSF.

Notwithstanding the foregoing, the Trustee may, in its sole authority and absolute discretion, petition any court of competent jurisdiction within any state, where all or part of the administration occurs or trust property exists, to create a Minor's Trust which nexus and jurisdiction is thereby established. The Claimant(s) shall submit personally to the jurisdiction of the courts as established herein regarding any matter involving the Trust.

A Minor's Trust created under this provision shall terminate on its beneficiary obtaining the Age of Majority, or upon the death of the beneficiary, whichever shall occur first. Further, the trustee of the Minor's Trust shall make such accountings to the approving court as may be so ordered by the approving court.

In the event this *Minor Claimant* provision is found to conflict with any other provision of this Trust, this *Minor Claimant's* provisions shall have the supremacy.

2.24 *Scrivener's Error*

The Trustee, acting sua sponte in its sole authority and absolute discretion, is granted the power to make amendments to correct Scrivener's errors or to amend the Trust in any manner required for the sole purpose of ensuring that the powers, authorities, and discretions of the Trustee remain legally binding and valid under common law, state law, and federal law. Scrivener's Error shall be deemed as an error due to a minor mistake or inadvertence and not one that occurs from: (i) judicial reasoning or determination, or (ii) the intention of the Transferor or drafter of the Trust.

2.25 *Incapacitated Adult Claimant.*

The trustee shall only make distributions for the sole benefit of an Incapacitated Adult pursuant to a court order if a Claimant of this QSF is deemed an Incapacitated Adult.

In the absence of any other court order, if a Claimant is an Incapacitated Adult on the date the Claimant becomes a Distributee, then the Trustee may, in its sole authority and absolute discretion, petition a court to create an Incapacitated Adult Trust to receive the Incapacitated Claimants' beneficial rights under this QSF.

Notwithstanding the foregoing, the Trustee may, in its sole authority and absolute discretion, petition any court of competent jurisdiction within any state, where all or part of the administration occurs or trust property exists, to create an Incapacitated Adult Trust which nexus and jurisdiction is thereby established. The Claimant(s) shall submit personally to the jurisdiction of the courts as established herein regarding any matter involving the Trust.

The Incapacitated Adult Trust shall terminate on the death of its beneficiary or when the beneficiary regains capacity.

In the event this *Incapacitated Adult Claimant* provision is found to conflict with any other provision of this Trust, this *Incapacitated Adult Claimant's* provisions shall have the supremacy.

### 2.26 *Mutually Drafted.*

The Parties in Interest acknowledge that the drafting of this Trust Agreement is a mutual effort. It is understood that all Parties had adequate representation regarding the drafting of this Trust Agreement and have requested no additional time to execute a complete and thorough review prior to funding the Trust. As such, this Trust Agreement is not to be construed against any Party or group of Parties as the drafter.

### 2.27 *Entire Agreement; No Waiver.*

This Trust Administration Agreement and the Trust Agreement contain the entire agreement between the Parties relating to the subject matter of this Trust, and this Trust Administration Agreement and the Trust Agreement supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

### 2.28 *Counterparts and Electronic Signatures.*

This Trust Agreement, the Trust Administration Agreement, and all associated administrative documents and forms of the Trustee and Trust Administrator, may be executed in several counterparts, each having its own signature page(s) executed by wet (handwritten), mechanical

or electronic signatures. However, all such executed counterparts, along with the original Trust Agreement and the Trust Administration Agreement, shall constitute the entire agreement between or among the Parties, which is fully enforceable and binding on all of the Parties hereto, including any future Party in Interest, notwithstanding the signatures, or lack thereof, contained in this Trust Agreement, the Trust Administration Agreement, or any and all counterparts. Copies of the executed Trust Agreement the Trust Administration Agreement, or all associated administrative documents and forms, certified as a True Copy of the Original by the Trustee, whether physical or electronic reproductions, shall be deemed valid incarnations of the Trust Agreement, the Trust Administration Agreement, and administrative documents forms, which shall be considered enforceable and binding as would the original Trust Agreement, the Trust Administration Agreement, and all associated administrative documents and forms.

Electronic signatures and communications are subject to the federal Electronic Signatures in Global and National Commerce Act (the "Act"), and the Trustee shall apply the Act to enable the ability to conduct business by, with, and among all parties by electronic means.

2.29 *Incorporation of Terms and Conditions.*
All terms, provisions, and agreements, and as may be amended from time to time, set forth in the Terms and Conditions, and Privacy Statement of the associated websites, including but not limited to www.EasternPointTrust.com, are incorporated by reference into the Trust Agreement and the Trust Administration Agreement with the same force and effect as though fully set forth therein. Any capitalized term not defined in this Trust Agreement or the Trust Administration Agreement incorporated by reference hereto shall have the meaning ascribed to it in the Terms and Conditions and Privacy Statement.

2.30 *Incorporation of Appendices, Acknowledgements, Waivers, and Disclosures.*
All Appendices, Acknowledgements, Waivers and Disclosures which may be part of this Trust Agreement or the Trust Administration Agreement or the Terms and Conditions, including but not limited to the *Terms and Conditions* of www.EasternPointTrust.com, are incorporated by reference into the Trust Agreement and the Trust Administration Agreement with the same force and effect as though fully set forth herein.

## [EXECUTION APPEARS ON THE FOLLOWING PAGE]

## ARTICLE 3 - EXECUTION AND CREATION

IN WITNESS WHEREOF; the authorized officer acting for the Co-Trustees comprising the Initial Committee of Co-Trustees have set their hand to this Trust Agreement inclusive of all of the attachments herewith and incorporated by this reference, and inclusion with the same force and effect as though fully set forth therein.

ACKNOWLEDGMENT OF POWER TO EXECUTE; The persons creating and signing the Trust Agreement warrant they have the power and authorization to enter into this Trust and that this Trust Agreement is binding upon the Trust, all Parties in Interest and the Trustee.

Executed and with the Effective Date of June 2nd, 2022.

Committee of Co-Trustees

_____

By: Glen Armand, Authorized Officer

**Appendix A**
**Page 1 of 2**

**Case Caption of Matter(s) or Matter(s) in Conflict Resolved:**

United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division, In re: USA Gymnastics, Chapter 11, Case No. 18-09108-RLM-11

**Type of Liability (or liabilities) for which the QSF was established:**

Tort

## Appendix A
## Page 2 of 2

**Summary Description of Cause(s) of Action:**

Sexual abuse claims by multiple claimants against USA Gymnastics.

**Appendix B**
**Page 1 of 3**

## Court Supervised Distribution Provision

**No** Distributions of this QSF require the approval of a Supervising Court**.**

| | |
|---|---|
| **Court:** | ILB |
| **State and County** | |
| **of Jurisdiction** | |
| **Supervising Judge:** | ILB |
| | |
| **Email:** | ILB |
| **Phone Number:** | ILB |
| **Fax Number:** | ILB |

## Third-Party Supervised Distribution Provision

**No** Distributions of this QSF require the approval of a Supervising Third Party**.**

**Supervising Third Party:**  ILB

| | |
|---|---|
| **Email:** | ILB |
| **Phone Number:** | ILB |
| **Fax Number:** | ILB |

Ver 4-25-2022

## Appendix B
## Page 2 of 3

## Use Limitation Provision

Distributions shall only be allowable pursuant to the following limitations which shall include, but not be limited to, any and all limitations imposed by the Settlement Agreement:

**Use Limitation Provision:**

Not applicable.

Ver 4-25-2022

## Appendix B
## Page 3 of 3

## Claw Back (Reversion) Provision

The Claw Back Provision shall comply with the terms and conditions of Section 468B, and upon satisfying said terms and conditions have supremacy and prevail even when in conflict with other provisions of the Trust.

In the event the Trustee determines, in its sole authority and absolute discretion, that the Claw Back Provision does not comply with 468B then (i) the Claw Back Provision shall be struck and considered void, or (ii) the Claw Back Provision may be amended by the Trustee, in its sole authority and absolute discretion, as necessary for the provision to comply with 468B.

Nothing in this Claw Back (Reversion) provision grants or implies any ownership or control over of the Assets of the Trust by the Transferor. For the purpose of clarity and the avoidance of confusion; (i) the sole ownership of the Assets of the Trust resides with the Trust, and (ii) the Trustee has the sole authority, control and absolute discretion over the funds held within the Trust, their disposition and the application of the Claw Back (Reversion) provision, and (iii) the Trustee has the sole authority, control and absolute discretion over the operation of the Trust subject to the continuing jurisdiction of the Governing Authority.

**Claw Back Provision:**

No Clawback Provision Specified

Ver 4-25-2022

## Support Appendix 1

The Trust Assets held in this QSF are not the property of the Claimants, and no Claimant has a property or taxable interest in the Trust Assets until the Trustee confers a Vested Right, thereby qualifying the Claimant as a Distributee as defined herein. The granting of a Vested Right shall only occur upon the approval of a Petition for Distribution. Only then, are the settlement proceeds vested, released, and paid. Therefore, the QSF is informally funded for future claims, and no specific vested Trust Assets are set aside specifically for any individual Claimant's benefit. The QSF only serves as an interim vehicle to resolve the claims of various involved known and unknown parties with Adverse Claims and residual and contingent interests.

The Trustee and Trust Administrator, under the continuing jurisdiction of the Governmental Authority, may settle with the Claimants the existing claims by approving a Petition for Distribution with persons or entities asserting such claims (or their Authorized Agent acting on the person's, entities', or Claimant's behalf.) Until the Petition for Distribution is approved (utilizing the Trustee's designated form), no settlement proceeds held in this QSF are formally funded or set apart for any Claimant, or otherwise made available so that they may draw upon or otherwise control said settlement proceeds.

As referenced, no Claimant possesses a Vested Right in the Trust Assets until such time as the Trustee and the Trust Administrator determines a Claimant's final allocated portion of the settlement funds and approves, under the ongoing jurisdiction of the Governmental Authority, the Petition for Distribution submitted by the Claimant or their Authorized Agent and distributes such from the QSF to the respective Claimant(s). Further, the Trust Assets are subject to set-offs from known, and as of yet unknown, third parties that hold a lien or claim against a Claimant's recovery.

Moreover, pursuant to Section 2.13 of this Trust Administration Agreement ("General Power of Appointment"); only the Trustee holds a general Power of Appointment. No Claimant holds or may exercise a general or limited Power of Appointment.

For the purpose of clarity and the avoidance of doubt, it is noted that interim worksheets, interim allocations, interim calculations, interim working papers, and interim ministerial sub-amounts of the QSF are solely for the administrative and ministerial convenience of the Trustee and Trust Administrator. Such interim allocations are only notational and do not convey or establish any Vested Right, constructive receipt, economic benefit or cash equivalence to, or upon, any respective Claimant. Any and all interim notational allocations may change from time to time at the discretion of the Trustee and are subject to future restrictions.

Additionally, the IRS's guidance from PLR 200138006 establishes that:

*"For a taxpayer to include an amount in income under this [economic benefit] doctrine, the amount must be set aside irrevocably, for the taxpayer's sole benefit, without restrictions or conditions based upon the occurrence of future events."*

As such, a Claimant's unvested right of expectation to the Trust Assets do not constitute income being received through the application of the economic benefit doctrine.

As established by the terms and conditions of the QSF, the defendant's payment of settlement monies paid into the QSF are NOT unconditional and may NOT be assigned by the Claimant. (Reference: Section 6.15 of this Trust Administration Agreement "Spendthrift Provision").

No distribution is allowable without several steps and criteria being satisfied (which include substantial third-party decisions, restrictions, and Adverse Claims) before a Claimant may be granted by the Trustee any Vested Right to the monies that are held in the QSF. The preceding substantial limitations and substantial decisions, restrictions, and third-party Adverse Claims placed on a Claimant's receipt of settlement proceeds render nugatory the potential for the constructive receipt, economic benefit, or cash equivalence to result. (Reference: Sections 1.11 "No Constructive Receipt," 1.12 "No Economic Benefit," 1.13 "No Cash Equivalence," 1.14 "Ongoing & Adverse Claims" of the Trust Agreement).

Note further that Section 6.2 of this Trust Administration Agreement ("Distributions") establishes that the Trust Assets are not set aside for a Claimant's sole benefit and are subject to terms, conditions, and restrictions which are based on future events. These terms, conditions, and restrictions include but are not limited to the fact the Claimant must execute a Petition for Distribution with the Trustee and the Trust Administrator prior to receiving the Claimant's respective share of the QSF settlement proceeds. These facts stand in direct contrast to the definition of constructive receipt regardless of whether the QSF involves a single Claimant or multiple Claimants.

In addition to the preceding arguments that render nugatory the economic benefit, constructive receipt and cash equivalence doctrines; *IRS Rev. Proc. 93-34, establishes that a QSF will be considered a "party to the suit or agreement" for the purposes of IRC Section 130.* As such, the QSF itself is a party to the suit with its own interests and claims thus the concept of a "single claimant" QSF is not valid within the facts and circumstances of this QSF.

Nevertheless, it should be noted that, throughout Rev. Proc. 93-34 the IRS repeatedly references and utilizes the singular tense *"claimant"* as opposed to utilizing the plural tense *"claimants."* It is

thus difficult to pervasively argue that the IRS would repetitively err in the use of the singular form of the word "claimant." It is manifestly clear that in *IRS Rev. Proc. 93-34* the IRS's intention is to convey that a single claimant QSF is valid.

In summary, this QSF by its structure, terms, and conditions is a settlement tool that can be utilized by either many Claimants or a singular Claimant involved in one of the aforementioned Reg. 1.468B-1(c)(2) categories and as constructed the QSF shields the Claimants from constructive receipt, economic benefit, and cash equivalence until the Trustee conveys a Vested Right.

## Support Appendix 2

This appendix is intended to provide clarification and avoid confusion regarding the relationship between the Settlement Agreement (as identified in Appendix A) and the QSF.  The QSF, while separate from the Settlement Agreement, and under a jurisdiction distinct from that which oversees the Settlement Agreement, exists to effectuate the provisions, purposes, and intents of the Settlement Agreement.

The Settlement Agreement is the judicially enforceable and binding agreement entered into by the parties which stipulates the economic terms of the resolution of the event which qualifies as an eligible claim asserting liability pursuant to Section 1.468B-1(c)(2). (Reference: this Trust Administration Agreement's *Definitions* "Petition for Distribution").  The Settlement Agreement is under the continuing jurisdiction of the court which is supervising the Settlement Agreement, is stipulated in the Settlement Agreement, originally approved the Settlement Agreement, or is of appropriate jurisdiction within the state in which the underlying matter originally arose. (Reference: Section 2.2 of the Trust Agreement "Supervision by the Governing Authority").

The QSF is a Trust established within the meaning of §1.468B-1(c) of the Treasury Regulations promulgated under § 468B of the Code.  Importantly, the Trust meets the following requirements:

(a) The Trust was established pursuant to an order of, or is approved by, a territory, possession, or political subdivision thereof, or any agency or instrumentality of a state of the United States and is subject to the continuing jurisdiction of that governing authority pursuant to §1.468B-1(c); and

(b) was established to resolve or satisfy one or more related contested or uncontested claims from liability arising out of alleged liability in connection with a tort, breach of contract or violation of law;

(c) is a trust constructed and operated under the state trust laws of the Principal Place of Administration at its formation, and Trust Assets are segregated from other assets of the transferor; and

(d) pursuant to IRS Rev. Proc 93-94 is a Party to the Suit or Agreement and thus have standing to receive the settlement payment. (Reference: Section 1.2 of the Trust Agreement "Qualified Settlement Fund").

Ver 4-25-2022

The Settlement Agreement is **incorporated by reference** into this Trust with the same force and effect as though fully set forth therein, and the purpose of the QSF, as stated in Section 1.3 of the Trust Agreement, is to implement and carry out the provisions and purposes of the Settlement Agreement. (Reference: this Trust Administration Agreement's *Definitions* "Settlement Agreement," and Section 1.3 of the Trust Agreement "Purpose").

The Governing Authority has the sole authority and jurisdiction over matters relating to the QSF's qualification and operation pursuant to Section 468B. (Reference: Section 1.2(a) of the Trust Agreement "Qualified Settlement Fund"). The Governing Authority has no jurisdiction over the terms of the Settlement Agreement. (Reference: Section 1.2(a) of the Trust Agreement "Qualified Settlement Fund," and Section 2.2 of the Trust Agreement "Supervision by the Governing Authority").

There is no conflict of jurisdiction between the court with jurisdiction over the Settlement Agreement, and the Governing Authority with jurisdiction over the QSF. As noted in Section 2.2 of the Trust Agreement, any matters arising that are associated with compliance with the Settlement Agreement shall be exclusively adjudicated under the applicable law and by that court with jurisdiction over the Settlement Agreement. (Reference: Section 2.2 of the Trust Agreement "Supervision by the Governing Authority"). Further, in the event of any conflict between the terms or provisions of this Trust Administration Agreement and the Trust Agreement and any terms agreed to between the Parties as evidenced by the Settlement Agreement, the terms of the Settlement Agreement shall control, as the primary purpose of this Trust Agreement is to effectuate the Settlement Agreement. (Reference: Section 2.4 of the Trust Agreement "Conflict with Settlement Agreement"). Additionally, the QSF Trustee is not allowed to change the terms of the settlement. Finally, in the event that the Supervising Court issues instructions to the Trustee regarding distributions, such instructions shall have supremacy, and the Trustee will act in accordance with said instructions. (Reference: Section 2.3 of the Trust Agreement "No Conflict of Jurisdiction).

Ver 4-25-2022

## Support Appendix 3

This appendix is intended to provide clarification and avoid confusion regarding the distribution process.

Notwithstanding any other provisions of the Trust to the contrary, the Trustee shall not (i) grant any Vested Right or (ii) distribute any settlement amount or Trust property, except as ordered or awarded by the Supervising Court or as otherwise agreed to by the Claimant(s) pursuant to the Settlement Agreement.

A petition for a distribution of available funds requires the submission by Claimant (or its appointed agent or representative) of an accurate, complete, and executed Petition for Distribution Form., which form shall be the most recent version available.  The most recent versions of the Petitions for Distribution Forms, and instructions for their completion, can be found at https://www.easternpointtrust.com, or the appropriate website as defined by the Trust Administrator.  The Petition for Distribution Form must be completed in its entirety and additional information and materials not requested on the form must not be included.

Current and acceptable methods of submission are detailed on the Petition for Distribution Form, and include mail, email, and or/fax. The currently available methods of distribution are wire transfer or check. EPTC will not authorize ACH transactions at this time, either into or out of a QSF.  Distribution fees vary depending on the method of delivery.  The most current version of the distribution fees can be found on the Eastern Point Trust Company website.

Attorney's fees and/or payments to third parties require the submission of a duly executed IRS Form W9.  Payments marked as taxable to the recipient will result in a 1099 at the end of the year.  Petitions for an Assignment/Structured Annuity must be accompanied by a Qualified Agreement and Release (QAR), Non-Qualified Agreement and Release (NQAR), and/or a Settlement Agreement and Release (SAR).

With the exception of a Petition for Recurring Distribution, each Petition for Distribution Form is for a single Distribution to a single location.  Any additional request requires the submission of an additional Petition for Distribution Form.

Finally, Petition for Distribution Forms received before the standard processing cutoff time (1:00pm ET), with complete and accurate information, are processed on the same business day. Petition for Distribution Forms received after the standard processing cutoff time will be processed the following business day.

Ver 4-25-2022

# EXHIBIT G

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

## Pitt McGehee USAG Qualified Settlement Fund
## TRUST ADMINISTRATION AGREEMENT
Created: June 2nd, 2022

This Trust Administration Agreement and the associated Pitt McGehee USAG Qualified Settlement Fund Trust Agreement (the "Trust Agreement"), which incorporates this Trust Administration Agreement and the appendices and support appendices attached thereto by reference, shall govern the operation of the:

**Pitt McGehee USAG Qualified Settlement Fund**

The aforementioned trust shall hereinafter also be referred to as "Trust."

### RECITALS:

WHEREAS, the Claimants are a party to a Matter; and

WHEREAS, the associated Settlement Agreement proceeds paid into this Trust are intended to resolve the contested or uncontested claims that have resulted or may result from an event (or related series of events) that has occurred and given rise to at least one claim asserting liability; and

WHEREAS, the related Settlement Agreement is related to a tort, breach of contract or violation of law as referenced and indicated in Appendix A attached to the Trust Agreement and incorporated herein by reference; and

WHEREAS, known Adverse Claims exist against the funds held within the Trust. Additionally, as of yet unknown Adverse Claims may also arise against the funds held within the Trust. Adverse Claims create restrictions against the final allocation, vesting, use, and disposition of the Trust Assets. Such known Adverse Claims, and as of yet unknown Adverse Claims, may exist or arise from one or more person(s) or entity(ies) which possess current, future or ongoing adverse interests against the funds of this Trust. These Adverse Claim holders may include but are not limited to: (i) lien holders, or (ii) bankruptcy liens, or (iii) service provider(s), or (iv) general creditor(s) or any other person or entity asserting an Adverse Claim against the Trust Assets. Such adverse interests, obligations, and claims may include, but are not limited to, contested or uncontested: (i) debt or contractual obligations, or (ii)

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

potential liability(ies), or (iii) residual or contingent interests against the respective Claimant's potential gross settlement and the Trust Assets; and

WHEREAS, the Claimants wish to create a domestic qualified settlement fund (the "QSF") pursuant to Section 468B of the Internal Revenue Code of 1986 and the associated regulations Section 1.468B-1(c), as they may be amended from time to time; and

WHEREAS, this Trust is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that Governing Authority; and

WHEREAS, Ex-Parte creation is suitable pursuant to Section 468B of the Internal Revenue Code of 1986 and the associated regulations in Section 1.468B-1, and as the Defendant parties have no standing to object, as this Trust merely provides for the Claimants to have the flexibility to plan for the most advantageous use of the settlement and it preserves the deductibility of the settlement for the Defendant parties; and

WHEREAS, an Ex-Parte Order Establishing QSF (the "Order"), which provides for the creation of this Trust (the "Trust") and the transfer of the Fund Settlement Payment(s) pursuant to the Settlement Agreement to the Trust was:

   a) entered on June 2nd, 2022,

   b) in the Commonwealth of Virginia, Office of Town Counsel, Town of Warrenton; and

WHEREAS, the Defendant shall have no secondary or residual liability related to (i) the operation of the QSF, or (ii) the disposition of the settlement proceeds paid into the QSF, or (iii) the Plaintiff's subsequent use or loss of the settlement proceeds; and

WHEREAS, the QSF will be for the satisfaction of multiple Claims and the satisfaction of the respective Claims of the Claimants, as defined within the QSF, and including but not limited to:
   a) the Plaintiffs; and

Ver 4-25-2022

    b) any third parties asserting valid claims and liens against the settlement proceeds and the assets of the QSF; and

    c) the Plaintiffs associated attorneys' fees and costs; and

    d) the associated Trustee and Trust Administrator fees and costs; and

WHEREAS, the Defendants shall not incur any cost nor have any liability arise from the operation of the QSF.

NOW, THEREFORE, subject and pursuant to the restrictions, future contingencies and the terms and conditions set forth herein, pursuant to and consistent with the terms of the Settlement Agreement, and in consideration of the mutual covenants and understandings contained and set forth herein, this Trust Administration Agreement ("Agreement") is made to establish the Trust as referenced above herein and appoints as the Trustee (as defined herein), to hold, administer and distribute the Trust Assets, as follows:

## ARTICLE 1- DEFINITIONS

1.1 *Definitions.*

Unless the context requires otherwise, the following terms, wherever used in this Trust Administration Agreement and the Trust Agreement, shall have the following meanings:

"**Acknowledged Instrument**" – Means: a written instrument of notice or instruction delivered directly to the Trustee by the U.S. Postal Service or a private courier, that in the sole authority and absolute discretion of the Trustee: (i) is a distinctly legible and unambiguous statement of intent and instruction; and (ii) unless otherwise provided for by a Form issued by the Trustee; and (iii) is executed by an authorized party. All Acknowledged Instruments shall be executed by a wet ot digital signature. Acknowledged Instruments shall be governed by the date of receipt by the Trustee and not the date of the instrument, date of postmark or date of shipping. At the sole discretion of the Trustee, and only with the prior written consent of the Trustee by an authorized officer, may the Acknowledged Instrument be faxed or other electronic counterparts delivered to the Trustee.

"**Adverse Claims**" – Means: a claim upon the Trust Assets by one in possession thereof asserted against the interests of the Claimants. (See Claim and Claimant).

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

"**Assets**" – Means: all real and personal property in which the Trust holds an interest which constitutes property of the Trust.

"**Authorized Agent**"- Means: a person or entity who is: (i) a fiduciary, guardian, parent, grandparent, or attorney representing one or more Claimant, or (ii) an appointed custodian who may act on behalf of a minor, incapacitated, incompetent or handicapped Claimant; or (iii) an authorized officer of a law firm or entity representing one or more Claimant, or (iv) a person or an Authorized Officer of the Authorized Entity which acts pursuant to a validly executed power of attorney acting on behalf of one or more Claimant.

"**Authorized Officer**" – Means: a natural person who is or has been empowered by resolution or power of attorney to act on behalf of an Authorized Entity or Claimants to petition distributions from the Trust.

"**Authorized Entity**" – Means: a legal entity which has been engaged or authorized to have the legal authority to act on behalf of the Claimants to petition distributions from the Trust.

"**Attorney**" – Means: the engaged law firm, multiple laws firms, or individual legal counsel representing one or more Claimants.

"**Asset Provider**" – Means: any SEC-registered investment offering or other financial services entity offering a financial investment instrument, mutual fund, ETF, common fund, bank deposit, time deposit, note or bond as may be approved for use by the investment committee of the Trustee.

"**Business Day**" – Means: (i) a day in which the offices of the Trustee are open and able to conduct business in an ordinary manner; and (ii) is a not banking holiday; and (iii) is not a U.S. federal holiday; and (iv) not a NYSE holiday. The Trustee and its Third Parties are exonerated, held harmless, indemnified and not liable to any Parties in Interest for any consequential damages, resulting directly or indirectly, from the Trustee's failure to act timely, or the inability to perform or conduct ordinary business operations due to: (i) weather events; (ii) natural disasters, including but not limited to, flood and fire; (iii) epidemics and/or pandemics; (iv) events causing quarantine restrictions; (v) civil protests or disobedience; (vi) an act of god; (vii) a state of emergency; (viii) lack of public utilities; (ix) internet, cloud computing, cloud storage, or telecommunication system failure; (x) governmental shutdowns or suspensions; (xi) strikes; (xii) martial law or war; (xiii) armed conflicts; (xiv) civil unrest, insurrection, and riots; (xv)

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

failure to receive or have delivered mail, faxes or email; (xvi) lack of financial, trading or banking facilities or services; or (xvii) any other such causes or lack of resources customarily relied on by the Trustee to conduct ordinary business operations.

"**Claim**" – Means: (i) any stipulated claim, demand, action, suit or cause of action that was brought against the Defendant by a Claimant, the liability arising out of a tort, breach of contract or violation of law, as referenced in Appendix A, attached to the Trust Agreement and incorporated herein by reference, which has been transferred to the Trust pursuant to the related Order(s) and Settlement Agreement(s); or (ii) one or more contested or uncontested Adverse Claim demands, by or as by virtue of a right or as due, that have resulted or may result from an event (or related series of events) that has occurred and that has given rise to a Claimant's expected right to Trust Assets as a liability, demand, or lien that arises against the settlement proceeds held within the Trust.

"**Claimant**" – Means: the Claimant, including but not limited to, (i) those persons or entities set forth in the associated related Settlement Agreement(s) and whose identities, authorized officers and portioned interest may also be defined and (ii) known or unknown lien holders, service providers or general creditors which have unresolved obligations; and (iii) any party, including but not limited to the Trustee, Trust Administrator, Claimant's legal providers and or service providers, that possess an ongoing adverse interest or residual or contingent interest against any respective funds held within the Trust. The Claimants are only eligible to receive benefits under the terms of the Trust subject to the claims and liens of lien holders and third parties with valid claims.  For the purpose of clarity, a Claimant holds the same definition as a Beneficiary under applicable Trust laws.

"**Claw Back**" – Means: if applicable, the criteria-based provision as enumerated in Appendix B attached to the Trust Agreement and incorporated herein by reference subject to the approval or rejection of the Trustee, in its sole authority and absolute discretion, which provides for excess Trust funding to be returned to the Defendant, or their insurance carrier(s) as the case may be, per the terms of the Settlement Agreement. Nothing in this  Claw Back (Reversion) provision grants or implies any ownership or control over of the Assets of the Trust by the Transferor. For the purpose of clarity and the avoidance of confusion; (i) the sole ownership of the Assets of the Trust resides with the Trust, and (ii) the Trustee has the sole authority, control and absolute discretion over the funds held within the Trust, their disposition and the application of the Claw Back (Reversion) provision, and (iii) the Trustee

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

has the sole authority, control and absolute discretion over the operation of the Trust subject to the continuing jurisdiction of the Governing Authority.

"**Code**" – Means: the Internal Revenue Code of 2017, as amended, as set forth in Title 26 of the United States Code, and any successor statute and its associated regulations.

"**Committee of Co-Trustees**" - Means: a committee of two or more members that shall serve as the Trustee for the Trust. The Committee of Co-Trustees shall operate by the Terms and Conditions of this Trust Administration Agreement and the Trust Agreement; except that the Committee of Co-Trustees may adopt such additional rules necessary to conduct themselves as a committee. In all cases, the Committee's operation and rules must comply with the operation of a "domestic trust" pursuant to Section 7701 of the Code.

"**Decant**" (a.k.a. Decanting) - Means: the distribution of part or all of the Assets of the Trust or a subsequent Trust into a recipient trust pursuant to the terms of this Trust Administration Agreement and the Trust Agreement as an exercise of the Trustee's sole authority and absolute discretion. Specifically, the Trustee may invade the principal of the Trust to create another Trust for the Claimant's best interests, welfare, comfort or happiness which for the purpose of the Trust constitutes an "absolute power" under the laws of the Principal Place of Administration. The Trustee shall not reduce any Vested Right, fixed income, annuity or unitrust interest in the Trust by Decanting from the Trust into another trust. The recipient trust may be created under the laws of any jurisdiction. As a related term, "Decanting Distribution" means the distribution of part or all of the principal or income of the Trust or a subsequent Trust into the recipient trust pursuant to the terms of this Trust Administration Agreement and the Trust Agreement as an exercise of the Trustee's sole authority and absolute discretion. The Trustee is under no requirement or obligation to seek any consent of the Governing Authority to Decant. However, notwithstanding the preceding, the Trustee, at its sole discretion, may seek the consent of the Governing Authority to Decant. The Trustee shall ensure the process of Decanting conforms to the applicable laws of the Principal Place of Administration.

"**Defendant**" – Means: the party or parties who were the defendants and their associated insurance carriers associated with the Settlement Agreement arising out of a tort, breach of contract or violation of the law as referenced in Appendix A attached to the Trust Agreement and incorporated herein by reference.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

"**Distribution Administrator**" – Means: the Authorized Agent or Entity who has been appointed by the Trustee to have the authority to coordinate with the parties to distribute income or principal of the Trust to a Claimant, or on the Claimant's behalf to a third-party provider, as provided within this Trust Administration Agreement and the Trust Agreement.

"**Distributee**" – Means: a Claimant who is currently entitled to receive a distribution.

"**Effective Date**" - Means: the Effective Date of the Trust as defined thereof.

"**Event of Duress**" – Means: to the extent allowable by law and specifically 26 U.S.C. § 468B et seq. (i) circumstances whereby the failure to delay distributions may reduce the net expected financial benefits of the Trust to such Claimant; or (ii) receipt or attempted service of any communication by a United States court, administrative body, tribunal, or similar governmental or quasi-governmental agency in any jurisdiction (except for the § 468B associated supervising governmental entity or court) under which any person or entity seeks relief or remedy for himself, herself, itself, or any other person by:

(a) asserting a claim adverse to the Trust or Trustee over any Trust property;

(b) requesting an order or instruction to the Trustee in contravention of this Trust, including, without limitation, provisions granting discretion to the Trustee or restricting the Trustee's exercise of discretion;

(c) requesting information concerning the origin, receipt, management, administration, investment, distribution, or encumbrance of Trust property with a view toward asserting a claim against or establishing a receivership or other like arrangement over Trust property that is in any way materially adverse to exercising powers of management, administration, investment, and distribution granted to the fiduciaries under this Trust;

(d) seeking or requiring the replacement of any Trustee or placing limitations on the Trustee's powers other than in accordance with this Trust;

(e) threatening or actually suspending or abrogating this instrument in whole or in part;

(f) threatening or actually compelling the Trustee to sell, transfer, or otherwise dispose

Ver 4-25-2022

of Trust property in a manner inconsistent with this Trust; or

(g) exercising or not exercising a right, power, or discretion vested in or reserved under this Trust:

i. to any person who is under duress or influenced by an outside force;

ii. by compulsion;

iii. that is not voluntary in nature; or

iv. by any legal or similar process such as an order or other direction, ruling, or like decree of any United States court, tribunal, or administrative body, or by a trustee in bankruptcy, official assignee, or any other similar appointee or person, having jurisdiction over the Grantor, Trust, the Trustee, the Beneficiaries, the Beneficiaries of a Sub-Trust, this Trust, or any Trust property.

"**Fiduciary**"- Means: a trustee, or other representative, owing a specific Fiduciary Duty with respect to the Trust.  For the purpose of clarity and the avoidance of doubt, a provider of Ministerial Services shall not be construed as a Fiduciary.

"**Fiduciary Duty**"- Means: in addition to a duty of loyalty, a fiduciary also owes a duty of care to carry out its responsibilities in an informed and considered manner and to act as an ordinary prudent person would act in the management of his or her own affairs.  A Fiduciary Duty may be waived or limited by the terms of this Trust Administration Agreement or the Trust Agreement, or by the Trustee upon the assignment of the duty to a third party.

"**Governing Authority**" – Means: pursuant to 1.468B-1(c)(1) the United States, any state (including the District of Columbia), territory, possession or political subdivision thereof, or any agency or instrumentality (including a court of law) or any of the foregoing which the Trust is also subject to the continuing jurisdiction of said Governing Authority.

"**ILB**" – Means: an acronym for "Intentionally Left Blank" and is used when it was the purposeful intent to omit information for privacy or other purposes. Under no circumstances shall the absence of data, where ILB is utilized, be construed against the meaning of the Trust or be deemed an error or omission.

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

"**Incapacitated Adult**" – Means: any living adult belonging to the age group that has obtained eighteen (18) years of age and above and who is impaired both physically and mentally by reason of mental illness, mental deficiency, physical illness or disability to the extent that they are unable to understand or communicate responsible decisions concerning their person, or to the extent the adult cannot effectively manage or apply their affairs to necessary ends and for whom a guardian has to be appointed in the opinion of the court.

"**Ministerial Service**"- Means: acts done under the direction of a Fiduciary or Trustee; not involving discretion or policymaking.  As further clarity, Ministerial Service describes a duty, act or a function that conforms to an instruction or a prescribed procedure.  A ministerial act or duty is a function performed without the use of judgment by the person performing the act or duty.  Ministerial powers and duties do not convey or establish any fiduciary duty on the person or entity serving in a ministerial capacity.

"**Minor**" – Means: any living infant or person belonging to the age group that has not obtained eighteen (18) years of age.

"**Parties in Interest**" - Means: any and all-natural persons, or any entity, which may: (i) have a right; or (ii) assert a right; or (iii) assert a claim to a right against the Trust, or the Trust Assets, or a benefit of the Trust. Parties in Interest shall be interpreted in the broadest possible context to include, but not be limited to: (i) Claimants, and (ii) any party making a claim to a benefit arising from the Trust, or against the Trust, or the Trust Assets. In addition to the foregoing, Parties in Interest shall specifically include, but not be limited to the following: (i) any person(s) who is a parent, relative, family member, current Spouse(s), Life Partner(s), Guardian, or attorney-in-fact of a Claimant; (ii) lineal descendants of a Claimant whether by blood, adoption or marriage; (iii) Ex-Spouses, ex-Life Partners, Parents and Step-Parents of a Claimant; (iii) the creditors of a Claimant; (iv) an Authorized Agent, Authorized Officer, Authorized Entity, Distribution Administrator or the natural or legal guardians of each Claimant. The term "Parties in Interest" shall be applied both jointly and severally to the parties. The Parties in Interest provision is a Material Purpose of the Trust. Parties in Interest shall, in addition to the above, also include but not be limited to person(s) or entities that: (i) bring a claim(s) against the Trust; or the Trustee or its Third Parties, or the beneficial interests of the Trust; (ii) make an attribution of an interest in the Trust Assets, the Trust benefits or against the interest of Claimant; and/or (iii) take or cause to be taken acts on behalf of the Claimants against the Trust or Trustees or undertake, directly or indirectly, any act which would be prohibited under the terms of this Trust.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

"**Party to the Suit or Agreement**" – Means: Pursuant to IRC §1.468B-1 and U.S. Department of Treasury, Internal Revenue Service Revenue Proc. 93-94; a qualified settlement fund "will be considered 'a party to the suit or agreement'…", as such the QSF has federal regulatory authority standing to receive the settlement proceeds.

"**Petition for Distribution**" – Means: the agreement executed by and between the Claimant, or their Authorized Agent acting on the Claimant's behalf, and the Trustee and the Trust Administrator prior to the release of Assets of the Trust. Prior to the approval of a Petition for Distribution, no Vested Right shall be conferred to a Claimant.

"**Principal Place of Administration**" – Means: within the Trustee's sole authority and absolute discretion, the Trustee may designate the Principal Place of Administration, based on one or more of the following conditions: (i) the State jurisdiction where the Trustee's principal place of business is located; (ii) the State jurisdiction designated by the Trustee where all, or any part, of the administration occurs; (iii) the State jurisdiction designated by the Trustee where a Co-Trustee, Special Trustee, or Distribution Administrator is a resident or holds a license to operate in that jurisdiction; or (iv) a State jurisdiction, where all or any part of the Trust Assets are held through a broker-dealer or bank holding a license to operate in that jurisdiction. The Trustee, without restriction and in its sole authority and absolute discretion, may also alter the Principal Place of Administration at any time. The laws of the designated Principal Place of Administration shall apply to the Trust as the governing law and controlling jurisdiction. However, notwithstanding the preceding and without exception, the courts of the United States shall have exclusive judicial jurisdiction over the Trust to render orders or judgments resolving issues concerning the administration of the Trust and exercise primary supervision over the Trust pursuant to Treasury Regulation Section 1.468B-1(c)(1). The effective date of a change to the Principal Place of Administration may be retroactive to a date before the Trustee exercises a power.

"**Qualified Assignment**" – Means: any assignment of a liability to make periodic payments as damages (whether by suit or agreement) on account of personal injury or sickness (in a case involving physical injury or physical sickness). Therefore, when applicable, and pursuant to IRS Rev. Proc. 93-34, this Trust shall satisfy the "qualified assignment" requirements enumerated within IRS Rev. Proc 93-34 and thus shall be a Party to the Suit or Agreement as defined by IRS Rev. Proc. 93-94 and to IRC §1.468B-1.

Ver 4-25-2022

"**Reasonably Commensurate Fee**" – Means: any Trustee fee shall be conclusively established as a "Reasonably Commensurate Fee" if: (i) the fee is disclosed by the Trustee at time of the Trust's creation, (ii) the increase in the fee is less than or equal to the cumulative compounded Consumer Price Index, (a.k.a. "CPI") since the last fee increase assessment; (iii) the increased fee is greater than the aforementioned CPI but equal to, or below, the average (or Median) fees assessed by trust companies located within the same geographic region as the situs of the Trust for similar services; or (iv) any fee agreed to by the Authorized Agent or Authorized Entity.

However, notwithstanding the foregoing, nothing herein implies that fees for new categories of services reflecting an expansion of service or a previously provided service may not be implemented. All "pass through expenses" incurred by the Trustee on behalf of the Trust or Trustee (by example: attorney's fees, court costs, costs related to regulatory inquiries or for the defense of the Trust and/or Trustee) are conclusively established as Reasonably Commensurate Fees. Notwithstanding the above, all fees must comply with the provisions of the laws of the Principal Place of Administration.

"**Scrivener's Error**" – Means: an error due to a minor mistake or inadvertence and not one that occurs from: (i) judicial reasoning or determination, or (ii) the intention of the Grantor or drafter of the Trust.

"**Settlement Agreement**" – Means: the settlement agreement or settlement order associated with the Case Caption of Matter(s) or Matter(s) in Conflict Resolved stipulated in Appendix A attached to the Trust Agreement and incorporated herein by reference is the judicially enforceable and binding agreement entered into by the parties, whether by choice, arbitration, mediation, administrative hearing, court order or other resolution process, stipulating the economic terms of the resolution of the event which qualifies as an eligible *claim asserting liability* pursuant to Section 1.468B-1(c)(2). If the Settlement Agreement has been provided to the Trustee, all terms, provisions, and agreements set forth in said Settlement Agreement and its schedules are incorporated by reference into this Trust Administration Agreement and the Trust Agreement with the same force and effect as though fully set forth therein.

"**Settlement Fund Payment**" – Means: the funds transferred by the Defendant or their insurer to the Trust pursuant to the Settlement Agreement or Order.

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

"**Supervising Court**" – Means: the court which is supervising the Settlement Agreement and has a continuing role in reviewing, approving or disapproving Trust distribution request(s) prior to submission to the Trustee. For further clarification, please refer to Support Appendix 2 attached to the Trust Agreement and incorporated herein by reference.

"**Supervising Third Party**" – Means: the person or entity that retains the power to veto a petitioned Trust distribution if the petitioned Trust distribution does not meet the terms of the associated settlement agreement. However, said power does not otherwise supersede the authority of the Trustee, or supervision of the Supervising Court.

"**Third Parties**" – Means: any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, investment fund or trust, or similar organization or entity controlling, controlled by, affiliated with by agreement, or under common control with the Trustee or Trust Administrator. Third Parties shall also mean any common fund or trust managed or sponsored by a Trustee or any of its Third Parties.

"**Transferor**" – Means: the one or more Defendant parties which assign and transfer their Gross payment obligations under a settlement agreement, judgment or court order to the QSF pursuant to the terms of QSF.

"**Trust Administrator**" – Means: the Trust Administrator shall be Eastern Point Trust Company.  The Trust Administrator shall not serve as a Fiduciary in the execution of its role as Trust Administrator, nor shall the Trust Administrator owe a Fiduciary Duty to any Claimant.  The Trust Administrator shall be limited to the provision of Ministerial Services as defined herein.

"**Trust Advisor**" – Means: the Authorized Agent or Entity who has been appointed by the Trustee to direct the Trustee in certain administrative and ministerial matters concerning the Trust, as provided within this Trust Administration Agreement and the Trust Agreement.

"**Trust Assets**" – Means: (i) the Settlement Fund Payment; (ii) any interest or other earnings credited thereon, including accrued but undistributed income; and (iii) any other property, assets or funds contributed to the Trust from whatever source; less (iv) any applicable expenses, liens, investment losses, fees or distributions.

Ver 4-25-2022

"**Trust Sub-Account**" – Means: a notation account on the records of the Trustee which designates for bookkeeping and working papers standpoint only unvested potential future rights.

"**Trustee**" – Means: the initial Trustee shall be the Eastern Point Committee of Co-Trustees. The term "Trustee" shall refer to both a single entity serving as the United States fiduciary or a Committee of Co-Trustees who are a fiduciary(ies) serving hereunder. The term "Trustee" shall be read as "Committee of Co-Trustees" when applicable.

The Trustee may also be comprised of a single fiduciary who is a "United States Person" pursuant to IRC Section 7701; or a committee of Co-Trustees. If operating as a Committee of Co-Trustees, the Committee of Co-Trustees shall have at least one (1) Co-Trustee member, who is a "United States Person" pursuant to IRC Section 7701. Such United States Person Co-Trustee(s) may exercise without limit, and without any foreign (non-United States Persons) Trustee(s) holding any power to veto, hinder or block the actions of the United States Persons Co-Trustees' "substantial decisions."

For the purpose of this Trust Administration Agreement and the Trust Agreement, pursuant to Section 7701 of the Code, "substantial decisions" means: (i) whether and when to make distributions to such Claimants; (ii) the amount of distributions; (iii) the selection of a Claimant; (iv) whether a receipt is allocable to income or principal; (v) whether to terminate the Trust; (vi) whether to compromise, arbitrate or abandon claims of the Trust; (vii) whether to sue on behalf of the Trust or defend suits; (viii) whether to remove, add or replace a Trustee; (ix) whether to appoint a successor co-Trustee to replace a co-Trustee who has died, resigned or otherwise ceased to act as a Trustee even if not accompanied by a removal power unless the power to make such a decision is limited such that it cannot be exercised in a manner that would change the Trust's residency from foreign to domestic or vice versa; and (x) investment decisions, except that if the Trustee appoints a foreign investment advisor the United States Person Trustee retains the power to terminate the investment advisor's power to make investment decisions at will, and the hiring of a foreign investment advisor will not cause the Trust to be classified as a foreign trust.

The definition of Trustee shall also include any Co-Trustees and successor Co-Trustees, and whenever the context requires, the singular shall be substituted for the plural form of Trustee and vice versa.

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

If at any time, there are more than one (1) United States Person Co-Trustees members serving on the Committee of Co-Trustees, the United States Person Co-Trustees must unanimously consent to all actions.

"**Vested Right**" – Means: that the Trustee may, in its sole authority and absolute discretion, elect to vest a right to a portion of the Trust Assets for a Distribution to a Claimant. Prior to the Trustee vesting a right to any portion of the Trust Assets, no Claimant has a Vested Right to any Trust Assets. All Trust Assets are Unvested Rights and only constitute a mere future expectancy until the Trustee, in its sole authority and absolute discretion, grants the benefit as a Vested Right. Upon a Claimant obtaining a Vested Right, they become a Distributee, as defined herein, only to the extent of that specific Vested Right and Distribution, and such Claimant shall remain an unqualified Claimant relative to any other potential future benefit expectancy. Only the Trustee may confer a Vested Right, and no provision of this Trust Administration Agreement and the Trust Agreement shall confer any absolute Vested Right. The Vested Right provision is a Material Purpose of the Trust.

## ARTICLE 2 – POWERS OF THE TRUSTEE

2.1 *Trustee.*
The Trustee is and shall act as the fiduciary of the Trust in accordance with the provisions of this Trust Administration Agreement, the Trust Agreement, the Settlement Agreement, and the Order. The Trustee shall always administer the Trust and the Trust Assets in accordance with the purposes set forth herein, subject to the limitations set forth in this Trust Administration Agreement, the Trust Agreement, the Settlement Agreement, and the Order. The Trustee shall have the power to take any and all actions that, in the sole and absolute discretion of the Trustee, are necessary or proper to fulfill the purposes of the Trust, including, without limitation, any trust power now or hereafter permitted under the law governing the Trust. The Trustee is independent of the Defendants.

2.2 *Powers.*
To carry out the purposes of the Trust, subject to any limitation in this Trust Administration Agreement and the Trust Agreement, the Trustee is vested with the following powers, in addition to those now or hereafter conferred by law, the Governing Authority or any court order affecting the Trust Assets:

    (a) to continue to hold any property, whether or not of the type or quality, nor

Ver 4-25-2022

constituting a diversification, considered proper for trust investments; and

(b) to hold the principal of the Trust Assets; provided, however, that all investments made by the Trustee shall be in shares of a money market mutual fund, the principal of which is invested solely in bank deposits, U.S. Government or agency obligations (including such common funds advised, managed or sponsored by the Trustee or any of its Third Parties). As future clarity, the default investment shall be: (i) deposited and held in deposit custody at all times in one or more federally insured (FDIC), interest-bearing accounts having no maturity date; (ii) held within a depository who is federally or state-licensed; and (iii) the depository maintains a current Moody's primary credit rating of "Investment Grade;" and

(c) to manage, control, sell, convey, exchange, partition, divide, subdivide, improve, repair, operate, and lease any Trust Assets. The Trustee may exercise any of these powers without further court or Governing Authority approval or order, provided, however, that the Trustee is authorized to seek and obtain a Governing Authority approval or order affirming any transaction which it considers as out of the ordinary course, including but not limited to any sale or other disposition of any Trust Assets; and

(d) to initiate or defend, at the expense of the Trust Assets, any litigation relating to the Trust Assets or property of the Trust Assets, and to compromise, arbitrate, or otherwise adjust claims in favor of or against the Trust Assets and to carry such insurance as the Trustee may deem advisable. The Trustee shall have the authority to initiate, defend and participate in, at the expense of the Trust Assets, all proceedings related to or affecting the Trust, Trustee, Claimants, or any other obligation involving the Trust, and Trustee shall be a party in interest entitled to notice of all such proceedings; and

(e) to have, respecting securities, all the rights, powers and privileges of an owner; and

(f) to sell such property as the Trustee may deem necessary to make any division or distribution, and to partition, allot and distribute the Trust Assets in undivided interests or in kind, or partly in money and partly in kind, at valuations determined by the Trustee; and

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

(g) to employ any custodian, attorney, accountant, or other agent reasonably necessary to assist the Trustee in the administration of the Trust Assets, and to rely on the advice given by such person; and

(h) the Trustee, in its sole authority and absolute discretion, is granted each of the following powers (i) to make amendments to correct Scrivener's Errors sua sponte; (ii) to amend or decant the Trust; or (iii) to reform the Trust as required for the sole purpose of ensuring that the powers, authorities, and discretions of the Trustee remain valid under common law, state law and federal law; and

(i) to invest and reinvest the Trust Assets in any investment including (by way of example and not limitation) shares of interests in common FDIC-insured deposit facilities, FDIC bank deposits or other property of any kind suitable for the investment of the Trust as provided for by the Order; and

(j) to hold any or all Trust Assets in its own name as Trustee, or in the name of a nominee or nominees or otherwise without indication of any trust (or in such other form as the Trustee deems best without disclosing the trust relationship). Suitable entries are to be made upon the books and records of the Trustee that property not held in its name is part of the Trust Assets; to keep Trust Assets with Depositories or custodians; to keep Trust Assets in book-entry form; and

(k) to perform other acts necessary or appropriate for the proper administration of the Trust, including executing and delivering necessary instruments and giving full receipts and discharges; and

(l) to reform, amend or supplement any provision or term of this Trust Administration Agreement and the Trust Agreement in order to comply with the intent of the Trust instrument, and any other special-purpose benefits the Claimants would otherwise become or remain eligible for if the terms of the Trust were modified. Such amendments may include but are not limited to (i) amendments to comply with changes in law or administrative policy or to comply with specific state or federal requirements; or (ii) to correct ambiguities or Scrivener Errors which may otherwise require court authority. However, the Trustee may not amend this agreement in such a way which would limit or alter the rights of the Claimants unless the purpose of such amendment is to modify an existing provision which would, unless corrected,

Ver 4-25-2022

defeat the Trust's intent or hinder its administration; and

(m) to designate one or more Co-Trustees, as it may deem, in its sole and absolute discretion, to be necessary and advisable. Such Co-Trustee's fees shall be a reasonable expense of the Trust as defined within this Trust Administration Agreement and the Trust Agreement as a Reasonably Commensurate Fee; and

(n) to designate a Trust Administrator, as it may deem, in its sole and absolute discretion, to be necessary and advisable. Such Trust Administrator's fees shall be deemed a reasonable expense of the Trust as defined within this Trust Administration Agreement and the Trust Agreement as a Reasonably Commensurate Fee.

2.3 *Segregation of Accounts.*
The Trustee may hold all Trust Assets as a single unsegregated trust and is under no obligation to separate, segregate, or account for Trust Assets for the benefit of individual Claimants. Notwithstanding the preceding, the Trustee, in its sole authority and absolute discretion, may for the purpose of administrative notational utility elect to magisterially segregate accounts within the Trustee's records by Claimant (either in whole or in part).

2.4 *Common Investments.*
For purposes of convenience with regard to the Trust Asset's administration and investment, the Trustee may invest part or all the Trust Assets jointly with the property of other trusts for which the Trustee is also serving as a Trustee. A corporate fiduciary acting as the Trustee may also use common funds for investment from which the Trustee may receive compensation or administration fees pursuant to the terms of such common funds. When Trust Assets are managed and invested in a common fund, the corporate fiduciary acting as the Trustee shall not breach their fiduciary duty, nor shall a conflict of interest arise when Trustee receives compensation or administration fees from the common fund. The Trustee will maintain records that sufficiently identify the Trust's portion of the jointly invested assets pursuant to the following terms and conditions.

(a) Unless otherwise agreed upon in writing or provided for in another manner or provided for within this Trust Administration Agreement or the Trust Agreement, interest credited to the Trust shall be the FDIC National Money Market Rate Non-

Jumbo rate on cash assets held herein per the terms and condition of Common Fund.

(b) The Trustee and its Third Parties may receive compensation from this arrangement. Specifically, EPTC and its Third Parties may receive compensation from this, and other such arrangements in the form of interest rate concessions received over and above the applicable FDIC National Rate credited to the Trust (or Sub-Trust). In exchange for participation in the common fund, the Trust and all Parties in Interest waive any claims, demands, conflict of interests, or rights to such compensation or additional interest income that may have resulted from the operation of the common fund. Further, it is conclusively established that such additional rate compensation otherwise would not normally be commercially available to the Trust while maintaining same business day funds liquidity and extended FDIC insurance. By utilizing the Trustee's and Trust Administrator's services, the established rate concession is a Reasonably Commensurate fee to the Trustee and Trust Administrator as consideration for the additional FDIC insurance coverage and lower administrative fees that this arrangement affords.

(c) The Parties in Interest waive all claims, demands or rights to such compensation or additional income that may result over and above the applicable FDIC National Money Market Non-Jumbo Rate from the operation of the common fund. Pursuant to the terms of the applicable agreement, such additional compensation to the Trustee shall be considered a Reasonably Commensurate Trustee fee.

The Trustee, in its sole authority and discretion, may increase, waive, or reduce the above fees by posting a notice on its public website or by other methods it deems reasonably appropriate.

2.5 *Interest Crediting Provision.*
The following terms define the crediting of "Pass-through Interest" on cash and cash equivalent holdings.

This provision shall have supremacy and prevail even when in conflict with other provisions of this Trust Administration Agreement and the Trust Agreement. The Parties in Interest shall hereby, in addition to and not to the exclusion of any other provisions of this Trust Administration Agreement and the Trust Agreement, completely release, hold harmless, indemnify and forever discharge the Trustee and its Third Parties from any and all past, present

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of service, expenses and compensation of any nature whatsoever, whether based on a tort, contract, fiduciary duty, government inquiries or investigations, or other theory of recovery which the Parties in Interest now have or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, the Trustee's use of omnibus funds, novation accounts, brokerage account(s), bank account(s), money market account(s), other cash and cash equivalent fund(s) or the terms of this provision.

The crediting of Pass-through Interest on cash and cash equivalent holdings shall be applied as follows:

(a) If the Average Daily Balance of the Trust, held in cash and cash equivalent holdings, is equal to or greater than two hundred and fifty thousand dollars ($250,000) for a consecutive period of ninety calendar days (hereinafter referred to as the "Qualifying Period"), and

(b) If during the Qualifying Period, the actual cash and cash equivalent holdings balance of the Trust is equal to or greater than two hundred and fifty thousand dollars ($250,000) on the last business day of the calendar quarter, and

(c) If the then current applicable FDIC "Treasury Yield" for interest checking accounts is equal to or exceeds ten basis points (.0010), then

(d) The Trust, per the Trustee's sole authority and absolute discretion, may be credited the proportional Pass-through Interest on the Average Daily Balance of the Trust for the Qualifying Period on the cash and cash equivalent holdings at the then current applicable FDIC "Treasury Yield" for interest checking accounts, as the Trustee may deem necessary or appropriate.

The Committee of Co-Trustees, its members, affiliates and Third Parties may derive compensation from the interest concessions or float in connection with the Custodial Trust Assets and these amounts shall not offset the fees due to EPTC and are considered "reasonable compensation" as a fee under the applicable trust code. For the purpose of clarity, the Parties in Interest specifically direct that EPTC credit no interest or other income resulting from such account(s) to the Trust except as enumerated herein. Further, the Parties in Interest waive any and all claims to such interest or other income, and release, indemnify, and hold harmless the Committee of Co-Trustees, its members, Affiliates and Third Parties from the retention of said interest income as a net operational expense of the Trust. The Parties in Interest acknowledge and agree that the release and discharge set forth herein is a general

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

release. Claimants assume the risk that the facts or law may be other than the Claimants believe.

This release and discharge shall apply to all Trustees, officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, heirs and assigns, and all other persons, firms, or corporations with whom any of the former have been, are now, or may hereafter be affiliated.

2.6 *Principal and Income.*
Except as otherwise specifically provided for in this Trust Administration Agreement and the Trust Agreement, the Trustee shall allocate all receipts and expenditures received or incurred by the Trustee in administering the Trust as provided for in this Trust Administration Agreement and the Trust Agreement to the income and principal of the Trust, in accordance with the provisions of the laws of the situs, as amended from time to time. All undistributed income of the Trust Assets shall be added to the principal of the Trust Assets.

2.7 *Delegation.*
The Trustee may delegate to another trustee or Co-Trustee any of the powers granted by this Trust Administration Agreement and the Trust Agreement. Notwithstanding any delegation of the Trustee's power to another trustee or Co-Trustee, the Co-Trustee receiving such delegated powers shall be solely responsible for the performance of each of the delegated Trustee's duties under this Trust Administration Agreement and the Trust Agreement. Such delegation shall be in writing, shall specify the powers delegated and may be revoked or modified by comparable writing. A statement that the Trustee delegates all powers granted by this instrument shall be sufficient to delegate all such powers. Any third party, including any bank, savings and loan company(ies), title insurer, escrow company, stock or bond broker or transfer agent, may rely upon such delegation and shall incur no liability for any action taken in reliance on such delegation in the absence of actual knowledge of its revocation or modification.

2.8 *Indemnification of Trustee.*
The Trustee shall not be liable for any acts or omissions unless such acts or omissions constitute willful misconduct. The Trust, Claimants and the Parties in Interest shall defend and indemnify and hold harmless the Trustee at the expense of the Trust Assets and the Claimants from any and all claims, government inquiries or investigations against it for acts or alleged omissions taken as Trustee or in the course of its duties as Trustee to the maximum

Ver 4-25-2022

extent permitted by law. Actions taken pursuant to the terms of this Trust Administration Agreement, the Trust Agreement, the Stipulation, or Order or instruction shall be conclusively deemed to be taken in the course of the Trustee's duties.

### 2.9 *Right to Rely Upon Notices as Genuine.*

The Trustee shall not be responsible for the sufficiency of the form, execution, validity or genuineness of documents or securities now or hereafter deposited hereunder, or of any endorsement thereon, or for any lack of endorsement thereon, or for any description therein, nor shall the Trustee be responsible or liable in any respect on account of the identity, authority or rights of the persons executing, delivering or purporting to execute or deliver any such document, security or endorsement.

### 2.10 *Right to Non-Perform in Case of Dispute.*

In the event of any disagreement between the Claimants, or between them and any other person, resulting in adverse claims or demands being made in connection with the Trust Assets to be administered hereunder, or in the event that the Trustee, in good faith, shall be in doubt as to what action it would take hereunder, the Trustee may, at its option, refuse to comply with any claims or demands or it may refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Trustee shall not be or become liable in any way, or to any person, for its failure or refusal to act, and the Trustee shall be entitled to continue to so refrain from acting until (i) the rights of the Claimants shall have been fully and finally adjudicated by a court of competent jurisdiction or (ii) there exists an agreement between the Claimants, and the Trustee shall have been notified thereof in writing signed by or on behalf of all such persons. The rights of the Trustee under this paragraph are in addition to all other rights which it may have by law or otherwise.

### 2.11 *Action by Trustee.*

The Trustee may exercise its rights and powers and perform its duties hereunder through its officers and employees who shall be authorized to perform such functions by the Trustee's board of directors through general or specific resolutions. However, the Trustee solely shall be responsible for the performance of all rights and responsibilities conferred on it as Trustee hereunder, and no such officer or employee individually shall be deemed to have any fiduciary authority or responsibility except as otherwise provided by applicable law.

### 2.12 *Reading.*

It is the intent of the Governmental Authority that all rights and powers of reading and

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

interpretation shall be vested with the Trustee. As the Trustee has knowledge of §468B and the Settlement Agreement's intents, the Parties in Interest or any Third Party shall defer all matters regarding reading, context, interpretation of intent, and interpretation of purpose, transactional purposes and operational basis to the Trustee. The Trustee shall have an absolute discretion of interpretation, determination of intent, purpose, and benefit in all matters related to the Trust's actions, transactions, and this Trust Administration Agreement and the Trust Agreement. The Trustee's decisions are binding on all third parties including all Parties in Interest. In addition to the preceding, any administrative rule necessary to clarify, improve or facilitate the administration of the Trust may be unilaterally adopted by the Trustee and shall be binding on the Trust and all Parties in Interest, provided that such rule does not have a materially adverse effect on a Claimant or the Trust. The Trustee in its sole authority and absolute discretion may implement rules and regulations necessary to carry out the terms of this Trust Administration Agreement and the Trust Agreement, insofar as such rules and regulations are in furtherance of the objectives of the Trust.

In the event any provision of the Trust Administration Agreement or the Trust Agreement conflicts with another provision, the Reading Clause shall have supremacy and prevail.

2.13 *General Power of Appointment.*
The Trustee shall solely possess a general power of appointment to allocate, resolve and settle all claims and obligations of this Trust and the associated Settlement Agreement which the Trustee may exercise from time to time, in its sole authority and absolute discretion.  For the purpose of clarity and avoidance of confusion; no Claimant holds any general or specific power of appointment nor may they exercise such within the meaning of § 2041 and § 2514 of the Internal Revenue Code.

2.14 *Methods of Vested Rights Distribution.*
Trustee may from time to time, in its sole authority and absolute discretion, after granting a Vested Right, thereby qualifying the Claimant as a Distributee as defined herein, disburse to a Claimant a vested interest in the Trust as follows:

(a) Distribute directly to the Claimant; and/or

(b) Distribute to the IOLTA account of the Law firm or Attorney representing the Claimant; and/or

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

(c) Distribute to the Claimant's Guardian, Conservator, Parent, Family member or another person who has assumed responsibility for the care of such Claimant, for his or her suitable support, maintenance, welfare, education or other appropriate needs; and/or

(d) Hold in a Trust and distribute by direct application in such amounts for the benefit of the Claimant; and/or

(e) Assign into a "first party" Special Needs Trust to preserve the government benefits of the   Claimant; and/or

(f) Distribute or assign in such manner as the Trustee, in its sole authority and absolute discretion, deems appropriate or necessary.

2.15 *Distribution During an Event of Duress.*

If at any time the terms of this Trust direct a distribution, whether of income or principal, to any Claimant who may be affected by an Event of Duress, the Trustee, in its sole authority and absolute discretion, shall continue to hold the property in trust as a separate Sub-Trust, or decant into a new trust, for the Claimant's benefit until the Event of Duress no longer applies.  The Trustee has sole authority and absolute discretion to determine if a Claimant is affected by an Event of Duress.

The Trustee shall manage, invest, and reinvest the associated assets under the terms of this Trust, as if the Distribution had not been directed, distributing the fund's principal and net income to or for the Claimant's benefit as the Trustee from time to time determines to be in the Claimant's best interests.  The Trustee shall add any undistributed income back to the principal.  After the Event of Duress no longer applies, all of the applicable funds will be distributed to the Claimant, or, if the Claimant has died before the Event of Duress no longer applies, per the applicable terms of this Trust.

The terms of this provision shall have supremacy and prevail even if in conflict with any other provision of the Trust.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

## ARTICLE 3 - ADMINISTRATIVE PROVISIONS

3.1 *Administrator.*

Eastern Point Trust Company shall serve as the "administrator" of the Trust within the meaning of Treasury Regulation § 1.468B-2(k)(3) and shall be responsible for the undertakings specified in the regulations under Section 468B of the Code, including, but not limited to, the obtaining of a federal employer identification number for the Trust, the filing of all required federal and state tax and information returns, any required withholding of tax and the payment of any federal or state taxes, including estimated taxes, for which the Trust may be liable. The administrator may resign, and if so, the Trustee shall appoint a new administrator without Governing Authority approval. The Trustee may, in its sole discretion and without Governing Authority approval, remove the administrator and appoint a successor administrator.

3.2 *Bond.*

No bond shall be required of any institutional corporate Trustee named in this Trust Administration Agreement or the Trust Agreement.

3.3 *Resignation and Removal.*

Any Trustee may resign at any time upon notice to the Authorized Agent. A Trustee may only be removed for cause and by the Governing Authority. Upon resignation or removal of any Trustee, a successor shall be appointed by agreement between the Authorized Agent or by the Governing Authority or court of competent jurisdiction upon the petition of the resigning Trustee. Upon resignation or removal, the Trustee shall cause delivery of all Trust Assets under its control to such successor Trustee, and all responsibilities of Trustee under this Trust Administration Agreement and the Trust Agreement shall terminate; provided, however, that the Trustee's obligations under this Trust Administration Agreement and the Trust Agreement shall not terminate until delivery of the Trust Assets to the successor Trustee.

3.4 *Governing Law.*

The Trust has been created and accepted by the Trustee in the Principal Place of Administration, and its validity, construction and interpretation, and all rights created hereunder shall be governed by the laws of said jurisdiction.

3.5 *Duties of the Trustee.*

Notwithstanding any other provision of this Trust Administration Agreement or the Trust Agreement, the Trustee has no duty whatsoever;

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

(a) to determine if any other party has made their payments required to made to the Trust; or

(b) to take legal action against any other party to compel such payments; or

(c) to monitor any other rights or duties of any party pursuant to any document, including, without limitation, any settlement and any Governing Authority Order with respect to the Trust.

The duties and responsibilities of the Trustee shall be limited to those expressly set forth in this Trust Administration Agreement and the Trust Agreement, and except as set forth in this Trust Administration Agreement and the Trust Agreement, Trustee is not responsible for or chargeable with knowledge of any terms or provisions contained in either the related settlement, order or any other separate agreements and understanding between the parties.

3.6 *Trustee's Other Duties.*
In addition to the Trustee's other obligations under the Trust, the Trustee shall cause to be prepared all appropriate tax reporting.

3.7 *Tax Issues.*
As set forth below, the Trustee shall cause a Federal Employer Identification Number ("FEIN") for the Trust to be obtained.

3.8 *Taxable Year and Accounting Method.*
The taxable year of this Trust shall be the calendar year. The Trust shall use an accrual method of accounting within the meaning of Section 446(c) of the Code. Pursuant to federal tax filing requirements, the Trustee shall file such tax filings each year the Trust is in existence regardless of activity.

3.9 *Relation-Back Election.*
The Claimants, Claimant's Attorney or the Authorized Agent, shall instruct the Trustee by an Acknowledged Written Instrument delivered directly to the Trustee by U.S. certified mail or overnight courier to join in the filing of a "relation-back election" within the meaning of Treasury Regulation §1.468B-1(j)(2) with respect to the Trust, unless the Trustee determined

Ver 4-25-2022

that doing so is not in the best interest of the Trust.  The Trustee shall comply with the requirements contained in Treasury Regulations §1.468B-1(j)(2) that apply to such election.

The Trustee shall take all steps necessary to ensure that any tax obligations imposed upon the Trust are paid. To the extent necessary to satisfy this objective, the Administrative Agent is hereby authorized to, among other things (i) obtain a tax identification number for the Trust; (ii) communicate with the Internal Revenue Service and the state of jurisdiction tax authority on behalf of the Trust; (iii) direct the Trustee to make payment of taxes on behalf of the Trust (which taxes will be paid out of Trust Assets); and (iv) file all applicable tax returns for the Trust. For purposes of this Trust, the Administrative Agent shall be such person or entity as ordered by the Governing Authority. The Trust is a Qualified Settlement Fund under Section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation Section 1.468B-1. Pursuant to the Plan and related findings of fact and conclusions of law, the Trustee shall take no actions that are inconsistent with the Trust's status as such a Qualified Settlement Fund.

3.10 *Death of a Claimant.*
Upon the confirmation of a Claimant's death, the ultimate Vested Right of the deceased Claimant shall be distributed by the Trustee to the estate of the Claimant, or a 3rd party trust to be established by the Trustee to receive such proceeds on behalf of the heirs of the Claimant, in such proportions or amounts, as identified in the records of the Trust.

3.11 *Funds Hold; Clearing, Settlement, and Risk Management Policy.*
All Parties in Interest hereby acknowledge and agree that funds are considered "Collected Funds" as follows:

(a) Wires – Twenty-four (24) hours (One (1) Business Day after receipt of funds

(b) Domestic Checks – Ten (10) calendar days after deposit.

(c) Foreign Checks – Only Bank Certified Check(s) from EPTC approved bank.

Trustee reserves the right to deny, suspend or terminate participation in the Trust of any Party in Interest to the extent Trustee, in its sole authority and absolute discretion, deems it advisable or necessary to comply with applicable laws or to eliminate practices that are not consistent with laws, rules, regulations, best practices or the Trustee's then current policies or procedures.

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

## ARTICLE 4 – DISTRIBUTION ADMINISTRATOR

4.1 *Appointment of Distribution Administrator.*

The Trustee may appoint one or more Distribution Administrator. In order to serve, any Distribution Administrator appointed under this Section must be a corporate fiduciary or an individual who is not related or subordinate to a transferor or any Claimant beneficiary within the meaning of Section 672(c) of the Internal Revenue Code.

4.2 *Duties and Powers of Distribution Administrator.*

Each Distribution Administrator shall have the duty to:

      (a) perform a thorough review and financial reconciliation of each distribution petition prior to submission to the Trustee; and

      (b) ensure the standing, accuracy, and appropriateness; and(c) ensure the tax classification of the distribution petition is correct; and

      (c) to attest to agreement, and compliance with all the attestations, acknowledgments, terms and conditions of the distribution petition.

The Distribution Administrator's review shall include, but not be limited to, ensuring that (i) the amounts petitioned as a distribution are correct; (ii) the instructions as to the recipient of the disbursed funds are accurate; and (iii) in the case of an electronic fund transfer that the receiving account is accurate.

For the purpose of clarity and the avoidance of doubt, the Distribution Administrator has the duty to employ generally accepted accounting and financial control processes to detect fraud or error.

The Distribution Administrator has the power and authority to:

      (a) reject a distribution petition that it has reason to believe is in error or may be fraudulent; and

      (b) approve the submission to the Trustee of the distribution petition it determines appropriate for the Trustee's consideration.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

4.3 *Designation, Resignation, and Default of Distribution Administrator.*

A serving Distribution Administrator may appoint a Successor Distribution Administrator in writing, which appointment will take effect upon the resignation, incapacity or death of the appointing Distribution Administrator. A resigning Distribution Administrator shall not be liable or responsible for the acts or omissions of any other or prior Successor Distribution Administrator. The Trustee may remove or replace any Distribution Administrator, with or without cause, at any time.

4.4 *Good Faith Standard Imposed.*

The authority of the Distribution Administrator is conferred in a non-fiduciary capacity, and the Distribution Administrator is not liable for any good-faith act, omission or forbearance. The Distribution Administrator will be reimbursed promptly for any costs incurred in defending or settling any claim brought against the Distribution Administrator acting in the capacity of Distribution Administrator, unless it is conclusively established that the act, omission or forbearance was motivated by an actual intent to harm a Claimant of the Trust or was an act of self-dealing for individual benefit.

4.5 *Not a General Power of Appointment.*

The Distribution Administrator may not participate in the exercise of a power or discretion conferred under this agreement that would cause the Distribution Administrator to possess a general power of appointment within the meaning of Sections 2041 and 2514 of the Internal Revenue Code.

4.6 *No Duty to Monitor.*

The Distribution Administrator has no power or duty to monitor or supervise any Trustee or Trust created under this agreement.

4.7 *Compensation.*

Any Distribution Administrator serving under this Trust Administration Agreement or the Trust Agreement is not entitled to receive compensation for services unless otherwise approved in advance by the Trustee.

The Distribution Administrator is entitled to reimbursement for out-of-pocket expenses incurred in the performance of its duties as Distribution Administrator, and for which the Trustee approves in writing prior to being incurred.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

## ARTICLE 5 – TRUST ADVISOR

5.1 *Trust Advisor.*
The Trust Advisor's purpose is to direct the Trustee in certain administrative and ministerial matters concerning the Trust. The Trust Advisor must not be related or subordinate to the Claimants within the meaning of Internal Revenue Code Section 672(c). No Claimant nor their spouse, nor any person who has contributed to the Trust may serve as a Trust Advisor at any time under this instrument.

5.2 *Trustee Not Compelled to Consult or Seek Approval.*
The Trustee is under no obligation to seek the advice or guidance of the Trust Advisor related to the exercise of any power granted to the Trustee.

5.3 *Trust Advisor Powers.*
Any Trust Advisor named or appointed under the provisions of this instrument has the power, scope of duties, and purpose as enumerated within the Trustee's written Trust Advisor Appointment Certificate.

5.4 *Limitation of Power and Scope of Duties.*
The Trust Advisor's duties shall be limited to only administrative and ministerial duties, and the Trust Advisor shall possess no fiduciary powers or duties.

5.5 *Designation of Trust Advisor.*
The Trustee shall make a written appointment of the person or entity to serve as Trust Advisor of each Trust created under this instrument by the issuance of a *"Trust Advisor Appointment Certificate."*

5.6 *Designation of Successor Trust Advisors.*
To fill a vacant appointment, the Trustee may, in its sole authority and absolute discretion, appoint a successor Trust Advisor. Such successor designation may be conditioned upon a future event such as the death, incapacity, dissolution, resignation, or removal of the current Trust Advisor. Notwithstanding the foregoing, the Trustee may choose to leave vacant the Trust Advisor appointment.

5.7 *Removal and Replacement of a Trust Advisor.*
The Trust Advisor may only be removed for cause, as ordered by a court of competent jurisdiction. The Trustee upon receipt of a petition to remove and replace the Trust Advisor

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

may, in their sole discretion and absolute authority, then petition a court of competent jurisdiction to remove the Trust Advisor. Upon either (i) receipt of an order of removal from a court of competent jurisdiction, or (ii) receipt of resignation from the Trust Advisor, or (iii) a vacancy in the office of Trust Advisor, the Trustee may appoint a new Trust Advisor.

The court acting to remove a Trust Advisor will acquire jurisdiction or authority over the Trust only to the extent necessary for the removal of the Trust Advisor.

This provision shall have supremacy and prevail over any other provision which may be found in conflict.

5.8 *Resignation of a Trust Advisor.*
A Trust Advisor may resign by giving written notice to the Trustee. The resignation will take effect on the date set forth in the notice, but not earlier than 30 days after the delivery date of the notice of resignation unless an earlier effective date is agreed to by the Trust's Trustee. A resigning Trust Advisor is not liable or responsible for the actions of any successor Trust Advisor.

Upon the resignation of a Trust Advisor, the Trustee may appoint the resigning Trust Advisor's successor as Trust Advisor in the manner otherwise set forth in this Article.

5.9 *Incapacity of a Trust Advisor.*
If an individual serving as Trust Advisor becomes incapacitated, the incapacitated Trust Advisor need not resign as Trust Advisor. Any Trust Advisor or the Trustee may provide a written declaration that a Trust Advisor is incapacitated.

The written declaration of the Trust Advisor's incapacity, if supported by a written opinion of incapacity by a physician who has examined the incapacitated Trust Advisor, will terminate the Trust Advisor's service. If the Trust Advisor designated in the written declaration refuses to sign the necessary medical releases needed to obtain the physician's written opinion within ten (10) days of a request to do so, the Trust Advisor's service will be terminated.

The provisions of this instrument govern the determination of a Trust Advisor's incapacity, except that a single physician may determine incapacity. Further, the Trust Advisor is obligated to submit to the examination and provide necessary releases.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

5.10 *Authority of Successor Trust Advisors.*
Any successor Trust Advisor has all the authority of any predecessor Trust Advisor but is not responsible for the predecessor's acts, omissions, or forbearances.

5.11 *Trust Advisor May Release Powers.*
Acting on behalf of itself and all successor Trust Advisors, a Trust Advisor may irrevocably release, renounce, suspend or limit any power held by the Trust Advisor at any time.

5.12 *Access to Records and Information.*
The Trustee shall grant such access to Trust information and records as required for the Trust Advisor to perform its appointed duties. The Trust Advisor shall take such reasonable and ordinary business care as necessary to safeguard the Claimant information from unauthorized access by third parties.

5.13 *Specific Hold Harmless and Indemnification of Trust Advisor.*
If the Trust Advisor acts in good faith based on information, or by belief, then the Trust Advisor shall be fully released, indemnified and held harmless for the acts.

5.14 *General Release, Indemnification, and Hold Harmless of Trust Advisor.*
The Authorized Agent for the Claimant recognizes that some persons or institutions may be reluctant to serve as Trust Advisor without indemnification by the Trust for potential liability. Therefore, the Authorized Agent for the Claimant acknowledges and agrees that the Trustee may expend the Trust Assets to defend any claim brought against any Trust Advisor even if the cost of the Trust Advisor's defense would exhaust the Trust's value.

Any Trust Advisor is entitled to reimbursement from the Trust Assets for any expenses, including reimbursement for attorney's fees and costs of litigation reasonably incurred to defend any claim brought against the Trust Advisor. Reimbursement shall occur even if the cost of the Trust Advisor's defense would exhaust the Trust's value.

This section applies to any currently serving Trust Advisor and for claims brought against any former Trust Advisor in connection with his or her acts, omissions, or forbearances regarding the Trust while serving as Trust Advisor.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

The Trust Advisor shall be held harmless and not be responsible or liable for any action by the Trustee and shall have no other implied fiduciary duty, including but not limited to, the duty to monitor, review or approve any action or inaction by the Trustee.

## ARTICLE 6 – GENERAL PROVISIONS

6.1 *Approval.*

Except as expressly provided in this Trust Administration Agreement, the Trust Agreement, the Order, or the Settlement Agreement, or as otherwise required by the Governing Authority or applicable law, neither the Trustee nor Administrator need to obtain the approval of the Governing Authority or order of any judicial court or any other person or entity in the exercise of any power or discretion conferred under this Trust Administration Agreement or the Trust Agreement. However, the Trustee may, in its sole and absolute discretion, seek an order or approval of the Governing Authority or judicial court with respect to any action proposed to be taken by the Trustee with respect to the Trust, and in no event shall the Trustee be liable to any person or entity for any actions taken in accordance with such Governing Authority order or approval.

6.2 *Distributions.*

The Trustee shall distribute: (i) the vested allocated settlement amounts at such time, as the Trustee, in its sole and absolute discretion, so determines as finalized and thus grants as a Vested Right, and (ii) in such amount (which as applicable, may be an amount greater than, less than, or equal to the interim amounts stipulated in the Settlement Agreement) as the Trustee determines to be appropriate, in its sole and absolute discretion.

The Trustee may make payment of the Claimant's allocated settlement amount by wire transfer to Claimant or Claimant's Attorney, by check to the Claimant or Claimant's Attorney, or by check on behalf of the Claimant to a provider of third-party services to the claimant, to a structure broker or assignment company upon the request and for the convenience of the Claimant or Claimant's Attorney, or by any other method determined by the Trustee to be appropriate, and this shall be in satisfaction and settlement of the Claimant's claim against the Trust. Any check issued to a Claimant or Claimant's Attorney may be issued with a separate release of liability, however, even if a separate release was not issued, a full release of all claims against the Trustee shall be binding upon the Claimant upon negotiation of the check or receipt of the wire transfer of funds. The release, indemnification and hold harmless

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

agreement(s) and the discharges executed in association with any request of funds shall be binding upon the Claimant and their heirs.

For the purpose of clarity and the avoidance of doubt, it is conclusively stipulated that interim worksheets, interim allocations, interim calculations, interim working papers and interim ministerial sub-accounts of the Trust are solely for the administrative and ministerial convenience of the Trustee and Trust Administrator, are only notational and do not convey or establish any Vested Right, constructive receipt or economic benefit to or on any respective Claimant. Further, interim notional allocations may change from time to time at the discretion of the Trustee.

The Trustee and Trust Administrator shall, under the continuing jurisdiction of the Governmental Authority, settle with the Claimants the existing claims by approving a subsequent Petition for Distribution (with person(s) or entity(ies) asserting such claims (or their Authorized Agent acting on the Claimant's behalf)). Until such time that Petition for Distribution is approved, (utilizing the Trustee's then-current form) no settlement proceeds or Trust Assets are to be set apart for Claimants and the Claimant may not otherwise draw upon or otherwise control said settlement proceeds held in this Trust.

The substantial limitations placed on a Claimant's receipt of settlement proceeds renders nugatory the potential for the constructive receipt, cash equivalence or economic benefit doctrines to apply.

No Claimant possesses a Vested Right in the Trust or the Trust Assets until such time as the Trustee and the Trust Administrator determines a Claimant's final allocated portion of the settlement funds and approves, under the supervision of the Governmental Authority, the Petition for Distribution with the Claimants and distributes such vested proceeds from the Trust to the respective Claimant.

The Trustee may, in its sole and absolute discretion, require the completion of a distribution petition, settlement agreement, and releases prior to the distribution of vested allocated settlement amounts. For further clarification, please refer to Support Appendix 3 attached to the Trust Agreement and incorporated herein by reference.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

6.3 *Financial Management.*

The Trustee shall have the authority to manage and invest Trust Assets as the Trustee deems advisable in order to effectuate the purposes of the Trust. The Trustee may, in its sole and absolute discretion, engage an investment advisor and delegate the Trustee's investment authority and responsibilities to the investment advisor, and the Trustee shall not be responsible for any loss that might occur from the investment decisions of the investment advisor.

6.4 *Reporting.*

(a) Periodic Accounting. The Trustee may, in its sole discretion, cause to be prepared a periodic accounting of the Trust, including, without limitation, online access, an account statement, a balance sheet of the Trust, a statement of receipts and disbursements, a statement of profit and loss, a supplementary schedule of investments and assets, and a statement of transactions.

(b) Approval by the Governing Authority and Discharge of Liability. The Trustee may, in its sole and absolute discretion, render such periodic accounting to the Governing Authority. Upon the approval of any periodic accounting by the Governing Authority, and subject to the terms of the order of the Governing Authority granting such approval, the Trustee shall be discharged from any further liability or responsibility as to all matters disclosed in such periodic accounting, and no action arising out of any matter disclosed in such periodic accounting may be brought against the Trustee.

(c) Availability. The Trust records maintained by the Trust Administrator, along with all Trust records or documentation, will be available and open at all reasonable times for inspection during the workweek between the times of 9:00 am to 4:00 pm Eastern Time by the Claimant, the Legal Representative of the Claimant, or the Supervising Court. The Trustee or Trust Administrator shall not be required to furnish Trust records, Trust Sub-Account records, or documentation to any individual, corporation, or other entity who:

(i)   is not the Supervising Court;

(ii)  is not a Claimant;

Ver 4-25-2022

(iii)     is not the Legal Representative of a Claimant; or,

(iv)     does not have express written authorization of the Claimant to receive such information, unless required by law.

The decision of the Trustee or the Trust Administrator shall be the sole and final determination as to the sufficiency of any written authorizations or requests for records and/or documentation.

6.5 *Excess Funds.*

After the Trust has been administratively terminated, the Trustee shall dispose of any excess funds remaining in the Trust in accordance with the remaining provisions of this Section.

(a) <u>Unallocated Funds.</u> Any excess funds remaining in the Trust that are not vested and allocated to a particular Claimant may be disposed of in any manner determined by the Trustee to be appropriate in its sole and absolute discretion.

(b) <u>Allocated Funds.</u> Any excess funds remaining in the Trust that are vested and allocated to a Claimant who cannot be located by the Trustee shall be disposed of by the Trustee in accordance with the terms of the Settlement Agreement. If the Settlement Agreement does not set forth the required method of disposition, the Trustee may dispose of excess funds allocated to a Claimant who cannot be located using any one or more of the following methods, as determined by the Trustee in its sole and absolute discretion: (i) by payment to Claimant's Attorney, (ii) in accordance with the requirements of any applicable state unclaimed property law, or (iii) as directed by the Governing Authority. The Trustee may rely on Claimant's Attorney's evidence of due diligence in attempting to locate a missing Claimant.

(c) <u>Reliance on Instructions.</u> Notwithstanding the preceding, if the Trustee receives instruction from Claimant's Attorney or Authorized Agent regarding the disposition of excess funds, the Trustee shall follow Claimant's Attorney or Authorized Agent's instructions and the Trustee shall have no liability for any actions taken in accordance with the instructions received from Claimant's Attorney, Authorized Agent, or Distribution Administrator.

(d) <u>Disbursement Costs</u>. When determining the appropriate disbursement of excess funds, the Trustee may consider the costs associated with each disbursement method.

Further, the Trustee and its Third Parties may rely solely upon the verbal and written representations and warrants made by the Claimant's Attorney, Authorized Agent, or Distribution Administrator without any duty or obligation of the Trustee or its Third Parties to conduct any additional audit, investigation or inquiry to determine if such representations and warrants are fraudulent, untrue, inaccurate, coerced, inconsistent with tax laws and doctrine or incomplete. Further, the Trustee and its Third Parties have no duty to detect theft, conversion, fraud, inconsistency with tax laws and doctrine, or fraudulent intent as it relates to the representations and warrants made by the Claimants or their Authorized Agent and may rely solely on the representations made.

The Trust, Claimants and all Parties in Interest completely release, hold harmless, indemnify and forever discharge the Trustee and its Third Parties from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of service, expenses, tax consequences and compensation of any nature whatsoever, whether based on a tort, contract, government inquiries or investigations, fiduciary duty or other theory of recovery, which the Trust, Claimants or Parties in Interest now have, or which may hereafter accrue or otherwise be acquired on account of, or may in any way grow out of, the Trustee's reliance on representations and warrants which may be fraudulent, untrue, inaccurate, coerced, inconsistent with tax laws and doctrine or incomplete.

This release and discharge shall apply to all Trustees, officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, heirs and assigns and all other persons, firms or corporations with whom any of the former have been, are now, or may hereafter be, affiliated.

This provision shall be a fully binding and complete settlement of the associated rights and claims under the Trust by the Claimants, Parties in Interest and their heirs, assigns and successors. The Claimants and Parties in Interest acknowledge and agree that the release and discharge set forth herein is a general release. The Claimants and Parties in Interest assume the risk that the facts or law may be other than Claimants and Parties in Interest believe.

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

This provision shall have supremacy and prevail even when in conflict with other provisions of the Trust.

6.6 *Limitations on Liability of Trustee.*

The Trustee acts as Trustee and not personally. All persons shall, therefore, look solely to the Trust and not to the Trustee or its officers personally for compensation with respect to any contract, obligation or liability made or incurred by the Trustee in good faith. The Trustee shall not be liable for any damages with respect to its actions or omissions regarding the Trust, except for those arising from the willful misconduct or gross negligence of the Trustee. The Trustee shall not be liable for any damages for any act or omission of any agent or employee of the Trust unless the Trustee acted with willful misconduct or gross negligence in the selection or retention of such agent or employee. No successor Trustee shall be liable for any act or omission of a predecessor Trustee. If the Trustee receives instruction from Claimant's Attorney, Authorized Agent, or Distribution Administrator regarding any matter that may arise under the Trust, the Trustee shall, except as otherwise instructed by the Governing Authority or as otherwise set forth in the Settlement Agreement, follow Claimant's Attorney's, Authorized Agent's or Authorized Entity's instructions, and the Trustee shall have no liability for any actions taken in accordance with the instructions received from Claimant's Attorney, Authorized Agent, or Distribution Administrator.

Notwithstanding the preceding, if the Trustee receives instruction from Claimant's Attorney, Authorized Agent or Authorized Entity regarding the additions of funds, the Trustee shall follow Claimant's Attorney's, Authorized Agent's or Authorized Entity's instructions and the Trustee shall have no liability for any actions taken in accordance with the instructions received from Claimant's Attorney, Authorized Agent or Authorized Entity.

In regard to additions to the Trust, the Trustee and its Third Parties may rely solely upon the verbal and written representations and warrants made by the Claimant's Attorney, Authorized Agent or Authorized Entity without any duty or obligation of the Trustee or its Third Parties to conduct any additional audit, investigation or inquiry to determine if such representations and warrants are fraudulent, untrue, inaccurate, coerced, inconsistent with tax laws and doctrine or incomplete. Further, the Trustee and its Third Parties have no duty to detect theft, conversion, fraud, inconsistency with tax laws and doctrine or fraudulent intent as it relates to the representations and warrants made by the Claimants or by the Claimant's Attorney, Authorized Agent or Authorized Entity and may rely solely on the representations made.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

The Claimants and their Parties in Interest acknowledge and agree that subject to the provisions of the laws of the Principal Place of Administration any action in relation to an alleged breach of this Trust or any other action against the Trustee or its Third Parties shall be commenced within six (6) months from the date the Trustee sent a report that disclosed the breach occurring, without regard to the date the breach is discovered. Any action not brought within that six (6) months' time period shall be barred, without regard to any other limitation period set forth by law or statute. Further, the Claimant's and their Parties in Interest acknowledge and agree that the information regarding the activity of the Trust is readily available online, and accessible and available at any time upon request. The Claimant's and their Parties in Interest have a duty to monitor the activity of the Trust and: (i) any resulting damages stemming from the failure to monitor the Trust is not a liability of the Trustee; and (ii) Claimants and their Parties In Interest waive all claims against the Trustee and its Third Parties in such circumstances.

6.7 *Trustee Resignation and Appointment of Successor.*
The Trustee may resign by written notice delivered to the Trust Administrator. In the event of a Co-Trustee's resignation, the Trustee may appoint in writing a successor Co-Trustee, or the remaining Trustee may continue to serve as sole Trustee. In the event of a complete vacancy in the position of Trustee, with no serving Trustee or Co-Trustee, the Governing Authority of appropriate jurisdiction may appoint a corporate or professional fiduciary to serve as successor trustee, if also consented to by Claimant's Attorney, Authorized Agent or Authorized Entity. In default of such appointment, the Governing Authority shall have the power to appoint a successor Trustee with new terms for compensation. Any successor Trustee shall have the same powers, authorities, and discretions as though originally named as the Trustee. All of the Trustee's fees, including reasonable attorneys' fees, attributable to the appointment of a successor Trustee shall be paid by the Trust Assets.

Best efforts shall be undertaken to ensure that at least one (1) *United States Person* is serving as a Trustee. Pursuant to Section 7701 of the Code, in the event there is not at least one (1) active *United States Person* serving as Trustee, the Trustee shall fill the *United States Person* vacancy as soon as practical, but no less than twelve (12) calendar months from the date of the vacancy, or in the time frame as may otherwise be prescribed pursuant to Section 7701 and its regulations.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

6.8 *No Duty to Examine.*

No successor Trustee is obligated to examine the accounts, records, or actions of any previous Trustee. No successor Trustee will be in any way or manner responsible for any act, omission or forbearance on the part of any previous Trustee.

6.9 *Trustee's Employment of Experts.*

The Trustee may, but shall not be required to, retain or consult with experts such as counsel, accountants, appraisers or auditors, and other parties deemed by the Trustee to be qualified as experts on the matters submitted to them, and the opinion of any such parties on any matters submitted to them by the Trustee shall be complete authorization and protection in respect of any action taken or not taken by the Trustee in good faith and in accordance with the opinion of any such party. The related expenses of such employment shall be paid out of the Trust Assets.

6.10 *Trust Expenses.*

Unless other arrangements have been made, all expenses, costs, and expenditures associated with the formation, operation, administration, and termination of the Trust shall be paid out of the Trust Assets.

6.11 *Trustee Compensation and Expenses.*

Unless otherwise agreed upon in writing, all fees associated with the formation, operation, administration, and termination of the Trust shall be paid out of the Trust Assets and billed at the Trustee's then-published rate for services which shall be reasonably commensurate fees. Any change in the Trustee's schedule of fees shall be deemed a reasonably commensurate fee for so long as such fee is considered as "reasonable" under the laws of the Principal Place of Administration. Such reasonable compensation, fees, and expenses shall establish a priority residual, future and contingent interest in the Trust for the Trustees. In the event extraordinary services are rendered, the party providing the services is entitled to additional compensation. Fees and expenses may be deducted from liquidated Trust Assets at any time in the sole authority and at the absolute discretion of the Trustee. Fees and expenses may be offset from earnings, provided interest is being earned, or deducted from liquidated Trust Assets at any time in the sole authority and at the absolute discretion of the Trustee. The Trustee shall post net allocated accrued earnings (less applicable fees) at least annually in arrears. However, the Trustee may, in its sole discretion and absolute authority, post net allocated earnings more frequently.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

The Trust grants a priority interest in contingent, future and residual fees and expenses attributable to the administration and management of the Trust (for such period as the Trust is in operation). The Trustee holds such priority interest in residual, future and contingent fees payable to the Trustee in accordance with the terms of this Trust Administration Agreement and the Trust Agreement, in addition to the receipt, payment, and satisfaction of any other fees and expenses otherwise attributable to the operation of the Trust. It is conclusively established that the preceding establishes a priority residual, future and contingent interest in the Trust for the Trustee in regard to their fees, service credits, expenses, and reimbursements. The Claimants and all Parties in Interest release and waive any and all conflicts that may arise from such arrangements and fees and shall indemnify and hold the Trustee and their Third Parties harmless from any and all related issues.

Any and all fees may be paid from liquidated Trust Assets regardless of the tax or investment consequence(s) to the Trust. The Trustee may deduct from the Trust Assets any and all amounts necessary to compensate the Trustee. Certain fees paid to the Trustee and the Trust Administrator and their Third Parties are ministerial service fees for administering the Trust and do not constitute a fee for Fiduciary services, trustee services, legal services or tax advice. The Trustee, in its sole authority and absolute discretion, may withhold services should any unpaid fees remain outstanding more than thirty (30) calendar days after the due date.

The Trustee and its Third Pary service providers may also receive compensation from the Asset Providers, including, but not limited to, interest rate concessions, revenue sharing, wrap fees, fund fees, servicing credits, 12B-1 fees or commissions in connection with the Trust Assets; these amounts shall not offset the fees due to the Trustee by the Trust.

6.12 *Indemnification.*
The Trustee and Trust Administrator and their Third Parties, and their officers, employees, representatives, agents, advisors, and consultants (the "Indemnitees") shall be indemnified, defended and held harmless by Claimants and the Trust Assets against any and all claims, demands, suits, liabilities, awards, expenses, losses, costs, fees (including reasonable attorneys' fees and costs), damages, causes of action and judgments ("Losses") incurred by the Indemnitees in the performance of their duties hereunder, or in connection with activities undertaken by them prior to the date of this Trust Administration Agreement relating to the formation, establishment or funding of the Trust; provided that the Indemnitee acted in good faith and a manner the Indemnitee reasonably believed to be in, or not opposed to, the best interests of the Trust. Should the Trustee and Trust Administrator and their Third Parties be

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

named as a party to, or threatened to be made a party to, any threatened, pending, active or completed action, suit, investiagtiton, inquiry or proceeding of any kind, whether governmential, civil, administrative or arbitrative, and whether brought by or against or otherwise involving the Trust, by reason of the Trustee and Trust Administrator having served in any capacity on behalf of the Trust, the Trustee and Trust Administrator and their Third Parties shall be indemnified, defended and held harmless by the Claimant and the Trust Assets against reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement and liabilities of all kinds incurred by the Trustee and Trust Administrator and their Third Parties in connection with or resulting from such actual or threatened action, suit, investiagtion, inquiry or proceeding; except to the extent that it is finally determined by this Governing Authority that the Trustee was grossly negligent or acted with willful misconduct in connection with the administration of the Trust. The Trustee and Trust Administrator and their Third Parties may reasonably rely on the specimen signatures and the proximity of signatures on distribution requests to such specimen(s). The Trustee and Trust Administrator are released, held harmless and indemnified from any claims arising from reasonable reliance on such specimen signatures and have no additional duty to verify the identity of the signor. Absent a serious breach of the Trust by willful misconduct; the Trustee is not liable to a Claimant for: (i) a loss or depreciation in the value of Trust Assets; (ii) not having made a profit; or (iii) having realized an investment loss.

6.13 *Disclaim or Release Any Power.*
Notwithstanding any provision of this Trust Administration Agreement or the Trust Agreement to the contrary, any Trustee may relinquish any Trustee power in whole or in part, irrevocably or for any specified period, by a written instrument. The Trustee may relinquish a power solely for itself or may relinquish the power for all subsequent Trustees.

6.14 *Severability.*
The invalidity or unenforceability of any provision of the Trust does not affect the validity or enforceability of any other provision of this Trust Administration Agreement or the Trust Agreement. If the Governing Authority of competent jurisdiction determines that any provision is invalid, the remaining provisions of this Trust Administration Agreement and the Trust Agreement are to be interpreted as if the invalid provision had never been included.

6.15 *Spendthrift Provision.*
No Claimant may assign, anticipate, encumber, alienate or otherwise voluntarily transfer the income or principal of the Trust Assets. Also, neither the income nor the principal of the Trust

Ver 4-25-2022

Assets is subject to attachment, bankruptcy proceedings or any other legal process, the interference or control of creditors or others, or any involuntary transfer. Notwithstanding the foregoing, preexisting liens and contingent liabilities of the Claimant, as provided for in the Settlement Agreement or otherwise documented, may in the Trustee's sole authority and absolute discretion, have standing against the Trust Assets as an Adverse Claim in proportion to the associated Claimants potential share of the Trust Assets.

### 6.16 *Successors and Assigns.*

The provisions of this Trust Administration Agreement and the Trust Agreement shall be binding upon and inure to the benefit of the Trust, and the Trustee, and their respective successors and permitted assigns.

### 6.17 *Notice.*

Any notice required to be given by the Trustee to a Claimant under the terms of this Trust Administration Agreement, the Trust Agreement, or the Settlement Agreement may be given to Claimant's Attorney and if the Claimant is not represented by legal counsel, mailed to the Claimant at the Claimant's last known address or email address, or electronic notice posted on the Trustee's website pursuant to the Trustee's published Terms and Conditions. The Notice provided to the Claimant in accordance with this Section shall be deemed sufficient for any notice the Trustee may be required to provide to the Claimant under the terms of this Trust Administration Agreement, the Trust Agreement, and the Settlement Agreement.

### 6.18 *Conflict with Settlement Agreement.*

In the event of any conflict between the terms or provisions of this Trust Administration Agreement and the Trust Agreement and any terms agreed to between the Parties as evidenced by the Settlement Agreement, the terms of the Settlement Agreement shall control, as the primary purpose of this Trust Administration Agreement and the Trust Agreement is to effectuate the Settlement Agreement. For further clarification, please refer to Support Appendix 2 attached to the Trust Agreement and incorporated herein by reference.

### 6.19 *Entire Agreement; No Waiver.*

This Trust Administration Agreement and the Trust Agreement contain the entire agreement between the Parties relating to the subject matter of this Trust, and this Trust Administration Agreement and the Trust Agreement supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial

exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

6.20 *Counterparts and Electronic Signatures.*

This Trust Administration Agreement, the Trust Agreement, and all associated administrative documents and forms of the Trustee and Trust Administrator, may be executed in several counterparts, each having its own signature page(s) executed by wet (handwritten), mechanical or electronic signatures. However, all such executed counterparts, along with the original Trust Administration Agreement and the Trust Agreement, shall constitute the entire agreement between or among the Parties, which is fully enforceable and binding on all of the Parties hereto, including any future Party in Interest, notwithstanding the signatures, or lack thereof, contained in this Trust Administration Agreement, the Trust Agreement, or any and all counterparts. Copies of the executed Trust Administration Agreement the Trust Agreement, or all associated administrative documents and forms, certified as a True Copy of the Original by the Trustee, whether physical or electronic reproductions, shall be deemed valid incarnations of the Trust Administration Agreement, the Trust Agreement, and administrative documents forms, which shall be considered enforceable and binding as would the original Trust Administration Agreement, the Trust Agreement, and all associated administrative documents and forms.

Electronic signatures and communications are subject to the federal Electronic Signatures in Global and National Commerce Act (the "Act"), and the Trustee shall apply the Act to enable the ability to conduct business by, with, and among all parties by electronic means.

6.21 *Headings.*

The headings, titles, subtitles, table of contents, and indexes in this Trust Administration Agreement have been inserted solely for convenient reference and are not intended to qualify or restrict the meaning of any section, nor do they have any legal or dispositive effect.

6.22 *Gender and Number.*

Whenever the context requires, the feminine shall be substituted for the masculine, singular for plural and vice versa.

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

6.23 *Validity.*
If any provision of this Trust Administration Agreement or application of such provision to any person or circumstance shall be held invalid by a United States judicial court of competent jurisdiction, the remainder of the Trust Administration Agreement shall not be affected thereby.

6.24 *Facsimile and Email Copies.*
All copies of this Trust Administration Agreement, including but not limited to facsimile, electronic, email and photostatic images, shall be deemed to be originals and shall serve to bind the Parties and have the same force and effect as non-facsimile signatures and documents.

6.25 *References.*
A reference to a paragraph without identifying the Section or Article in which it appears has the same effect as naming the Section or Article in which the reference appears. A reference to a Section without identifying the Article in which it appears has the same effect as naming the Article in which the reference appears.

6.26 *Verbs.*
Use of the verb "shall" in this Trust Administration Agreement indicates a mandatory direction, and use of the verb "may" indicates an authorization to take action or not take action as the Trustee deems appropriate under the circumstances at the sole authority and absolute discretion of the Trustee. Any use of the word "shall" in any specific provision or group of provisions does not imply any intent to remove discretion from any other provisions of the Trust Administration Agreement or limit the exercise of the Trustee discretion in other matters. In the event the word "shall" appears in a provision that is otherwise preconditioned, then the "shall" provision is dependent on the preconditioning provision first being satisfied or evoked in the sole authority and absolute discretion of the Trustee.

6.27 *Assignment of Interest or Merger of Corporate Trustee.*
If any corporate fiduciary acting as the Trustee under this Trust, whether individually or as a Trustee, is merged with or transfers substantially all of its trust assets to another corporation, or if a corporate fiduciary changes its name, the successor will automatically succeed to the trusteeship as if that successor had been originally named a Trustee. No document of acceptance of trusteeship will be required, and the successor corporate fiduciary shall be the Trustee hereunder, without the execution or filing of any instrument or the performance of any further act and shall have the same powers, authorities, and discretions as though originally

Ver 4-25-2022

named in this agreement. No merger or transfer of assets by the Trustee shall be construed as the termination of the Trustee or the Trust.

This Trust, its resulting Trustee fee(s), or all other associated revenues may be transferred to the Trustee's successors, or assigned, or sold by the Trustee at any time, in whole or in part, and without restriction, prior notice or prior consent. Further, no approval, consent, or acknowledgment is required for assignment from any Party in Interest. This section shall be binding on all respective Parties in Interest and their successors and assigns. No assignment of or by the Trustee, its resulting trustee fee(s), or all other associated revenues shall be construed by any Party as termination of the Trustee or the Trust.

6.28 *Official Depository of Records.*

The official depository of the records is the Trustee, held by itself, or any Co-Trustee within any of their physical branches, or the electronic depositary system(s), or home offices, branch offices and back offices they maintain at the time. Such records may also be held in electronic computer systems, offsite archives or by Third-Party service providers, either as physical documents or electronic images or data. Such images and data shall constitute the official records of the Trust so long as such records are certified as true copies by the Trustee. The holding of records offsite, by a service provider or separately incorporated Affiliate or electronically ("in the cloud" or through a hosting service provider) shall not be construed as the Trustee conducting business outside its jurisdiction.

6.29 *Collection of Third-Party Fees.*

To reduce and maintain a lower cost of administering the Trust, the Trustee or its affiliates may collect available servicing and other fees from banks or investment providers. In no case shall the receipt or collection by the Trustee or its affiliates of direct, or indirect, fees or payments for services provided for in this Trust Administration Agreement and the Trust Agreement be construed as self-dealing whether paid directly by the Trust, a common fund of the Trustee, or by third parties. As such, Trustee having an interest in transactions involving Trust Assets is hereby consented to and any associated conflicts of interest are hereby waived. The collection of Third-Party fees is waived as a conflict of interest, known or unknown, including the Trustee's duty of loyalty to the claimants on the condition that the Trustee acts in good faith with due regard for the purpose of this Trust and fees structure. Notwithstanding any rule of law against self-dealing, divided loyalty or conflict of interest, the Trustee is specifically authorized to invest all or any portion of the Trust Assets through the Trustee's affiliate brokers and trading platforms and to exercise all rights connected with the execution

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

and holding of such investments. Also, the Trustee is specifically authorized to engage affiliated entities to provide services to the Trust, including, without limitation, brokerage, custodial, and agency services. The Trustee shall not be required to reimburse or credit to the Trust the cost of such services, value of any benefits, or compensation received by the Trustee or any of its affiliates in connection with such investments or services.

6.30 *Trust Assets Not Subject to Claims of Trustee's Creditors.*
Pursuant to laws of the Principal Place of Administration, Trust Assets are held separate and apart from the Trustee and are not subject to obligations or creditors of the Trustee, even if the Trustee becomes insolvent or bankrupt.

6.31 *Defense of the Trust.*
The Trustee, in its sole authority and absolute discretion, may expend Trust Assets to pay for the costs and expenses of defending the Trust or any Trust Sub-Account, the Trustee and its Third Parties, the Trust Administrator and its Third Parties, and the Distribution Administrator (all of the preceding jointly and severally). The Trustee, in its sole authority and absolute discretion, may expend Trust Assets to address the Trustee and Trust Administrator and their Third Parties being named as a party to, or threatened to be made a party to, any threatened, pending, active or completed action, suit, investigation, inquiry or proceeding of any kind, whether governmental, civil, administrative or arbitrative, and whether brought by or against or otherwise involving the Trust, by reason of the Trustee and Trust Administrator having served in any capacity on behalf of the Trust, the Trustee and Trust Administrator and their Third Parties shall be indemnified, defended and held harmless by the Claimant and the Trust Assets against reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement and liabilities of all kinds incurred by the Trustee and Trust Administrator and their Third Parties in connection with or resulting from such actual or threatened action, suit, investigation, inquiry or proceeding governmental or civil investigation or inquiry. By way of illustration and not by way of limitation, such expenditure of Trust Assets by the Trustee is appropriate to pay for (i) any fees or expenses associated with any claim, demand, legal action, equitable action, suit or proceeding investigation, inquiry or proceeding governmental or civil investigation or inquiry; (ii) attorney's fees incurred prior to, during or after trial; (iii) attorney's fees prior to, during, or after an appeal; and (iv) all internal costs relative to the foregoing. In such circumstances, the costs and expenses incurred shall be either apportioned on a pro-rata basis to all Trust Sub-Accounts (if any) within the Trust, or charged only against the Trust Sub-Account (if any) that is the cause of the costs and

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

expenses. The method of such allocation, and the determination of cause, shall be determined solely by the Trust Administrator.

Except for cases of willful misconduct or gross negligence on the Trustee's part, any action, omission or forbearance made in good faith reliance on the information, consent or directions received will be considered to have been made in good faith for this provision's purposes.

6.32 *Quiet Enjoyment and Operation.*
The intention of this Trust Administration Agreement and the Trust Agreement is to provide for the quiet enjoyment and operation of the Trust and abusive actions designed to circumvent the purpose of the Trust are hereby prohibited. Threatening, abusive, harassing, obnoxious or frivolous legal and other actions by Parties in Interest erode the assets of the Trust, increase fees and are deemed detrimental to the Material Purposes of the Trust and are hereby prohibited. It is also conclusively established that prohibited actions shall include, but not be limited to: (i) frivolous demands and interactions with the Trustee, Trust Administrator or their Third Parties; (ii) threats against the Trustee, Trust Administrator or their Third Parties; (iii) abusive, defamatory, frivolous, harassing or malicious public statements against the Trustee, Trust Administrator or their Third Parties; and (iv) any other direct or indirect public or private acts of harassment or threats against the Trustee, Trust Administrator or their Third Parties. Therefore, the following Trust provisions and clarifications are set forth with the acknowledged intent to bar: (i) all forms of frivolous acts and acts of harassment or threats, (including but not limited to threatening, malicious, harassing, false and defamatory public statements); (ii) frivolous actions (legal or otherwise); and (iii) all forms of action designed to circumvent the purpose of the Trust, or to threaten or harass the Trustee, Trust Administrator or their Third Parties into taking an action contrary to the Trustee's prudent discretion and established administrative procedures. It is further conclusively established and affirmed that to achieve the intentions and purposes of this Trust, the Claimants and their Parties in Interest shall comply as with the terms and conditions of this provision as follows:

(a) The Trust and the Parties in Interest and their heirs, successors, assigns and personal representatives hereby release and forever discharge, indemnify and hold harmless the Trustee, Trust Administrator and their employees, agents, officers, and representatives (in their official and individual capacities) from any and all liability whatsoever for any and all damages or losses sustained, including but not limited to any claims, demands, actions, causes of action, judgments, damages, expenses and costs, including attorney's fees, which arise out of, result from, occur during or

Ver 4-25-2022

are connected in any manner with this Trust with the exception of claims arising out of gross negligence or willful misconduct based on the then-available knowledge of the Trustee.

(b) The Trustee, Trust Administrator, and their Third Parties have no duty to comply with the reporting requirements other than those set forth in this Trust Administration Agreement and the Trust Agreement and the Trustee, Trust Administrator and their Third Parties are not bound by reporting requirements set forth by any jurisdiction other than the jurisdictions specific to the administration of this Trust.

(c) The Parties in Interest shall be prevented from filing further litigation or regulatory complaint(s) regarding the Trust's administration or Trustee's discretion following any failed prior litigation or regulatory complaint on the same subject matter and/or arising from the same or substantially similar transaction. The filing of such follow-on litigation or regulatory complaint(s) shall be deemed "frivolous and malicious" for the purposes of the Trust. In such circumstances, the Trustee may, in its sole authority, absolute discretion and at the cost of the Trust, petition the Court for injunctive relief, including but not limited to a "gatekeeping order" for the Court to supervise and restrict further frivolous or abusive new lawsuits, complaints, claims or other documents being filed.

(d) The Parties in Interest are barred and have no standing to bring forth any claim of "tortious interference" or any claim based on "contractual rights" or "constructive trust" or under any "cumulative effect theory of liability."

(e) The Trustee, when acting as a directed Trustee, has the power to take investment instructions the Authorized Agent, and then to make such investments without regard to diversification or suitability.

(f) The Trustee shall be deemed to have acted in good faith upon acting in accordance with the advice of Counsel. Counsel is not limited to legal counsel.

(g) The Trustee may not be discharged without a qualified institutional Successor Trustee being appointed and said Successor Trustee accepting the appointment and

agreeing, in writing, to comply with all Terms and Conditions of this Trust Administration Agreement and the Trust Agreement.

(h) The Parties in Interest have no standing to bring any action on behalf of the Trust without first seeking to compel the Trustee to bring such actions.

(i) As the Trust is a common law, irrevocable trust, the Grantor or Transferor of the Trust shall have no retained interest in the Trust and lacks standing to act on behalf of the Trust or bring any claims forth against the Trust, the Trustee, Trust Administrator or their Third Parties.

(j) Any depository institution, custodial trust or broker-dealer holding Trust accounts shall not be liable for any breach by the Trustee.

(k) If, in the sole discretion and absolute authority of the Trustee, any such abusive, extortive, threatening, retaliatory, defamatory, frivolous, obnoxious, harassing or malicious actions, regulatory complaints or statements are threatened or initiated, directly or indirectly, by the Parties in Interest, the Trustee may file on behalf of itself or the Trust, at the expense of the Trust and the Parties at Interest, jointly and severally, the appropriate claims, counterclaims and complaints, and seek all available damages, penalties and remedies to the fullest extent allowable under the law against all actionable parties, Claimants and their attorneys. Said damages shall include but are not limited to: compensatory damages, breach of contract, breach of tort, general damages, specific damages, speculative damages, incidental and consequential loss damages, proximate cause damages, quantifying losses damages, statutory damages, nominal damages, punitive damages, contemptuous damages, aggravated damages and all legal costs.

(l) It is agreed and understood that Trustee requires adequate powers to enforce and defend the Terms and Conditions of this Trust Administration Agreement and the Trust Agreement or to prevent retaliatory or abusive behavior or prevent anticipated breaches. Therefore, the Trustee, in its sole discretion and absolute authority, having no adequate remedy in money or other damages, shall accordingly be entitled to all available injunctive relief to compel compliance with the terms of the Trust Administration Agreement and the Trust Agreement by all Parties in Interest. No specification in this Trust Administration Agreement or the Trust

Agreement of any other particular remedy shall be construed as a waiver or prohibition of any other remedies in the event of an actual breach or anticipated breach of the Terms and Conditions of this Trust Administration Agreement or the Trust Agreement.

(m) The Trust and the Parties in Interest release, hold harmless and indemnify the Trustee, Trust Administrator and their Third Parties from any:

    (i) duty to monitor, make filings or pay any estate taxes which may be due on behalf of the Claimants.

    (ii) duty to monitor corporate or partnership level activities of entities held in the Trust.

    (iii) conflict by exchanging investments, the reinvestment of dividends or assets through affiliates of the Trustee.

    (iv) duty to monitor, review or ensure the Trustee's affiliated systems and websites are fully accurate and error-free.

    (v) claim arising from administrative delay in the execution of requested investment instructions or Petitions for Distribution.

    (vi) duty to disclose in discovery the Trustee's, Trust Administrator's or their Third Parties' corporate financial or accounting records.

    (vii) exclusion of descendants of any Claimant's Ex-Spouse as Trust Claimants.

    (viii) exclusion adoptions of adults by a Claimant, which shall be ignored for the purposes of this Trust.

    (ix) act which blocks the appointment of a Successor Trustee who in the Trustee's sole authority and absolute discretion would "Favor" or "Influence" the interpretation of the Trust for the purpose of accelerating Distributions or applying Trust provisions contrary to the purpose of the Trust.

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

(x) legal fees, including but not limited to attorney's fees, staff time spent on the case and court costs arising from any threats, retaliatory, extortive behavior, frivolous claims, malicious claims, investigation or prosecution, frivolous, extortive or malicious public statements, or frivolous, extortive or malicious legal action against the Trustee.

(xi) legal fees, including but not limited to attorney's fees, and Trustee staff time spent on the related matter and court costs arising from harassment of the Trustee by the Parties in Interest by subpoena, government inquiry or other legal actions outside the actionable time frame as defined by this Trust Administration Agreement and the Trust Agreement.

(xii) Requirement for a non-judicial settlement, release, hold harmless agreement or other indemnification from the Parties in Interest prior to making Trust Distributions.

(n) The Claimant and all Parties in Interest shall not engage, directly or indirectly, in repetitive, obnoxious, abusive, harassing or malicious contact or interaction with the Trustee, Trust Administrator or their Third Parties. In such cases; the Trustee may in its sole authority, absolute discretion and at the cost of the Trust, take actions, including but not limited to, seeking injunctive relief, or the Trustee may appoint a Special Master to supervise the Trust and interactions with the Claimant and all Parties in Interest. Parties in Interest shall not engage in threatening to make, making, causing to be made, or threatening to cause to be made any public statements regarding the Trust or Trustee that are abusive, threatening, extortive, retaliatory, defamatory, frivolous, obnoxious, harassing or malicious in nature concerning the Trust, the Terms and Conditions of this Trust Administration Agreement and the Trust Agreement, the Trust's administration by the Trustee, Trust Administrator or their Third Parties, or the Trustee's exercise of discretion. Such threat(s) or act(s) of public statements shall be deemed "frivolous and malicious" for the purposes of this Trust. The Trust and the Parties in Interest shall hold harmless and indemnify the Trustee at the cost of the Trust for any current and future economic loss resulting from such abusive, extortive, threatening, retaliatory, defamatory, frivolous, obnoxious, harassing or malicious public statements or threats thereof. Any resulting economic loss shall be recovered at the cost of the Trust, as reasonably determined by the Trustee, Trust Administrator, or

their Third Parties, using a methodology of the Trustee's selection as approved by the United States Court.

### 6.33 *Mutually Drafted.*

The Parties in Interest acknowledge that the drafting of this Trust Administration Agreement is a mutual effort. It is understood that all Parties had adequate time to review and seek legal advice regarding the drafting of this Trust Administration Agreement and have requested no additional time to execute a complete and thorough review prior to funding the Trust. As such, this Trust Administration Agreement is not to be construed against any Party or group of Parties as the drafter.

### 6.34 *Intellectual Property.*

The business, operational processes, and documents of the Trustee constitute Intellectual Property, proprietary information, and copyright works of the Trustee.

### 6.35 *Savings Provisions.*

Notwithstanding anything stated herein, in the event that any portion of this Trust Administration Agreement shall at any time be considered not to be in compliance with §468B, as amended, together with any and all Treasury Regulations and Internal Revenue Service's Notices, Announcements and directives thereunder, such offending Article of this Trust Administration Agreement shall be considered null, void and of no effect, without any action by any judicial court or the Governing Authority or by the Trustee. The overarching purpose of this Trust Administration Agreement is to comply with Internal Revenue Code §468B and all administrative authority and announcements thereunder. In the event that this paragraph applies and renders an offending paragraph or paragraphs null, void or of no effect, Severability shall still apply with respect to the remaining non-offending Articles of this Trust Administration Agreement.

### 6.36 *Electronic Reporting and Consent to Receive Electronic Documents.*

It is conclusively established that the Trustee, in its sole discretion and absolute authority, may satisfy any reporting and accounting requirements set forth in this Trust Administration Agreement and the Trust Agreement with its customary periodic account statements delivered electronically; and may provide all other Trust account statements, financial records, and notices electronically. The Parties agree to waive, without recourse or appeal, the right to receive paper statements, tax documents, and all other documents, and agree to receive all communications from the Trustee electronically. The day any statement, notice, or report is

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

made, posted, emailed, or otherwise made available electronically by the Trustee, whether accessed or not, shall be conclusively established as the "date of delivery" for the purposes of this Trust Administration Agreement and the Trust Agreement.

6.37 *Trust Services Only.*
The services to be provided by the Trustee and Trust Administrator are intended to be Trust services, Fiduciary Services, and Ministerial Services only and not investment or advisory services as defined under the Investment Advisers Act of 1940.

6.38 *Out of Court Settlement.*
The Trustee, in its sole authority and absolute discretion, may at any time enter into a Nonjudicial Settlement Agreement for any reason the Trustee, in its sole authority and absolute discretion, deems prudent and appropriate related to any account or question concerning the administration of the Trust or related to the subject of this Trust Administration Agreement and the Trust Agreement with such Claimants or their Agent's or his or her then-legally competent living descendants. Any such settlement shall bind all persons who are, have been or may ever be a Parties in Interest and shall effectively release and discharge the Trustee from any and all related obligations or claims.

6.39 *Reliance on Trust Instrument, Experts, Legal Opinion, and Communications.*
In acting, or declining to act, the Trustee may rely upon the written opinion or guidance of a competent attorney; any facts stated in any instrument in writing and believed true; or any other evidence deemed sufficient. The Trustee who acts in reasonable reliance on the terms of the Trust as expressed in this Trust Administration Agreement and the Trust Agreement is not liable to such Claimant, or any Party in Interest, for a breach of Trust to the extent the breach resulted from the reliance. The Trustee shall be held harmless and indemnified, to the full extent of the Trust Assets, from any liability arising from any action taken, or for the failure to take any action, if done in good faith reliance and without gross negligence.

The Trustee shall, in the performance of its duties, be fully protected by relying in good faith upon the books of account or other records of the Trust, or upon reports made to the Trustee by (a) any of the officers or employees of The Trustee, (b) the custodians, depositories, or pricing or valuation agents of the Trust, or (c) any custodians, investment advisors, accountants, tax return preparers, attorneys, appraisers or other agents, experts or consultants selected with reasonable care by the Trustee. The Trustee and their officers, employees, and agents of the Trustee may take the advice of counsel concerning the meaning and operation

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

of this Trust with respect to the interpretation and application of the law and shall be under no liability for any act or omission in reliance upon such advice. The exercise by the Trustee of its powers and discretion hereunder and the construction in good faith by the Trustee of the meaning or effect of any provisions of this Trust Administration Agreement and the Trust Agreement shall be binding upon all Parties in Interest.

The Trustee shall be fully protected in acting upon any writing, instrument, certificate, document, facsimile or electronic mail, reproduction, image or transmission believed by it to be genuine and to be signed, presented or transmitted by the proper person or persons. The Trustee shall have no duty to make an investigation or inquiry as to any statement contained in any such writing or transmission but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained. Notwithstanding anything to the contrary contained herein, any such writing, instrument, certificate or document may be proved by original copy or reproduced copy thereof, including without limitation a photocopy, a facsimile transmission, an electronic image or any other electronic reproduction, and the Trustee may rely on the same as if it had received the originally signed writing, instrument, certificate or document. The Trustee may, in their sole discretion, give the same effect to a telephonic instruction, voice recording or any instruction received through electronic commerce or other electronic means as it gives to a written instruction, and the Trustee's action in doing so shall be protected to the same extent as if such telephonic or electronic instructions were, in fact, a written instruction. Any such instruction may be proved by audio-recorded tape, electronic reproduction or other means acceptable to the Trustee, as the case may be. If the Trustee receives instructions or other information that is, as determined by the Trustee in its sole discretion, incomplete or not clear, the Trustee may request additional information and instructions. Pending receipt of any such instructions or other information, the Trustee shall not be liable to any party for any loss resulting from delay, action or inaction on the part of the Trustee.

6.40 *Effect of Unknown Event on Administration or Distribution.*
If an unknown or unreported event, including but not limited to: marriage, divorce, medical condition, mental condition, criminal conduct, performance of educational requirements, death, birth or adoption, bankruptcy, etc. would otherwise affect the administration, operation or a distribution of the Trust; then, if the Trustee did not directly receive notice by a written Acknowledged Instrument of such event, the Trustee is not liable for any loss resulting from the Trustee's lack of knowledge.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

6.41 *Natural Disasters, Civil Disobedience, Acts of God, States of Emergency, Lack of Public Utilities, War, Martial Law, etc.*

The Trustee and its Third Parties are hereby exonerated, held harmless, indemnified and held not liable to any Parties in Interest for any consequential damages, resulting directly or indirectly, from the Trustee's failure to act timely, or the inability to perform, or conduct ordinary business operations due to: (i) weather events; (ii) natural disasters, including but not limited to, flood and fire; (iii) epidemics and/or pandemics; (iv) events causing quarantine restrictions; (v) civil protests or disobedience; (vi) an act of god; (vii) a state of emergency; (viii) lack of public utilities; (ix) martial law; (x) internet, cloud computing, cloud storage, or telecommunication system failure; (xi) governmental shutdowns or suspensions; (xii) strikes; (xiii) war; (xiv) armed conflicts; (xv) civil unrest, insurrection, and riots; (xvi) failure to receive or have delivered mail, faxes or email; (xvii) lack of financial, trading or banking facilities or services; or (xviii) any other such causes or lack of resources customarily relied on by the Trustee to conduct ordinary business operations.

6.42 *Discharge and Release.*

The obligation of the Trustee and Administrator to make distribution payment(s) pursuant to an approved Petition for Distribution, whereby a Claimant, their Attorney, Authorized Agent or Authorized Entity petitioned for such payment(s), shall be fully discharged upon wire transfer, electronic funds transfer, or the mailing of a valid check in the amount of such payment to the designated address of the Distributee, or their designated depository agent, named in the Petition for Distribution, to the Distributee.

In consideration of the payment set forth in any associated Petition for Distribution, the requestor shall, in addition to and not to the exclusion of any provisions of this Trust Administration Agreement and the Trust Agreement, completely release, hold harmless, indemnify and forever discharge the Trustee and Trust Administrator from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of service, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which the requesting person, or entity on whose behalf they are acting, now has, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, the establishment and operation of the Trust or fulfillment of the payment under the instructions of the Petition for Distribution.

6.43 *Exoneration.*

To the extent allowable by applicable law, the Trust and the Parties in Interest, jointly and

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

severally, fully exonerate, indemnify and hold harmless any decision, action or inaction of the Trustee and their Third Parties as well as the Trust Administrator and their Third Parties with respect to the exercise or non-exercise of any discretionary power, or the timeliness or manner of the exercise thereof, that is made in good faith, or any mistake in judgment or any decrease in value or loss of Trust principal. The Parties in Interest shall fully protect, hold harmless, indemnify and exonerate the Trustee, Trust Administrator, their owners, directors, employees and/or Third Parties from any claims, government inquiries or investigations, arising from the exercise or non-exercise of any discretionary power, or the timeliness or manner of the exercise thereof that is made in good faith, or any mistake in judgment or any decrease in value or loss of Trust principal. With the exception of actual fraud, gross negligence or willful misconduct, the Trustee and any of their owners, directors, employees, and Third Parties shall not be held liable for acts, errors or omissions in administering the Trust created hereunder. The full extent of Trust Assets shall be used to defend the Trust, Trustee, Trust Administrator, and their Third Parties against all claims or charges arising from actions related to the Trust, including their court costs, legal fees, investigation costs and other associated expenses, without limitation.

6.44 *Transactions for Less than Adequate Consideration.*
No one may buy, exchange or otherwise deal with any Trust income or principal for less than full and adequate consideration in money or fair market value equivalence.

6.45 *Self-Dealing.*
The Parties in Interest acknowledge that to reduce and maintain a lower cost of service, the Trustee, Trust Administrator, or their Third Parties may collect available servicing and other fees from Depositories. In no case shall the receipt or collection by the Trustee, Trust Administrator or their Third Parties of direct, or indirect, fees, float payments, or payments for services provided for in this Trust Administration Agreement and the Trust Agreement be construed as Self-Dealing or a breach of duties whether such fees, float payments, and other payments are paid directly by the Trust or by Third Parties. Therefore, the Parties in Interest hereby acknowledge and consent to the Trustee having an interest in transactions involving Trust Assets and hereby consent to the conflicts of interest between the Trustee and Parties in Interest, including, but not limited to, the use, enjoyment, and risks pertaining to the Trust Assets. The Parties in Interest exonerate the Trustee and do affirmatively waive any breach of duty or conflict of interest, known or unknown, between the Trustee and the Parties in Interest including the Trustee's duty of loyalty to the Parties in Interest upon the condition that the Trustee acts in good faith with due regard for the purpose of this Trust and fees structure.

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

Notwithstanding any rule of law against Self-Dealing, divided loyalty or conflict of interest, the Trustee is specifically authorized to invest all or any portion of the Trust Assets in sponsored common funds or collective investment vehicles available through the Trustee, Trust Administrator, the Trustee's affiliate brokers and trading platforms, and to exercise all rights connected with the execution and holding of such deposits. In addition, the Trustee and the Trust Administrator are expressly authorized to engage affiliated entities to provide services to the Trust including, without limitation, brokerage, custodial and agency services. The Trustee shall not be required to reimburse or credit to the Trust the cost of such services, value of any benefits or compensation received by the Trustee or any of its affiliates in connection with such investments or services.

6.46 *Certification of Authority.*
The Trustee may require the Claimant, their Attorney, Authorized Agent or Authorized Entity to provide conclusive certification and confirmation of their authority (or right) to act in the capacity to petition for a distribution(s) from the Trust.

6.47 *Incorporation of Terms and Conditions.*
All terms, provisions, and agreements, and as may be amended from time to time, set forth in the Terms and Conditions, and Privacy Statement of the associated websites, including but not limited to www.EasternPointTrust.com, are incorporated by reference into this Trust Administration Agreement and the Trust Agreement with the same force and effect as though fully set forth therein. Any capitalized term not defined in this Trust Administration Agreement shall have the meaning ascribed to it in the Terms and Conditions and Privacy Statement.

6.48 *Incorporation of Appendices, Acknowledgements, Waivers, and Disclosures.*
All Appendices, Acknowledgements, Waivers and Disclosures which may be part of the Trust Administration Agreement or the Trust Agreement or the Terms and Conditions, including but not limited to the *Terms and Conditions* of www.EasternPointTrust.com, are incorporated by reference into the Trust with the same force and effect as though fully set forth in this Trust Administration Agreement or the Trust Agreement.

## [EXECUTION APPEARS ON THE FOLLOWING PAGE]

Ver 4-25-2022

**Pitt McGehee USAG Qualified Settlement Fund**
Created: **June 2nd, 2022**

## ARTICLE 7 - EXECUTION AND CREATION

IN WITNESS WHEREOF; the authorized officer acting for the Co-Trustees comprising the Initial Committee of Co-Trustees have set their hand to this Trust Administration Agreement inclusive of all of the attachments herewith and incorporated by this reference, and inclusion with the same force and effect as though fully set forth therein.

ACKNOWLEDGMENT OF POWER TO EXECUTE; The persons creating and signing the Trust Administration Agreement warrant they have the power and authorization to enter into this Trust Administration Agreement and that this Trust Administration Agreement is binding upon the Trust, all Parties in Interest and the Trustee.

Executed and with the Effective Date of June 2nd, 2022.

Committee of Co-Trustees

_____
        By: Glen Armand, Authorized Officer

Ver 4-25-2022

# EXHIBIT H

# Qualified Settlement Fund
# Summary

A Qualified Settlement Fund ("QSF") is a distinct type of Trust established within the meaning of Internal Revenue Code §1.468B and the associated promulgated regulations.  A QSF exists to effectuate the provisions, purposes, and intents of a Settlement Agreement, judgment or court order which is incorporated by reference into the QSF with the same force and effect as though fully set forth therein.  This QSF:

(a) is a trust established pursuant to an order of, or is approved by, a territory, possession, or political subdivision thereof, or any agency or instrumentality of a state of the United States and is subject to the continuing jurisdiction of that governing authority pursuant to §1.468B-1(c);

(b) was established to resolve or satisfy one or more related contested or uncontested claims from liability arising out of alleged liability in connection with a tort, breach of contract or violation of law;

(c) is a trust constructed and operated under the state trust laws of the Principal Place of Administration at its formation, and Trust Assets are segregated from other assets of the transferor; and

(d) pursuant to IRS Rev. Proc 93-94 is a Party to the Suit or Agreement, judgment or court order and thus has standing to receive the assignment of the Transferor's obligations.

The Trustee for the QSF holds transferred settlement obligation proceeds in the QSF until such time as it is determined how those proceeds shall be allocated amongst the Claimants and adverse claims are resolved.

The QSF assets are held in principal-protected FDIC insured accounts, providing each Claimant up to $125 million in FDIC insurance protection. The QSF receives and holds settlement proceeds, and those proceeds are not taxable to the Claimant until they are allocated, vested and distributed by the Trustee to the Claimant or on behalf of the Claimant. Additionally, while the proceeds are held by the QSF, there is no reduction in government benefits that the Claimant may be receiving or may be eligible to receive.  Upon the approval

Ver. 2-21-2020

and establishment of the QSF by the governmental authority, two documents, the Trust Agreement (whereby EPTC accepts appointment as Trustee) and the Trust Administration Agreement (which details the administrative and operational provisions relative to the QSF), are produced.  Together, these documents establish the total terms and conditions under which the QSF will operate.

## Relationship between the Settlement Agreement, Judgement or Court Order and the QSF

The QSF exists to effectuate the provisions, purposes, and intents of the Settlement Agreement, Judgement or Court Order (collectively "Settlement Terms").  The Settlement Terms are the judicially enforceable and binding terms that stipulate the economic terms of the resolution of that matter.  The Settlement Terms are under the continuing jurisdiction of the court supervising the Settlement Terms (the "Supervising Court") (which is the court that (i) is stipulated in the Settlement Terms; (ii) originally approved the Settlement Terms; or (iii) is of appropriate jurisdiction within the state in which the underlying matter originally arose).

The QSF itself is under the jurisdiction of the Governing Authority, which is the authority that established the QSF by either order or approval.  The Governing Authority has no jurisdiction over the terms of the Settlement Terms.  It is important to note that there is no conflict of jurisdiction between the Supervising Court and the Governing Authority.  Any matters relating to compliance with the Settlement Terms are exclusively adjudicated by the Supervising Court.  In the event of a conflict between the terms of provisions of the QSF and the terms of the Settlement Terms, the Settlement Terms shall control, as the primary purpose of the QSF is to effectuate the Settlement Terms. Further, in the event that the Supervising Court issues instructions to the Trustee regarding distributions, such instructions shall have supremacy and the Trustee shall act in accordance with those instructions.

## Benefits of a QSF

First, for so long as the QSF holds the settlement proceeds, those proceeds are not taxable to the Claimant and do not result in a reduction of government benefits that a Claimant may be receiving or may be eligible to receive.  The QSF, by its structure, terms, and conditions, is a tax provision (like an IRC §401K) tool that shields the Claimant(s) from constructive receipt, economic benefit, and cash equivalence until the Trustee conveys a Vested Right.  A Claimant does not possess a Vested Right in the QSF trust assets until such time as the Trustee and the Trust Administrator determines a Claimant's final allocated portion of the settlement funds

Ver. 2-21-2020

and approves, subject to the ongoing jurisdiction of the Governmental Authority, the Petition for Distribution submitted by the Claimant(s) and distributes such funds from the QSF to the respective Distributee Claimants. As a result, the funds held in the QSF do not constitute realized income and are not taxable to the Claimant, nor do they adversely impact any government benefits the Claimant(s) is receiving or may be eligible to receive.

Second, the QSF provides the Claimant with greater control of their financial planning process. Utilizing a QSF removes the Defendant from the Claimant's financial planning process, thereby preventing the Defendant from reducing settlement costs and proceeds by using a defense provided Structured Settlement. Additionally, it provides the Defendant(s) with the ability to fully fund the settlement quickly, enabling them to take an immediate tax deduction.

Third, utilizing a QSF provides a Claimant with valuable time to review and consider all of their options regarding the optimal means of receiving and utilizing their settlement proceeds.

Fourth, the QSF provides the Claimant additional time to resolve any liens or other obligations that may be pending against their settlement proceeds. In certain circumstances, this will enable lien resolution negotiations that can save Claimants vast sums, thereby increasing their net settlement.

## Disbursement Options

There are a multitude of disbursement options available to Claimants utilizing a QSF which are briefly summarized as follows:

Retain in QSF Option[i]: Settlement funds may be held for no more than twelve (12) calendar months in the QSF for planning purposes from the time there are no outstanding lien(s) or other dispute impacting the settlement funds.

Cash Option: The QSF can wire or disburse via check or funded point of sale card, all or any portion of the Claimant's settlement proceeds to the Claimant. Taxation will apply to the portions of the settlement proceeds, if any, that are vested.

Assignment Option: The Claimant can assign the settlement proceeds to a third-party assignment company in order to achieve tax-deferred investment growth. Assignment companies work with the Claimant to select appropriate investment strategies and make the

Ver. 2-21-2020

distribution(s), in whole or in part, on the future date(s) of the Claimant's choosing.  Such date(s) are often able to be changed by the Claimant as circumstances may dictate.  Taxation will apply to the portions of the settlement proceeds, if any, that are considered income, in addition to the investment income.

Structured Settlement Option: Similar to the Assignment Option above, the Claimant would assign their settlement proceeds to an insurance company (or an insurance assignment company) that would make a fixed schedule of payments. This option does not allow for changing the distribution schedule and does not afford the Claimant the opportunity to manage the underlying investments or accelerate or change the payment schedule.  Taxation will apply to those portions of the settlement, if any, that are considered income when the payment is made to the Calamint, in addition to the investment income.

Claimant Recovery Trust Option: Prior to the finalization of the settlement, a Claimant may donate their taxable claim to a specially designed trust that allows Claimants to report only their share of the recovery as taxable income.  Given that a portion of the proceeds may be owed as attorney fees, this strategy can substantially increase the Claimant's net after-tax recovery, particularly in high tax states.  Taxation will only occur and apply to the Claimant's portion of the settlement and any investment income.

Other Trust Options: The Claimant may create a Settlement Protection Trust or a Special Needs Trust.  Both of these trusts have asset protection features that will protect the trust assets from claims of creditors and ex-spouses.  A Special Needs Trust has the additional benefit of preserving the Claimant's eligibility for government benefits.  Taxation will only apply to the portion of the settlement, if any, that is considered income and is transferred into the trust.

---

[i] QSFs are not meant to operate as multiyear long-term deferral plans.  In general, settlement proceeds may remain in a QSF for up to twelve (12) calendar months from the time there is no lien, or other dispute impacting the settlement proceeds.  While this is not stipulated within IRC §468B or the associated regulations, discussions with the IRS, as well as the opinions of respected tax attorneys, confirm that twelve (12) months is considered to be a reasonable planning period.  Accordingly, EPTC will not hold settlement proceeds in a QSF for more than twelve (12) months from the time there is no lien or other dispute impacting settlement proceeds.

Ver. 2-21-2020

# EXHIBIT I

| From: | Support EPT <support@easternpointtrust.com> |
| Sent: | Friday, June 10, 2022 9:22 AM |
| To: | mcrosby@ringlerassociates.com |
| Subject: | Initial QSF funding has been received |



# Monique, QSF06022201 Qualified Settlement Fund has received its initial funding.

Initial funding has been received and processed. Balance and statements, investments, account activity, and more, is now available via the client dashboard.

Please note

Should you have any questions, we can be reached between 9AM and 4PM EST by phone or email.

Regards,

Eastern Point Trust Company

(855) 222-7513

trustprocessing@easternpointtrust.com

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, is confidential and may be legally privileged, confidential and protected from disclosure. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it. This email and its contents are not a legally binding contract.

The content herein is provided, and limited to, information and descriptions of the features and benefits of our services, products, and the requirements of the trustee when applicable. This content is not intended to be investment or legal advice, and should not be constructed as investment or legal advice. We are, not a law firm or investment advisor and do not act as your lawyer or your investment advisor. As such, we provide no legal or investment guidance or opinion on the matter(s) contained herein. Seek the advice of an attorney or registered investment advisor if you have such questions.

Fiduciary services are only offered in the jurisdictions where valid to offer such services. Nothing herein, nor via the Trust's operation, shall be regarded as an offer to sell or as a solicitation of an offer to buy any financial product; and shall not be considered a solicitation or offer to buy or sell any security, future, option or other financial instrument or an offer to provide any investment advice or service to any person in any jurisdiction.

We reserve the right to monitor, review and retain the content of all email communications sent or received.

1

This communication is subject to important terms and conditions available at
https://www.easternpointtrust.com/emaildisclaimer

This communication is subject to important terms and conditions available at
https://www.easternpointtrust.com/emaildisclaimer

# EXHIBIT J

**Eastern Point**
Trust Company®

# QSF Petition for Distribution of Attorney Fees

This form is for a single distribution being wired to a single bank account OR a single check to be mailed to one location.
All sections must be completed in their entirety. Modifications to this form are strictly prohibited.

## SECTION A:        IDENTIFICATION

Date of Request:        06/13/2022

EPTC QSF Account#:        **FRCP 5.2**8544

QSF Trust Name:        EPTC FBO-Pitt McGehee USAG Qualified Settlement Fund
(Legal name of the QSF)

Recipient of Funds:        Pitt McGehee Palmer Bonanni & Rivers PC

Submitter Name:        Renee Ricken

Submitter Phone:        248-398-9800

Submitter Email:        rricken@pittlawpc.com

## SECTION B:        FEES

Any/all distribution fees associated with this request should be (select only one):

- ⦿  Deducted from the total amount requested to be wired or sent via check
- ◯  Deducted from the QSF Account (not from this outgoing distribution)
- ◯  Deducted from a QSF Escrow Account
- ◯  Invoiced

If this is the final distribution, all outstanding fees will be satisfied following whichever fee payment method is elected above.

## SECTION C:        CHECK INSTRUCTION

Mail to:        _____

Address:        _____

City: _____   State: _____   Zip: _____

Memo Field: _____

**Eastern Point**
Trust Company®

## SECTION D:          DELIVERY INSTRUCTIONS

Please complete the following section if the mailing address differs from the address listed in Section C.

Mail to:          _____

Address:          _____

City:          _____     State: _____     Zip: _____

Please choose from one of the following methods of delivery. Note, standard USPS is included in the distribution fee; however, electing for Expedited Shipping will result in additional charge of $25, plus courier costs. The fee for Expedited Shipping will be satisfied according to the fee payment method selected in Section B.  All checks $10,000 or greater will automatically be sent via Expedited Shipping to ensure tracking.

◉  Standard USPS

◯  Expedited Shipping (Please note items may not be overnighted to a P.O. Box)

## SECTION E:          WIRING INSTRUCTIONS

Receiving bank name:          Level One Bank

Receiving bank address:          32991 Hamilton Ct

Receiving bank phone number:          248-865-1300

Receiving bank account name:          Pitt McGehee Palmer Bonanni & Rivers PC

Receiving bank account number:          FRCP 5.2 0900

Receiving bank routing number          FRCP 5.2 4310

Receiving bank account address:          117 W 4th Street, Suite 200

Receiving bank account city:          Royal Oak          State: MI          Zip: 48051

Further credit instructions (if applicable): _____

## Please do not attach wiring instructions



---

## SECTION F:    PETITION FOR DISTRIBUTION OF ATTORNEY FEES

<u>Note: This is a single check/wire distribution form. Petitioned distributions shall be mailed to the single bank address listed in Section C (or Section D if applicable) or wired to the single bank account listed in Section E.</u>

| **Amount of this Taxable Request** | $ 325,103.80 |
|---|---|

## IMPORTANT NOTE: A W9 IS REQUIRED TO FULFILL THIS PETITION.
## (Attorney Fees are always taxable).

**Important: Corrections to this form after this request has been processed will result in additional hourly fees to correct the associated tax reporting to the IRS**

---

## SECTION G:    AUTHORIZATION

1) As petitioner, I attest, acknowledge and agree that:

   a.   I am an authorized officer, authorized agent, or authorized entity (as defined in the Trust identified in Section A of this form) and have the authority and power to make such petition requests on behalf of the claimant beneficiary(ies);

   b.   By executing this petition request I acknowledge that I have read and fully completed the petition following its instructions and I acknowledge and agree to its terms and conditions;

   c.   This request conforms to the terms of the above-referenced Trust, the associated settlement agreement and court orders, and my beneficial rights under the Trust and settlement;

   d.   I have sought and received competent legal counsel and tax advice related to this request and its terms and conditions. If I am not a claimant beneficiary, I have a full and complete knowledge and understanding of the potential tax implications of this petition to the claimant beneficiary(ies);

   e.   I understand that it is my responsibility to notify immediately the Trustee or Trust Administrator of any changes or conditions that may affect the operation of the Trust or the processing of this petition request, including the death of a claimant beneficiary(ies), and at this time there have been no such changes and no such conditions exist;

   f.   This petition request is for the sole benefit of claimant beneficiary(ies) and no other;

   g.   The information contained herein is accurate, complete and is not subject to future modification or reversal; and

   h.   I petition the Trustee and Trust Administrator to execute the form as presented, and the Trustee and Trust Administrator have no duty to: (i) audit the information or (ii) detect any errors or failure of intent.

2) The Trustee, Trust Administrator and their associated Third Parties are indemnified, released and held harmless from

---

Rev. 02.17.22                                           Page 3 of 6                                           Form 2101



any claim arising from a claimant beneficiary's current or future loss of benefits, tax consequence or reduction of income, which results from an error, omission or misrepresentation of facts herein on which the Trustee and/or Trust Administrator relied as provided for in the Trust and this request.

3)   The petitioner represents and warrants that no other person or entity has, or has had, any interest in any claims, demands, liens or obligations against the Trust and that the petitioner, or entity on whose behalf they are acting, has the free and clear right and authority to execute a petition and to receive the sums from the Trust thereby requested. Notwithstanding the foregoing, the petitioner specifically authorizes the Trustee to conduct its own lien search (including a search as to judgments, pending litigation, bankruptcy, and tax matters) in form and substance reasonably satisfactory thereto, for any lien(s), including state and federal tax liens, which may have a priority relative to the assets of the claimant beneficiary(ies), as well as liens filed pursuant to the Uniform Commercial Code as in effect in each jurisdiction in which filings or recordations under the Uniform Commercial Code should be made to evidence or perfect security interests in all assets of such claimant beneficiary(ies), indicating among other things that the assets of each such claimant beneficiary(ies)are free and clear of any lien. In the event the assets of claimant beneficiary(ies) are not free and clear of any lien, the petitioner hereby acknowledges and agrees that any such liens shall be recognized as a priority claim, and the Trustee shall reserve funds as necessary to resolve the lien, and the distribution requested herein may be reduced by said lien amount.

4)   If the Trustee, Trust Administrator and/or their associated Third Parties receives, as part of this petition, instructions from a claimant beneficiary (or a claimant beneficiary's Counsel or Agent) regarding the transmittal of funds, the Trustee shall follow the claimant beneficiary's instructions (or the instructions of the claimant beneficiary's Counsel or Agent) and the Trustee and its Third Parties shall have no liability for any actions taken in accordance with said instructions received. The obligation of the Trustee, Trust Administrator and their associated Third Parties to vest and  make payment(s)shall be fully discharged upon wire transfer or the mailing of a valid check, in the amount of such payment to the payee named in this release, at the designated address of the Payee, or their designated depository agent.

5)   Further, the Trustee, Trust Administrator and their associated Third Parties may rely solely upon the verbal and written representations and warrants made by the claimant beneficiary (or the claimant beneficiary's Counsel or Agent) without any duty or obligation of the Trustee or its Third Parties to conduct any additional audit, investigation or inquiry  to determine if such representations and warrants are fraudulent, untrue, inaccurate, coerced, incomplete, or inconsistent with tax laws and doctrine. Further, the Trustee, Trust Administrator and their associated Third Parties have no duty to detect theft, conversion, fraud, inconsistency with tax laws and doctrine, or fraudulent intent as it relates  to  the representations and warrants made by the claimant beneficiary (or the claimant beneficiary's Counsel or their Agent) and may rely solely on the representations made herein.

6)   The Trust, its claimant beneficiary(ies), and all Parties in Interest completely release, hold harmless, indemnify and forever discharge the Trustee, Trust Administrator and their associated Third Parties from any and all past, present or future claims, demands, obligations,  actions, causes of action, rights,  damages, costs, losses of service, expenses, tax consequences, and compensation of any nature whatsoever, whether based on a tort, contract, fiduciary duty or other theory of recovery, which the Trust, claimant beneficiary or Parties in Interest now have, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of the Trustee, Trust Administrator and their associated Third Parties fulfillment of the payment under the instructions of this request or their reliance on representations and warrants which may be fraudulent, untrue, inaccurate, coerced, inconsistent with tax laws and doctrine, or incomplete.

7)   This release and discharge shall apply to all Trustees, Trust Administrators and their associated Third Parties, and all of the aforementioned's officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors, and successors in interest, heirs and assigns, and all other persons, firms, or corporations with whom any of the former have been, are now, or may hereafter be affiliated.



8)      In consideration of the payment set forth in this QSF Distribution Request, the petitioner hereby, in addition to and not to the exclusion of any provisions of the Trust, completely releases, holds harmless, indemnifies and forever discharges the Trustee and Trust Administrator from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of service, expenses,  and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which the petitioner, or entity on whose behalf they are acting, now has, or which may hereafter accrue or otherwise be acquired, on account of, or may, in any way, grow out of the establishment and operation of the Trust or fulfillment of the payment  under  the instructions of this request.

9)      All terms, provisions, and agreements set forth in the referenced QSF Trust are incorporated by reference into this instrument with the same force and effect as though fully set forth herein. Any capitalized term not defined herein shall have the meaning ascribed to it in the QSF Trust.

10)     I acknowledge and agree that, pursuant to the terms of the Trust and the Electronic Signatures in the Global and National Commerce Act of 2000 that any electronic, digital or facsimile signature of this form shall have the same legal effect, validity, or enforceability as a "wet" or "live" signature. The Parties in Interest agree that the use of an electronic, digital or facsimile signature shall not be a basis for contesting the validity or accuracy of this this petition request.

11)     Pursuant to §1.468B-4 Taxability of distributions to claimants:

"Whether a distribution to a claimant is includible in the claimant's gross income is generally determined by reference to the claim in respect of which the distribution is made and as if the distribution were made directly by the transferor. For example, to the extent a distribution is in satisfaction of damages on account of personal injury or sickness, the distribution may be excludable from gross income under section 104(a)(2). Similarly, to the extent a distribution is in satisfaction of a claim for foregone taxable interest, the distribution is includible in the claimant's gross income under section 61(a)(4)."

As such, a qualified settlement fund must file information returns for distributions to claimants (including attorney's fees and costs) if any transferor to the fund would have been required to file if the transferor had made the distributions directly to the claimants (including attorney's fees and costs).

A QSF is considered in a trade or business for information reporting purposes and may be required to file Form 1099-MISC or other information returns. For payments made by the fund on behalf of a claimant or transferor, the fund is subject to these same rules and may have to file information returns for payment to third parties. For information reporting purposes, a payment made by the fund on behalf of a claimant or transferor is considered a distribution to the claimant or transferor and is also subject to information reporting requirements.

The same filing requirements, exceptions, and thresholds may apply to qualified settlement funds as apply to any other payer. That is, the fund must determine the character of the payment (for example, interest, attorney fees, fixed or determinable income, or gross proceeds) and to whom the payment is made (for example, law firm, corporation or individual).

## Important note:  Standard processing cutoff is 1:00 pm EST.  For timely processing, please submit this form to <u>distributions@easternpointservices.com</u>.

## Please call 855-222-7513 for questions or exceptions.

### I ACKNOWLEDGE AND ACCEPT THAT ONLY THE INFORMATION CONTAINED IN THIS FORM WILL BE USED TO PROCESS THE DISTRIBUTION (Sign Below)

Printed Name:

| Renee M Ricken |

Signature: **Renee Ricken**
Digitally signed by Renee Ricken
DN: cn=Renee Ricken, o, ou,
email=rricken@pittlawpc.com, c=US
Date: 2022.06.13 15:14:37 -04'00'
Date: 06/13/2022

Printed Name of Additional Required Approving Authority (if applicable):

| |

Signature:_____Date: _____

---

**_For QSF Trustee and QSF Administrator Use Only_**

The QSF Trustee and QSF Administrator does hereby approve this petition request and does so grant this Vested Right under the terms and conditions of the above referenced QSF.

On behalf of QSF Trustee and QSF Administrator:

Trust Officer Printed Name:

| |

Trust Officer Signature:_____Date: _____