UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PITT, McGEHEE, PALMER, BONNANI
& RIVERS, P.C.,

               Plaintiff,

v.

EASTERN POINT TRUST COMPANY
and EASTERN POINT SERVICES,
INC.,

               Defendants,

_____/

Case No. 23-cv-10166

Paul D. Borman
United States District Judge

## OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS (ECF NO. 15) AND
## DENYING DEFENDANT EASTERN POINT TRUST COMPANY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6) (ECF NO. 13) AND DEFENDANT EASTERN POINT SERVICES, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6) (ECF NO. 14) AS MOOT

Plaintiff Pitt, McGehee, Palmer, Bonanni & Rivers, P.C. brings this action against Defendants Eastern Point Trust Company and Eastern Point Services, Inc., the firms that, at Plaintiff's request, established and administered a qualified settlement fund for the purpose of holding and distributing settlement proceeds and attorney fees arising from the resolution of claims in another matter. Plaintiff seeks

1

to recover approximately $1.6 million dollars in attorney fees earned by the Firm that were lost in a data breach of its statutory qualified settlement fund administered by Defendants.

Now before the Court is Defendants Eastern Point Trust Company and Eastern Point Services, Inc.'s Motion to Dismiss on *Forum Non Conveniens* Grounds (ECF No. 15). Plaintiff filed a Response in opposition, and Defendants filed a Reply brief. (ECF Nos. 17, 23.)

In addition, Defendant Eastern Point Trust Company has filed a Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (ECF No. 13), and Defendant Eastern Point Services, Inc. filed a Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (ECF No. 14). Plaintiff filed a combined Response in opposition to those two motions (ECF No. 18), and Defendants filed separate Reply briefs in support of their respective motions. (ECF Nos. 21, 22.)

The Court held a hearing on Defendants' Motion to Dismiss on *Forum Non Conveniens* Grounds on November 13, 2023, at which counsel for Plaintiff and Defendants appeared.

For the reasons that follow, the Court GRANTS Defendants' Motion to Dismiss on *Forum Non Conveniens* Grounds, and DISMISSES this action

WITHOUT PREJUDICE. The Court FURTHER DENIES AS MOOT Defendants'
two Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.   Background

#### 1.      The parties

Plaintiff Pitt, McGehee, Palmer, Bonanni & Rivers, P.C. (Pitt McGehee) is a
law firm incorporated in Michigan with its principal place of business in Michigan.
(ECF No. 9, First Amended Complaint (FAC) ¶ 1.)

Defendant Eastern Point Trust Company (EPTC) is a trust company that offers
a variety of qualified settlement fund (QSF), escrow, and trust administration
services. (ECF No. 13-2, Declaration of Samuel Kott, ¶ 11, PageID.432, citing
EPTC's website, www.easternpointtrust.com.) EPTC is incorporated in and
maintains its principal place of business in the U.S. Virgin Islands. (*Id.* ¶ 5,
PageID.431.)

Defendant Eastern Point Services, Inc. (EPS) is a subsidiary and affiliate of
EPTC and operates, in part, as an employee leasing company. (ECF No. 14-2,
Declaration of Joseph Sharpe, ¶ 5, PageID.678.) EPS performs ministerial services
associated with the administration of QSF funds on behalf of EPTC from EPS's

offices in Warrenton, Virginia. (*Id.*) EPS is incorporated in and maintains its principal place of business in Florida. (*Id.* ¶ 7, PageID.678.)

### 2. Plaintiff establishes a QSF with EPTC

Plaintiff Pitt McGehee retained a third-party broker, Ringler Associates, Inc. (Ringler), to establish a QSF to distribute settlement proceeds and attorney's fees Pitt McGehee earned in the matter of *In re: USA Gymnastics, Chapter 11*. (ECF No. 13-2, Kott Decl. ¶¶ 14-15, PageID.433) (ECF No. 17-2, Declaration of Pitt McGehee's Megan Bonanni, ¶ 4, PageID.771) (ECF No. 9, FAC ¶ 12.)

### a. Pitt McGehee's QSF Application

On or about June 2, 2022, at Pitt McGehee's direction, Ringler Settlement Coordinator Monique Crosby submitted an application to EPTC on behalf of Pitt McGehee to have a QSF created, approved, and registered by a governmental entity in Virginia as a statutory trust, pursuant to 26 C.F.R. § 1.468B-1 *et seq.*, to receive funds withdrawn from the Master QSF for the bankruptcy litigation in *In re: USA Gymnastics, Chapter 11*. (ECF No. 13-2, Kott Decl. ¶¶ 21-22, PageID.434, citing Ex. C, QSF Application, PageID.468-71) (ECF No. 17-2, Bonanni Decl. ¶ 4 ("I asked Ringler to create a 'qualified settlement fund' through [EPTC].")) (ECF No. 9, FAC ¶ 12.)

4

To access and complete the QSF application, Crosby first created an EPTC account via the www.easternpointtrust.com website. A banner that runs across the top of EPTC's website (pictured below) states: "By using this site, you agree to our Privacy Policy and Terms of Use." (ECF No. 13-2, Kott Decl. ¶ 13, PageID.432.)

> By using this site, you agree to our **Privacy Policy** and our **Terms of Use**.

The "Privacy Policy" and "Terms of Use" documents are in blue and hyperlinked to the banner. The bottom of EPTC's website contains the following disclosure: "Fiduciary and trustee services are only offered and performed by Eastern Point Trust Company … pursuant solely to the terms of the associated governing documents." (*Id*. ¶ 12, PageID.432.)

The "Terms of Use" hyperlink takes the user to a document titled "EPTC Platform & Website Terms and Conditions," which governs use of and access to the "Platform, all associated or linked EPTC websites *and associated trust administration and trustee services, or related services* offered on or through the same." (ECF No. 13-2, Ex. B, Terms of Use, PageID.444 (emphasis added).) The "Platform" is defined as "includ[ing], but [] not limited to, the websites, www.easternpointtrust.com … and any linked or affiliated websites, including *any content, functionality, and services offered on or through the same*[.]" (*Id.* (emphasis

5

added).) The Terms of Use require the parties to submit "any disputes" that "arise out of or in connection with the Platform and Terms of Use" to the Fauquier County Circuit Court in Virginia. (*Id*. PageID.467)

To create an account, Crosby visited the "Create User Account" page of the EPTC website and entered a name and email address and provided information about the nature of the services sought. (ECF No. 13-2, Kott Decl. ¶¶ 15-17, PageID.433.) As shown below, that "Create User Account" page includes the following statement directly above the "NEXT STEP" action button: "By clicking the 'NEXT STEP' action button below to access the Platform, I reaffirm my agreement to the Terms and Conditions and Privacy Statement." (*Id.*)

As with the banner on the website, the "Terms and Conditions" and "Privacy Statement" are hyperlinked to the respective documents. (*Id.* ¶ 18, PageID.434.) Thus by creating the account, Crosby reaffirmed agreement to the Terms of Use as the agent of Pitt McGehee.

After creating Pitt McGehee's account, Crosby next submitted an application to EPTC to create a QSF on behalf of Pitt McGehee for settlement proceeds to be drawn off from the Master QSF in Indiana, The USA Gymnastics Trust. (*Id.* ¶¶ 21-22, PageID.434, citing Ex. C, QSF Application, PageID.468-71.) The QSF Application identifies Pitt McGehee as the law firm representing the claimants receiving settlement funds under the QSF and identifies Pitt McGehee's Megan Khoury as the individual responsible for invoices related to QSF establishment and distributions. (ECF No. 13-2, Ex. C, QSF Application, PageID.468-71.) The QSF Application also lists several individuals from Ringler and Pitt McGehee as "authorized users" of Pitt McGehee's account with EPTC, and for each such individual, Crosby acknowledged:

> *I understand and acknowledge that the individuals to whom I am granting online access will have the ability to petition the Trust for Distributions, and I attest that ... **such individuals are bound by the terms of the Trust as well as EPTC's then current Terms and Conditions, policies and procedures**.*

(*Id.* (emphasis added).)

7

**b. Creation of the QSF**

Following Ringler's submission of the QSF Application on Pitt McGehee's behalf on June 2, 2022, EPTC reviewed the Application to ensure its compliance with 26 C.F.R. § 1.468B-1, and then submitted the Application to the Virginia governmental authority for its review and approval. (ECF No. 13-2, Kott Decl. ¶¶ 23-24, PageID.434-35.) EPTC sent Crosby an email that same day with the subject line: "Congratulations your QSF submission was successful" and explaining that "following the approval process, you will receive an email indicating your trust is established and ready to receive initial funding." (ECF No. 13-2, Ex. D, 6/2/2022 Email, PageID.473-74.) The governmental authority, located in Fauquier County, Virginia, subsequently created, approved, and registered the QSF as a statutory trust. (ECF No. 13-2, Kott Decl. ¶ 24, PageID.435.)

EPTC then sent Crosby a second email on June 2, 2022, with the subject line "Your QSF has been approved and fully established," and explaining that the Fund was approved, established, processed, and is ready for funding. (*Id.* ¶¶ 25-26, PageID.435-36, citing Ex. E, 6/2/2022 Email, PageID.476-77.) This confirmation email included the following attachments: (1) the Pitt McGhee USAG QSF Trust Agreement dated June 2, 2022 (the "Trust Agreement"), attached at Ex. F, PageID.479-507; (2) the Pitt McGhee USAG Qualified Settlement Fund Trust

8

Administration Agreement dated June 2, 2022 (the "Trust Administration Agreement"), attached at Ex. G, PageID.509-66; (3) a QSF Settlement Fund Summary, attached at Ex. H, PageID.568-71; and (4) other documents related to funding and wiring instructions. The Trust Agreements expressly incorporate the Terms of Use and refer to the website, www.EasternPointTrust.com (*see* ECF No. 13-2, Ex. F, Trust Agreement ¶ 2.29, PageID.495; Ex. G, Trust Admin. Agreement ¶ 6.47, PageID.565)), and the QSF Summary explains that the Trust Agreements "establish the total terms and conditions under which the QSF will operate." (ECF No. 13-2, Ex. H, QSF Summary, PageID.568-69.) EPTC's June 2, 2022, email stated that "[a]ll associated trust documents, funding, and wiring instructions, and notices, have been attached, [and] are available for access 24/7 via your Documents section of your client's portal trust block." (ECF No. 13-2, Ex. E, 6/2/2022 Email, PageID.476.)

On or about June 8, 2022, Pitt McGehee representative Renee Ricken created another EPTC user account with the Pitt McGehee email address "rricken@pittlawpc.com." (ECF No. 13-2, Kott Decl. ¶ 28, PageID.436.) To create the account, Ricken followed the same process as Crosby described above, which required consenting to the Terms of Use by clicking on a box with the words "NEXT STEP" that appeared directly beneath the following sentence: "By clicking on the

'NEXT STEP' action button to access the Platform, I reaffirm my agreement to these Terms and Conditions and Privacy Statement." (*Id.*) The hyperlinked "Terms and Conditions" directed Ricken to the EPTC "Platform and Website Terms and Conditions" discussed above. (*Id.*)

On June 10, 2022, EPTC sent Crosby an email with the subject line "Initial QSF funding has been received," and explaining that the initial funding had been received and processed and that the balance of the Fund, statements, investments, and account activity can be viewed on the client dashboard through EPTC's website. (ECF No. 13-2, Kott Decl. ¶ 30, PageID.436, citing Ex. I, 6/10/2022 Email, PageID.573-74.)

### c. Pitt McGehee repeatedly accesses the QSF

After the QSF was created and funded, Pitt McGehee and its agent Ringler logged into their online EPTC account(s) at least 118 times. (ECF No. 13-2, Kott Decl. ¶ 33, PageID.437.) EPTC's login portal pictured below states, directly above the "LOG IN" action button, that "By clicking the 'LOG IN' action button below to access the Platform, I reaffirm my agreement to these Terms and Conditions and Privacy Statement." (*Id.* ¶¶ 34-35, PageID.437.)

10

The Trust Agreement states that distribution of funds from the QSF requires submission of a "Petition for Distribution Form," which form is available on EPTC's website, along with instructions for its completion. (ECF No. 13-2, Ex. F, Trust Agreement, PageID.507.) The Trust Agreement states that the methods of submission of the Petition for Distribution Form, as also detailed on the Petition itself, are by mail, email, and/or fax. (*Id.*) Between June 13 and November 7, 2022, Pitt McGehee executed and emailed at least 40 Distribution Petition Agreements to Defendant EPS, pursuant to the terms of the Trust Agreements. (ECF No. 13-2, Kott Decl. ¶ 37, PageID.438, referring to Ex. J, 6/13/2022 Distribution Petition Agreement, PageID.576-81.) Each Distribution Petition Agreement executed by Pitt

11

McGehee provides: "All terms, provisions, and agreements set forth in the QSF Trust are incorporated by reference into this instrument with the same force and effect as though fully set forth herein." (ECF No. 13-2, Ex. J, 6/13/2022 Distribution Petition Agreement, ¶ 9, PageID.580.)

### 3. Third-party cybercriminals target the QSF

Pitt McGehee alleges that "[b]eginning on or about July 26, 2022, an unknown third party began to send fraudulent emails to EPTC impersonating an employee of the Firm in an attempt to induce EPTC to make distributions from the QSF." (ECF No. 9, FAC ¶ 37.) Pitt McGehee claims that "[a]s a result, between July 28 and August 16, [2022,] EPTC wired millions of dollars from the QSF to the third party fraudster." (*Id.* ¶ 40.) Pitt McGehee alleges that "the Firm and EPTC worked with law enforcement to successfully retrieve certain of the unauthorized transfers in an effort to mitigate the Firm's damages," but that "funds in the amount of $1,646,342.02 could not be retrieved despite reasonable efforts to mitigate the Firm's losses and these monies, which belong to the Firm, have been lost." (*Id.* ¶¶ 42-43.)

Pitt McGehee claims that EPTC's breaches of fiduciary duty caused the Firm substantial loss because EPTC failed to have adequate safeguards and reasonable security policies and procedures to protect the QSF against this attack, such as

12

requiring multi-factor authentication or encryption of emails seeking distribution of the QSF funds. (*Id.* ¶¶ 38-39, 47.)

Defendants EPTC and EPS respond that "Pitt McGehee failed to monitor its systems and account activity which facilitated the third-party criminals' breaches of Pitt McGehee's inadequately secured systems and use of Pitt McGehee's digital signatures, email accounts, and client data to get distributions from the QSF." (ECF No. 15, Defs. Mot., PageID.706.) Defendants state they had "no dominion, access, or control" over Pitt McGehee's systems. (*Id.*)

### B.    Procedural History

On January 23, 2023, Pitt McGehee filed its initial Complaint in this matter against Defendant EPTC only. (ECF No. 1, Compl.) Pitt McGehee alleged claims for: (1) Breach of Fiduciary Duty; (2) Negligence; (3) Gross Negligence; (4) Negligent Misrepresentation; (5) Breach of Contract Implied in Fact; and (6) Liability under M.C.L. § 440.4702. (*Id.*)

In lieu of an answer, Defendant EPTC filed two motions to dismiss: (1) Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) (ECF No. 6); and (2) Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 7).

Plaintiff responded by filing a First Amended Complaint against Defendant EPTC and adding Defendant EPS, alleging the following claims against both

13

Defendants: (1) Breach of Fiduciary Duty; (2) Negligence; (3) Gross Negligence; (4) Negligent Misrepresentation; (5) Intentional Misrepresentation; and (6) Declaratory Judgment. (ECF No. 9, FAC.) Defendant EPTC then filed a notice withdrawing its two prior motions to dismiss. (ECF No. 11.)

On May 26, 2023,  Defendants EPTC and EPS filed three motions to dismiss: (1) Defendant EPTC's Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (ECF No. 13); (2) Defendant EPS's Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (ECF No. 14); and (3) Defendants EPTC and EPS's Motion to Dismiss on *Forum Non Conveniens* Grounds (ECF No. 15.) All three motions are fully briefed.

## II.  LEGAL STANDARD

"Where, as here, 'a forum-selection clause indicates that a matter should be heard by a state or foreign court, then *forum non conveniens* is the appropriate method of enforcement.'" *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 214 (6th Cir. 2021) (quoting *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019)). The principles of *forum non conveniens* are outlined in *Atlantic Marine Construction Company v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013). The United States Supreme Court explains that courts evaluate a *forum non conveniens* motion for dismissal in the

14

same way they would evaluate a motion for transfer under 28 U.S.C. § 1404(a).

*Atlantic Marine*, 571 U.S. at 62. That statute reads:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

 "[B]oth § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard." *Atlantic Marine*, 571 U.S. at 61. These factors include both the convenience of the parties and various public-interest considerations, as outlined in *Piper Aircraft v. Reyno*, 454 U.S. 235 (1981). A Court should generally weigh ease of access to sources of proof, availability of compulsory process for unwilling witnesses, and cost of obtaining the attendance of willing witnesses – the private interest factors. *Piper Aircraft*, 454 U.S. at 235. It should also consider the administrative difficulties that flow from court congestion, the local interest in having localized controversies decided at home, and the interest in having the trial of a diversity case in a forum that is at home with the law – the public interest factors. *Id.* Courts must also give proper weight to the plaintiff's choice of forum. *Id.*

The Sixth Circuit Court of Appeals states that "[a] typical forum-non-conveniens analysis [in a case not involving a forum selection clause] has three components: (1) the court 'determines the degree of deference owed the plaintiff's forum choice,' and then asks if the defendant has met its burden of (2) showing an 'adequate alternative forum,' and (3) showing that 'the plaintiff's chosen forum is unnecessarily burdensome based on' a balancing of public-interest and private-interest factors." *Lakeside Surfaces*, 16 F.4th at 214-15 (quoting *Boling*, 771 F. App'x at 568)).

The "calculus changes," however, where there is a valid and enforceable forum-selection clause "which represents the parties' agreement as to the proper forum." *Atlantic Marine*, 571 U.S. at 63 (citation omitted). This is because the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* (quoting *Stewart Orgs., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J. concurring)).

*Atlantic Marine* provides that a valid forum-selection clause forces district court judges to adjust their § 1404(a)/*forum non conveniens* analysis in three ways, which, as a practical matter, requires such clauses to be given weight in "all but the most exceptional cases." *Atlantic Marine*, 571 U.S. at 63. First, the plaintiff's choice

16

of forum "merits no weight" and, "as the party defying the forum selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the court should not consider arguments about the parties' private interests. *Id.* at 63-64. "As a consequence, a district court may consider arguments about public-interest factors only," treating the private interest factors as "weigh[ing] entirely in favor of the preselected forum." *Id.* at 63-64. "The onus falls on the plaintiff to show that the public-interest factors defeat dismissal, and they rarely do." *Lakeside Surfaces*, 16 F.4th at 215. Third, the choice-of-law rules of a transferor court will not follow the case to a transferee court if there is a valid forum-selection clause. *Atlantic Marine*, 571 U.S. at 64-65.

Federal courts sitting in diversity jurisdiction interpret forum-selection clauses not according to state contract law, but according to federal common law rules of contract interpretation, *Wong v. Partygaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009), which interprets forum-selection clauses with ordinary contract principles. *In re Delta America Re Ins. Co.*, 900 F.2d 890, 892 (6th Cir. 1990).

Finally, a determination to dismiss a case based upon *forum non conveniens* is "committed to the sound discretion of the trial court" and deserves substantial deference. *Piper Aircraft Co.*, 454 U.S. at 257 (citation omitted).

17

## III.  ANALYSIS

### A. The Court May Consider Defendants' *Forum Non Conveniens* Motion before Deciding Defendants' Motions to Dismiss for Lack of Personal Jurisdiction

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of the claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-102 (1998)). However, rulings on transfer of venue or *forum non conveniens* motions are not rulings on the merits, but rather "a determination that the merits should be adjudicated elsewhere[,]" and "[a] district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 431-32.  Thus, *Sinochem* "firmly establishes that certain non-merits, non-jurisdictional issues may be addressed preliminarily, because 'jurisdiction is vital only if the court proposes to issue a decision on the merits.'" *Public Citizen v. U.S. Dist. Ct. for D.C.*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quoting *Sinochem*, 549 U.S. at 431-32) (other internal citations, quotation marks, and alterations omitted).

18

The Court finds that considerations of convenience, fairness, and judicial economy merit addressing Defendants' *forum non conveniens* motion before deciding Defendants' jurisdictional motions.

### B. Whether the Forum Selection Clause in the EPTC Terms of Use is Applicable, Mandatory, Valid, and Enforceable

Because the presence of a valid forum selection clause alters the type of *forum non conveniens* analysis the Court must apply, the Court must first determine whether the forum selection clause in the EPTC Terms of Use is applicable to the claims at issue in this case, mandatory, valid, and enforceable, before balancing the *forum non conveniens* public, and if necessary, private interest factors. *Lakeside Surfaces*, 16 F.4th at 215 & n.3 (collecting cases applying a similar two-step approach in post-*Atlantic Marine* decisions). An answer of "yes" to all of the contract questions above – whether the clause is applicable, mandatory, valid, and enforceable – means that *Atlantic Marine's* modified *forum non conveniens* analysis applies and Plaintiff bears the burden of showing that the public interest factors weigh heavily against dismissal. *Id.* "An answer of 'no' to any of those contract questions means the traditional *forum non conveniens* analysis applies instead." *Id.*

Defendants argue that the forum selection clause in the Terms of Use and incorporated into the Trust Agreements gives the Fauquier County Circuit Court

19

exclusive jurisdiction to hear any dispute arising from or in connection with the use of the Platform and the services provided by Defendants.

Pitt McGehee argues that it is not bound by the forum selection clause in the Terms of Use because its relationship with Defendants is solely fiduciary and not based in contract, and the forum selection clause is not applicable to Pitt McGehee's claims in this lawsuit, mandatory, valid, or enforceable.[1]

### 1. Whether the forum selection clause is applicable

Defendants contend that Pitt McGehee repeatedly consented to the Terms of Use, which are incorporated into the Trust Agreements, and thus has consented to the exclusive jurisdiction of the Fauquier County Circuit Court as set forth in the forum selection clause.

---

[1] In a footnote in its Response brief, Pitt McGehee questions Defendant EPS's right to enforce the forum selection clause in the Terms of Use, arguing that EPS is not directly named in the Terms of Use and Pitt McGehee did not sign an agreement with EPS. (ECF No. 17, Pl. Resp. fn.4, PageID.755.) Pitt McGehee then nevertheless asserts that its arguments in its Response brief relate to both EPTC and EPS. (*Id.*) Defendants assert that the Terms of Use expressly apply to EPTC's "Affiliates," and that EPS is an affiliate of EPTC as that term is used in the Terms of Use and the Trust Agreements. (ECF No. 15, Defs. Mot., PageID.702) (ECF No. 14-2, Sharpe Decl. ¶ 22, PageID.681 ("EPS is an 'Affiliate' of EPTC as that term is used in the Terms of Use and the Trust Agreements.").) Pitt McGehee has offered no evidence to the contrary and its perfunctory assertion in fn. 4 of its Response brief fails to rebut Defendants' evidence that EPS is an "Affiliate" of EPTC. The Court finds that the Terms of Use and Trust Agreements apply to and are enforceable by both EPTC and EPS, as an "Affiliate" of EPTC.

Pitt McGehee argues that it never gave informed consent to the terms of the contracts which contain the forum selection clause and that its relationship with Defendants is only fiduciary and not based in contract.

### a. Whether Pitt McGehee Consented to the Terms of Use containing the Forum Selection Clause

As discussed above, EPTC expressly required users of its Platform, including Pitt McGehee and its agent Ringler, to accept its Terms of Use to access the EPTC Website, to create an account, and to log into their on-line accounts. (ECF No. 13-2, Kott Decl. ¶¶ 13, 17-18, 34-35, PageID.432-34, 437.) Pitt McGehee does not dispute that it and/or its agent, Ringler, accessed the EPTC website, created accounts, and logged into their accounts more than 100 times. The Terms of Use are hyperlinked and bolded in a banner at the top of EPTC's Website and just above the action buttons for the "Create an Account" and "Log In" pages. Defendants contend that this type of web browser agreement is called a modified "click wrap" or "sign-in wrap" agreement, where the user "signs up for a product or service and the screen states that acceptance of the terms and conditions are required to access the product or service." (ECF No. 15, Defs. Mot., PageID.709, citing *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 697 (E.D. Va. 2020) (enforcing sign-in wrap agreement under

Virginia law, and noting that courts have consistently recognized that "an electronic 'click' can suffice to signify the acceptance of a contract.").)[2]

Contracts on the internet generally consist of the following types of agreement:

> (1) a "browserwrap" agreement does not require any affirmative action on the part of the user to manifest assent to the contract; it instead provides notice to the user of the agreement through a hyperlink posted somewhere on the website;

> (2) a "clickwrap" agreement requires a website user to manifest assent to the terms of the agreement by clicking on an icon; and

> (3) a "modified" or "hybrid" clickwrap agreement requires a website user to take affirmative action – pressing a "click" button, but the terms being accepted do not appear on the same screen as the accept button but are available with the use of a hyperlink.

---

[2] Defendants argue that Michigan's choice of law rules govern the question of contract formation, and that the Restatement § 188 factors favor application of Virginia law because Virginia is the home of the approving governmental authority, the sole location of the QSF escrow assets, and the place where distributions were made. (ECF No. 15, Defs. Mot., fn.3, PageID.709.) Plaintiff states that this Court need not resolve the question of which state's law applies in deciding this motion. (ECF No. 17, Pl. Resp. fn.6, PageID.757.) The Court notes in any event that the elements of a valid contract are essentially the same under both Michigan and Virginia law. *Compare Bank of America, NA v. First American Title Ins. Co.*, 499 Mich. 74, 101 (2016), *with Melo*, 439 F. Supp. 3d at 696.

*Lee v. Panera Bread Co.*, No. 1:22-cv-11958, 2023 WL 2606611, at *3 (E.D. Mich. Mar. 6, 2023) (citations omitted), *report and recommendation adopted by* 2023 WL 2603934 (E.D. Mich. Mar. 22, 2023).

The Terms of Use agreement in this case is best classified as a combination of a browserwrap agreement based on the banner appearing at the top of the EPTC website with the hyperlinked Terms of Use, and a modified, or hybrid, clickwrap agreement, as a client must take affirmative action – click the "NEXT STEP" or "LOG IN" action buttons to manifest assent to the Terms of Use – with the immediately preceding sentence above the action button containing the hyperlinked Terms of Use to which the client agrees or reaffirms. Courts within the Sixth Circuit Court of Appeals have found "clickwrap" or "modified clickwrap" agreements enforceable "'where the existence of the terms was reasonably communicated to the user.'" *See Rosskamm v. Amazon.com, Inc.*, 637 F. Supp. 3d 500, 510 (N.D. Ohio 2022) (collecting cases and finding Amazon's Conditions "to be reasonably communicated to Plaintiffs[] and thus enforceable" "[b]ecause Defendant's [Conditions] [we]re contained in language directly beneath the 'Sign-in,' 'Continue,' or 'Place your order' buttons, in blue ink indicating a hyperlink and not surrounded by other language or hidden in any way[.]"); *Lee*, 2023 WL 2606611, at *3-4 (finding Panera's "Terms of Service" to be reasonably communicated to

Plaintiff because Plaintiff "was warned in the paragraph immediately preceding the "Start" button that he was bound by the terms and conditions which were available for review via hyperlink that was accessible from the very same paragraph"); *Shirley v. Rocket Mortgage*, No. 2:21-cv-13007, 2022 WL 2541123, at *4 (E.D. Mich. July 7, 2022) ("Courts have routinely found "clickwrap" agreements enforceable because by checking a box explicitly stating "I agree" in order to proceed, the "consumer has received notice of the terms being offered and, in the words of the Restatement, 'knows or has reason to know that the other party may infer from his conduct that he assents' to those terms."); *see also Melo*, 439 F. Supp. 3d at 697 ("[M]ost courts have held web browser contracts enforceable where the user had actual or constructive knowledge of the site's terms and conditions, and … manifested assent to them.") (citation and quotation marks omitted).

Defendants argue that Pitt McGehee repeatedly consented to and accepted the Terms of Use, digitally and by written execution, by (1) using the EPTC website, creating EPTC accounts, and submitting a QSF application; (2) accessing their accounts at least 118 times, and (3) executing and sending 40 Distribution Petition Agreements to EPS. The Court agrees. Both the account creation page and the login portal state that by clicking on the "NEXT STEP" or "LOG IN" buttons the user expressly affirms or reaffirms his agreement to the hyperlinked Terms of Use. In

24

addition, Pitt McGehee signed and submitted multiple Distribution Petition Agreements, which forms are available through EPTC's website, and which incorporate by reference "[a]ll terms, provisions, and agreements set forth in the referenced QSF Trust." (ECF No. 13-2, Distribution Petition Agreement, PageID.576-81.) The Trust Documents expressly incorporate the Terms of Use and hyperlink EPTC's website. "'Where additional documents or terms are made part of a written contract by reference, the parties are bound by those additional terms even if they have never seen them. Failure of a party to obtain an explanation of contractual terms is ordinary negligence which estops the party from avoiding the contract on the ground the party was ignorant of its provisions.'" *Travis v. ADT Sec. Servs., Inc.*, 884 F. Supp. 2d 629, 636 (E.D. Mich. 2012) (quoting *Construction Fasteners, Inc. v. Digital Equip. Co.*, No. 185679, 1996 WL 33348735, at *2 (Mich. Ct. App. Oct. 22, 1996)); *see also Robert Bosch Corp. v. ASC, Inc.*, 195 F. App'x 503, 505 (6th Cir. 2006) (stating "Michigan law permits a party to incorporate terms or documents from other writings. A party may not plead ignorance as an excuse if the contract is clear on its face that such terms were intended to be incorporated.").

Pitt McGehee thus had notice of and access to the Terms of Use before it applied for the QSF, when it funded the QSF, at all times that it logged into and accessed the QSF account, and when it submitted Distribution Petition Agreements

to EPS. *See Lee*, 2023 WL 2606611, at *4 (finding that "text either above or adjacent to the [start] button … clearly stat[ing] that by doing so, the subscriber is agreeing to the 'Terms of Service'" is sufficient notice of the terms of the agreement) (quoting *Scott v. RVshare LLC*, No. 3:21-CV-00401, 2022 WL 866259, at *3 (M.D. Tenn. Mar. 22, 2022)); *Rosskamm*, 637 F. Supp. 3d at 511 ("Because Defendant's COUs are contained in language directly beneath the 'Sign-in,' 'Continue,' or 'Place your order' buttons, in blue ink indicating a hyperlink, and not surrounded by other language or hidden in any way, the Court deems the COUs to be reasonably communicated to Plaintiffs, and thus enforceable."); *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1275-76 (M.D. Tenn. 2020) ("The hyperlink was prominently displayed directly above the "Place Order" button which was required to complete a purchase. … [T]he agreement is of the type that has regularly been upheld by courts. … With just the single click of a mouse before placing his order, Plaintiff Anderson would have been able to access the Terms of Use, as well as the Arbitration Clause.") (internal citations omitted); *see also Melo*, 439 F. Supp. 3d at 699 (finding reasonable notice when the web browser interface "appeared clear and uncluttered," "[t]he phrases 'Terms and Conditions' appeared in blue, indicating that Plaintiff could click a hyperlink to thoroughly read the Agreement," and "the site g[ave] the user reasonable notice that a click will manifest assent to an agreement").

Accordingly, Pitt McGehee's assertion that it did not have reasonable notice of the Terms of Use containing the forum selection clause is unsupportable, and Pitt McGehee's contention that it did not have any contractual relationship with Defendant is implausible.[3] Pitt McGehee never objected to, rejected, or requested an amendment to the Terms of Use. (ECF No. 13-2, Kott Decl. ¶ 29, PageID.436.) Pitt McGehee in fact alleges a number of times in its First Amended Complaint that it relied on EPTC's website statements and promotional materials in deciding whether to utilize EPTC's services. (ECF No. 9, FAC ¶¶ 15-19, 21-22, 45, 60, 65, 69, 73-76, 79-82, 86.)

Pitt McGehee argues that it did not have an obligation to object to terms found within a trust document provided after the trust was created. However, as discussed

---

[3] Pitt McGehee contends it had solely a fiduciary, trustee-beneficiary  relationship with Defendants, and relies on *Boyle v. Anderson*, 301 Va. 52 (2022), to argue that the parties have no contractual relationship. (ECF No. 17, Pl. Resp., PageID.758-59.) While the Virginia state Supreme Court in *Boyle* did conclude that the "trust [in that case] does not qualify as a contract or agreement" with a beneficiary, *Boyle*, 301 Va. at 57, that case is inapposite because the trust at issue in *Boyle* was an *inter vivos* trust, a donative instrument which is a common estate planning tool often used to control the distribution of assets, RESTATEMENT (THIRD) OF TRUSTS § 25, Validity and Effect of Revocable Inter Vivos Trust (2003), and not a statutory QSF administered by a QSF administrator and trustee, and expressly governed by Trust Agreements and separate stand-alone services contracts ancillary to the trust containing Terms of Use to which Pitt McGehee repeatedly consented, as in this case.

27

above, Pitt McGehee, through its agent Ringler, had notice of the Terms of Use, with

the forum selection clause, before Ringler even applied for the QSF on behalf of Pitt

McGehee – both when the EPTC website was accessed (via the banner at the top of

the website page) as well as when creating an account to submit the QSF application.

Further, Pitt McGehee's argument that Defendants did not contact Pitt McGehee "to

discuss the terms of the QSF" is belied by the June 2, 2022 email from EPTC to

Ringler attaching the Trust Documents.

Thus, the Court finds that the Terms of Use, including the forum selection

clause, was reasonably communicated to Pitt McGehee, and that Pitt McGehee

expressly consented to and is bound by the Terms of Use (1) when its agent Ringler

accessed the EPTC website, created an EPTC account, and submitted a QSF

Application on Pitt McGehee's behalf;[4] (2) when Pitt McGehee's representative

---

[4] It cannot be disputed that Ringler was Pitt McGehee's apparent agent for establishing the QSF. (ECF No. 9, FAC ¶ 12) (ECF No. 17-2, Bonanni Decl. ¶ 4, PageID.771 ("In or about June 2022, … I asked Ringler to create a 'qualified settlement fund' through Eastern Point Trust Company ('EPTC').").) Pitt McGehee provided Ringler with the information necessary to apply for the QSF on its behalf, such as the trust design options, the nature of claims, the person to bill for fees associated with the QSF, and authorized account users. (ECF No. 13-2, Ex. C, QSF Application, PageID.468-71.) Further, that Pitt McGehee contracted through its agent to establish the QSF does not negate Pitt McGehee's consent to the Terms of Use because "when an agent, acting within the scope of his apparent agency, enters into a contract with a third person[,] the principal becomes immediately a contracting party, with both rights and liabilities to the third person." *Equitable Variable Life*

accessed EPTC's website and opened a separate EPTC account; (3) when Pitt McGehee/Ringler logged into the account 118 times; and (4) when Pitt McGehee submitted over 40 Distribution Petition Agreements to EPS, seeking distributions from the QSF.

### b. Whether this dispute falls within the scope of the forum selection clause

Having determined that Pitt McGehee had reasonable notice of the Terms of Use containing the forum selection clause, and consented to those Terms of Use, the Court must next determine if the forum selection clause is applicable to the claims at issue in this case. *See Lakeside Surfaces*, 16 F.4th at 215.

Pitt McGehee contends that the EPTC website Terms of Use apply only to use of the "Platform" and related services administered through the "Platform" and thus are not relevant to Pitt McGehee's claims in this action which arose out of the fiduciary relationship created when EPTC created the trust for the benefit of Pitt McGehee and its clients. (ECF No. 17, Pl. Resp., PageID.757.) Pitt McGehee argues that its claims against Defendants are not for breach of a contract, but for breach of

---

*Ins. v. Wood*, 234 Va. 535, 539 (1987) (quoting Restatement (Second) of Agency § 8 comment d (1957)); *see also James v. Alberts*, 464 Mich. 12, 15 (2001) ("Under fundamental agency law, a principal is bound by an agent's actions within the agent's actual or apparent authority.") (citations omitted).

fiduciary duty and other tort claims, and that the parties' relationship as to the QSF is not based in contract. Pitt McGehee argues that because the QSF is a trust, and EPTC is a trustee, EPTC cannot avoid its fiduciary duties by claiming that the Terms of Use created a contract "concerning a yet-to-be-established QSF trust relationship." (*Id.* PageID.755-57.) Pitt McGehee contends that the "[T]erms [of Use] apply only use to of, and services provided through, EPTC's websites" and that "[t]he Firm's claims in this case relate solely to the Fraudulent Transfers, which occurred by email outside of the 'Platform.'" (*Id.* PageID.762.)

Defendants argue that Pitt McGehee's narrow interpretation of the Terms of Use "does not hold water." (ECF No. 23, Defs. Reply, PageID.1038.) Defendants assert that all of Pitt McGehee's allegations arise from or are connected with Pitt McGehee's use of the Platform because "[t]he crux of the Amended Complaint is that EPTC failed to provide services matching the 'advertised expertise' on EPTC's Platform," pointing out that Pitt McGehee in fact attaches excerpts of the Platform to the Amended Complaint. (*Id.*, citing ECF No. 9, FAC, ¶¶ 5 n.2, 15 n.3, 16-22, 45, 60, 65, 69, 74, 86.) Defendants assert that such claims are within the ambit of the forum selection clause, which provides that the Circuit Court of Fauquier County, in Warrenton, Virginia "shall hear and determine any suit, action, or proceeding and settle *any dispute* that may *arise out of or in connection* with the Platform and Terms

30

of Use[.]" (ECF No. 13-2, Terms of Use, PageID.467 (emphases added).) As a reminder, the Terms of Use govern "this Platform, all associated or linked EPTC websites *and associated trust administration and trustee services, or related services provided by EPTC*, *its Affiliates*, or its Third Parties" which "includes, but is not limited to, the websites … and any linked or affiliated websites *including any content, functionality, and services offered on or through the same* (collectively, the 'Platform'), whether as a guest or a registered user." (*Id.* PageID.444 (emphases added).)

In a diversity suit, such as this one, enforceability of a forum selection clause is governed by federal law. *See Wong*, 589 F.3d at 828. The Court finds that Pitt McGehee's claims against Defendants in this action fall well within "any dispute" "aris[ing] from or in connection with" the content and services offered through or on the Platform. It is undisputed that EPTC created the QSF statutory trust at issue only after Pitt McGehee's agent submitted an application to EPTC, through EPTC's website. Further, both Pitt McGehee's agent and its representatives created accounts to access the trust and services provided through EPTC's website. Pitt McGehee's contention that its claims based on Defendants' administration of that QSF have no relation to the EPTC website and its Terms of Use is untenable. Pitt McGehee's claims in this action plainly "arise out of or in connection with" Defendants'

establishment and administration of the QSF, and thus in connection with "trust administration and trustee services, or related services provided by EPTC" and its Affiliate EPS. Pitt McGehee's tort claims are intertwined with the formation and administration of the QSF and the services provided by Defendants in the administration of the trust, and "courts have generally held that when the relationship between the parties is contractual, the creative pleading of alternative, non-contractual claims does not suffice to circumvent the forum-selection clause if the forum selection clause is broad enough to include them," and "[j]ust because claims can exist independent of a contract does not mean that they are not governed by a contract when one exists." *Micropower Grp. v. Ametek, Inc.*, 953 F. Supp. 2d 801, 808-09 (S.D. Ohio 2013); *see also Delta Alcohol Distribs. v. Anheuser-Busch Int'l, Inc.*, 28 F. Supp. 3d 682, 689 (E.D. Mich. 2014) (collecting cases upholding a broad application of the forum selection clause even though the plaintiff's claims were "not for breach of contract and even if the alleged tortious conduct occurred before the contract commenced or after it terminated"); *Caudill Seed & Warehouse Co. v. Brassica Prot. Prods., LLC*, 552 F. Supp. 2d 658, 662 (W.D. Ky. 2008) ("The court is also mindful that '[a] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the [forum selection] clause

if those claims grow out of the contractual relationship, or if "the gist" of those claims is a breach of that relationship.'") (citation omitted).

To the extent Pitt McGehee argues that its claims "relate solely to the Fraudulent Transfers, which occurred by email outside of the 'Platform,'" Pitt McGehee ignores that each Distribution Petition Agreement, which form is available to users by accessing EPTC's website, provides "[a]ll terms, provisions, and agreements set forth in the QSF Trust are incorporated by reference into this instrument with the same force and effect as though fully set forth herein." (ECF No. 13-2, Ex. J, Distribution Petition Agreement at p.5 ¶ 9, PageID.580.) As stated above, "'[w]here additional documents or terms are made part of a written contract by reference, the parties are bound by those additional terms even if they have never seen them. Failure of a party to obtain an explanation of contractual terms is ordinary negligence which estops the party from avoiding the contract on the ground the party was ignorant of its provisions.'" *Travis*, 884 F. Supp. 2d at 636.

Finally, while Plaintiff complains that Defendants seek to unlawfully place limitations on its fiduciary obligations, the Court notes that by bringing the instant motion, Defendants are only seeking to have this action brought in the appropriate forum – not to prevent the claims from being brought at all. Defendants have agreed

that they are amenable to service in Virginia in the forum designated in the forum selection clause.

Accordingly, the Court finds that the Terms of Use forum selection clause is applicable to Pitt McGehee's claims in this case.

### 2. Whether the Forum Selection Clause in the Terms of Use is Valid and Enforceable Against Pitt McGehee

A forum selection clause should be upheld absent a strong showing that it should be set aside. *Wong*, 589 F.3d at 828. To assess whether a forum-selection clause is valid and enforceable, the Court must consider whether: "(1) the clause was obtained by fraud, duress, or other unconscionable means; (2) the designated forum would ineffectively or unfairly handle the suit; (3) the designated forum would be so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust; or (4) enforcing the forum selection clause would contravene a strong public policy of the forum state." *Lakeside Surfaces*, 16 F.4th at 219-220 (citing *Wong*, 589 F.3d at 828 and *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229-230 (6th Cir. 1995)). "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Wong*, 589 F.3d at 828.

Defendants argue first that the First Amended Complaint makes no allegations of fraud or overreaching by Defendants to induce Pitt McGehee to agree to the Terms

of Use containing the forum selection clause, and that Pitt McGehee does not allege that it objected to or rejected the Terms of Use or Trust Agreements. (ECF No. 15, Defs. Mot., PageID.716.) Defendants assert that Pitt McGehee is a sophisticated law firm and knew or should have known that it consented to the "conspicuously disclosed" Terms of Use by repeatedly accessing its EPTC website account and submitting Distribution Petition Agreements for client funds. (*Id.* citing *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006) (enforcing forum selection clause against commercial entity, noting "it is not the [court's] task to save [d]efendant from the consequences of an agreement it freely entered into").)

Pitt McGehee responds that EPTC obtained consent to the forum selection clause by "unconscionable means," suggesting that Ringler "was forced to accept [the Terms of Use] before it even submitted an application for the QSF," and that neither Ringler nor Pitt McGehee had a meaningful opportunity to review the Terms of Use, citing *Benhamou v. Moving Sols., LLC*, No. 21-10823, 2022 WL 3647802, at *7 (E.D. Mich. Aug. 24, 2022). (ECF No. 17, Pl. Resp., PageID.764-65.)

However, as discussed above, the Court finds that Pitt McGehee had reasonable and sufficient notice of the Terms of Use both before the QSF application was submitted and after. Further, Pitt McGehee's cited case, *Benhamou*, is readily distinguishable. In that case, the court declined to enforce a forum selection clause

35

included in a contract between individuals and a moving company because the plaintiffs alleged that they did not receive the terms until after they executed the contract, and because they could not reject the moving company's terms without delaying their move and losing the buyer of their Texas home. *Benhamou*, 2022 WL 3647802, at *1-2, 7. But here, Pitt McGehee, a sophisticated law firm, had notice of the Terms of Use containing the forum selection clause from the first time it visited EPTC's website, which was before Ringler applied for the QSF. Contrary to Pitt McGehee's assertions, there was nothing "clandestine" in the process by which EPTC secured Pitt McGehee's consent to the Terms of Use and Ringler was not "forced to accept [the Terms of Use] before it even submitted an application." And, Ringler and Pitt McGehee had an opportunity to submit objections to the Terms of Use or suspend their access to the Platform, but they instead repeatedly consented to the Terms of Use and continued to use EPTC's Platform.

Further, "the party opposing the [forum selection] clause must show fraud in the inclusion of the clause itself" in the agreement, and "[g]eneral claims of fraud [] do not suffice to invalidate the forum selection clause." *Wong*, 589 F.3d at 828 (citing as an example of fraud "where the party seeking to enforce the [forum selection] clause had affirmatively represented that disputes would be resolved in a forum different from that dictated by the forum selection clause"). Pitt McGehee

36

makes no such showing that fraud, duress, or other unconscionable means played a role in the inclusion of the forum selection clause itself in the Terms of Use.

Pitt McGehee also argues that enforcement of the forum selection clause "would violate Michigan's strong public policy in favor of protecting beneficiaries of a trust, as set forth in the Michigan Trust Code." (ECF No. 17, Pl. Resp., PageID.765, citing Mich. Comp. Laws 700.7802 ("A trustee shall administer the trust solely in the interests of the trust beneficiaries.").) However, Pitt McGehee has failed to show how enforcing a forum selection clause that Pitt McGehee, a sophisticated law firm, has repeatedly consented to would constitute a violation of Michigan public policy. Again, enforcement of the forum selection clause does not negate Plaintiff's claims, but instead directs where those claims may be heard. Further, like Michigan, Virginia's Uniform Trust Code requires trustees to "act in good faith and in accordance with the terms and purposes of the trust and the interest of the beneficiaries." Va. Code § 64.2-703(B)(2), (3) (requiring "that a trust and its terms be for the benefit of its beneficiaries, and that the trust have a purpose that is lawful, not contrary to public policy, and possible to achieve"); *see also id.* § 64.2-777(b) (subjecting the trustee's "exercise of a power … to the fiduciary duties prescribed by this article.").

With respect to the second and third *Wong* factors, Defendants assert that there is no indication that Fauquier County Circuit Court would ineffectively or unfairly handle this lawsuit, or that litigating in the desired forum would prove unjust by imposing a serious consequence on Pitt McGehee. (ECF No. 15, Defs. Mot., PageID.717.) Defendants explain that Fauquier County has a substantial connection to the dispute because it is the jurisdiction of the governmental authority, location of the assets, and location of the QSF administration. While Defendants contend that third-party cybercriminals hacked into Pitt McGehee's systems, email accounts, and client data in Michigan to steal funds from the QSF, those targeted QSF assets were located in Virginia. (*Id.*) Defendants further aver that they are both amenable to process in Virginia and that they consent to the exclusive jurisdiction of the Fauquier County Circuit Court under the Terms of Use. (ECF No. 13-2, Kott Decl. ¶ 43, PageID.439) (ECF No. 14-2, Sharpe Decl. ¶ 24, PageID.681.)

Pitt McGehee does not directly address these factors in its Response, and the Court agrees with Defendants that these factors weigh in favor of finding the forum selection clause valid and enforceable. Pitt McGehee has not met its "heavy burden" of showing that enforcing the forum selection clause would be unjust or unreasonable. *See Wong*, 589 F.3d at 829-30.

### 3.  Whether the forum selection clause is mandatory

Defendants argue that the forum selection clause is mandatory because the clause states that the Fauquier County Circuit Court "shall" hear "any" disputes. (ECF No. 15, Defs. Mot., PageID.715.) "According to the Sixth Circuit, words like 'shall' and 'exclusive' indicate a mandatory, rather than permissive, forum-selection clause." *Advanced Critical Devices, Inc. v. Boston Scientific Corp.*, No. 1:21-CV-02227, 2022 WL 1266117, at *5 (N.D. Ohio Apr. 28, 2022) (collecting cases); *see also Melo*, 439 F. Supp. 3d at 700 ("A mandatory forum selection clause contains 'clear language showing that jurisdiction is appropriate only in the designated forum.") (citation omitted).

Pitt McGehee argues in its Response brief that the forum selection clause is not mandatory because it conflicts with the Arbitration clause in the Terms of Use which similarly uses the word "shall." (ECF No. 17, Pl. Resp., PageID.766.) Pitt McGehee contends that the Court may refuse to enforce the forum selection clause based on inconsistent terms. Pitt McGehee also contends that the Court should disregard the Terms of Use because Defendants only submitted Terms of Use "substantially similar" to those in effect in June 2022. (*Id.* at PageID.766.)

Defendants reply that no conflict exists because the applicable arbitration provision in the Terms of Use provides that the Arbitration clause applies to "any matter for which litigation has not been appropriately filed with the office of the Clerk of Court for the applicable court of competent jurisdiction of Fauquier County, Virginia, before your first use date following the publication of this provision of these Terms of Use." (ECF No. 13-2, Terms of Use, PageID.459.) Defendants assert that both clauses therefore designate the "applicable court" as the Fauquier County Circuit Court.

In addition, it is generally held that "mandatory arbitration clauses and forum selection clauses are *not* mutually exclusive, but rather are complementary." *Branch v. Mays*, 265 F. Supp. 3d 801, 805 (E.D. Tenn. 2017) (collecting cases finding in such cases the parties must litigate in the designated forum any disputes that are not subject to arbitration); *see also Spartech CMD, LLC v. Int'l Auto. Components Grp. of N. Am., Inc.*, No. 08-13234, 2009 WL 440905, at *7 (E.D. Mich. Feb. 23, 2009) ("The Sixth Circuit has yet to address the relationship between forum-selection and arbitration clauses. However, several other circuits hold that choice-of-forum clauses are not inconsistent with, but rather complementary to arbitration provisions."). Thus, Pitt McGehee's claims that the forum selection clause is canceled out by the arbitration clause is without merit.

40

The Terms of Use Defendants produced were captured on November 7, 2022, and Defendants have provided sworn testimony that those terms are substantially similar to the Terms of Use that appeared on EPTC's website in June 2022, and that both prohibit litigation in any court other than the Fauquier County Circuit Court. (ECF No. 13-2, Kott Decl. ¶ 20, PageID.434.) Pitt McGehee has failed to provide any evidence or argument to the contrary, or that because EPTC updates its Terms of Use from time to time, the forum selection clause contained in those Terms should be deemed unenforceable. *See Rosskamm*, 637 F. Supp. 3d at 511.

The Court therefore finds that the forum selection clause in the Terms of Use is applicable to Pitt McGehee's claims against Defendants in this case, mandatory, valid, and enforceable, and that Pitt McGehee has not met its "heavy burden" to avoid enforcement of that forum selection clause in this case.

## C. *Forum Non Conveniens* Analysis

Because the Court finds that the forum selection clause in the Terms of Use is applicable, mandatory, valid, and enforceable against Pitt McGehee, *Atlantic Marines's* modified *forum non conveniens* analysis applies and Pitt McGehee bears the burden of showing that the public interest factors weigh heavily against dismissal. *Atlantic Marine*, 571 U.S. at 67.

41

Under *Atlantic Marine*, when a valid and enforceable forum-selection clause exists, "the plaintiff's choice of forum 'merits no weight' and courts consider arguments only under the public-interest factors, treating the private-interest factors as 'weigh[ing] entirely in favor of the preselected forum.'" *Lakeside Surfaces*, 16 F.4th at 216 (quoting *Atlantic Marine*, 571 U.S. at 63-64). The plaintiff "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atlantic Marine*, 571 U.S. at 67. "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 62 n.6 (quoting *Piper Aircraft Co.*, 454 U.S. at 241 n.6). "The party seeking to disavow the forum-selection clause bears a heavy burden." *Branch*, 265 F.3d at 808. Because the public-interest factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 571 U.S. at 64.

Defendants argue that the public interest factors favor dismissal in this case. Defendants assert that the QSF is subject to the continuing jurisdiction of the Virginia governmental authority that established the fund, that the QSF assets are

located and administered in Virginia, and that the distribution of funds occurred in Virginia.

Pitt McGehee argues that the public and private factors favor Michigan because Pitt McGehee is a Michigan company, there are more or just as many witnesses in Michigan as in Virginia, the alleged data breach into the Firm's email account happened in Royal Oak, Michigan, and Ringler's representatives are in Grand Rapids Michigan. Pitt McGehee contends that Virginia is only convenient for Defendants.

The Court agrees with Defendants and finds that none of the factors cited by Pitt McGehee makes this an exceptional case in which the Court should refuse to enforce the parties' forum selection clause. First, under *Atlantic Marine*, the Court gives no weight to Pitt McGehee's choice of Michigan as the forum and will not consider any arguments regarding the personal inconvenience of litigating this case in Virginia. *See Atlantic Marine*, 571. U.S. at 63 (stating that when there is a valid forum selection clause "the plaintiff's choice of forum merits no weight" and the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum."). Second, as Defendants assert, this is a "localized controversy" in Virginia, as the QSF is subject to the continuing jurisdiction of the Virginia governmental authority that established the fund, the QSF assets are located and

43

administered in Virginia, and that the distribution of funds occurred in Virginia. There is no indication that the Virginia courts would ineffectively handle this suit or that those courts are any more overburdened than this Court. While Plaintiff states that its offices, and email systems are in Michigan, and many witnesses are in Michigan, those are more aptly considered "private interest factors" meriting no weight in the Court's analysis. Plaintiff simply has not met its burden to show that any public-interest factors "overwhelmingly disfavor a transfer." *See Atlantic Marine*, 571 U.S. at 67; *see also Rosskamm*, 637 F. Supp. 3d at 513 (finding that the public interest favors Washington over Michigan because the agreement's choice of law states Washington law would govern disputes and the public has a strong interest in applying contracts as they are written).

Accordingly, the Court, in the exercise of its discretion, will grant Defendants' motion and dismiss this action without prejudice on *forum non conveniens* grounds.

## IV.    CONCLUSION

For all the reasons set forth above, the Court **GRANTS** Defendants' Motion to Dismiss on *Forum Non Conveniens* Grounds (ECF No. 15) and **DISMISSES** this matter **WITHOUT PREJUDICE**.

The Court FURTHER **DENIES AS MOOT** (1) Defendant EPTC's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (ECF No. 13) and (2) Defendant EPS's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (ECF No. 14).

IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: November 16, 2023

45